# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| FUSE CHICKEN, LLC, | ) | Case No. 5:17-cv-01538-SL |
| | ) | |
| Plaintiff, | ) | Hon. Sara Lioi |
| v. | ) | Hon. Kathleen B. Burke |
| | ) | |
| AMAZON.COM, INC. | ) | **AMAZON.COM, INC.'S MOTION FOR** |
| and DOES 1–10, | ) | **SUMMARY JUDGMENT AND** |
| | ) | **MEMORANDUM OF POINTS AND** |
| Defendant(s). | ) | **AUTHORITIES IN SUPPORT** |
| | ) | **THEREOF** |

Pursuant to Federal Rule of Civil Procedure 56, Amazon.com, Inc. moves for summary judgment as to all claims in Fuse Chicken, LLC's Complaint ("Motion").  Dkt. 1.  This Motion is based on the Memorandum of Points and Authorities, the supporting declarations, all pleadings and papers on file in this action, and any other information and argument that the parties may present.  Amazon.com, Inc. respectfully requests a hearing on its Motion.

DATED: February 1, 2019

*/s/ Clara J. Shin*

Clara J. Shin (admitted *pro hac vice*)
Nathan E. Shafroth (admitted *pro hac vice*)
Lindsey Barnhart (admitted *pro hac vice*)
David S. Watnick (admitted *pro hac vice*)
COVINGTON & BURLING, LLP

Roger M. Synenberg (#32517)
Clare C. Moran (#81134)
SYNENBERG, COLETTA & MORAN, LLC

*Attorneys for Defendant Amazon.com, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    STATEMENT OF ISSUES ................................................................. 2

III.   STATEMENT OF FACTS ................................................................. 3

       A.    Amazon.com, Inc. ............................................................ 3

            1.    Amazon's intellectual property policies and enforcement ......................... 3

            2.    Product sales on Amazon.com ................................... 4

            3.    Amazon.com product reviews and star ratings ........................... 5

       B.    Fuse Chicken, LLC ........................................................ 6

       C.    Fuse Chicken's Distribution Channels ................................ 6

       D.    Purported Sale of So-Called "Knock-Off" Products ............................. 7

       E.    Amazon's Responses to Fuse Chicken's Notices of Claimed Infringement ......... 8

       F.    This Lawsuit .................................................................. 9

            1.    Fuse Chicken's purported evidence of so-called inauthentic Fuse Chicken products sold on Amazon.com. ....................... 9

            2.    Fuse Chicken's theory of injury ................................ 10

IV.   LEGAL STANDARD ......................................................... 11

V.    FUSE CHICKEN CANNOT ESTABLISH ANY TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY .................................................. 12

VI.   FUSE CHICKEN CANNOT ESTABLISH COPYRIGHT INFRINGEMENT. .............. 13

       A.    Fuse Chicken Never Identified a Theory of Copyright Infringement .................. 13

       B.    Fuse Chicken's Copyright Infringement Claim Lacks Evidentiary Support. ....... 14

            1.    Fuse Chicken cannot establish direct or contributory infringement. ........ 14

            2.    Fuse Chicken cannot establish vicarious infringement ........................... 16

C.      The Digital Millennium Copyright Act Bars Monetary Relief............................ 17

VII.   FUSE CHICKEN CANNOT ESTABLISH TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, OR DECEPTIVE TRADE PRACTICES.......... 18

A.      Amazon Is Not Contributorily Liable Because Amazon Took Action Against All Suspect Sellers................................................................. 19

B.      Amazon Is Not Directly Liable for Any Trademark Infringement, False Designation, or Deceptive Trade Practices........................................... 20

1.     Amazon's licenses permit it to display Fuse Chicken trademarks online, and Fuse Chicken has waived its right to claim infringement.......................................................................... 21

2.     Fuse Chicken has not adduced evidence of any legally relevant likelihood of confusion. ............................................................ 22

C.      Fuse Chicken Has No Admissible Evidence of Counterfeiting............................ 25

VIII.  FUSE CHICKEN CANNOT ESTABLISH THAT AMAZON CAUSED ITS ALLEGED LOST PROFITS DAMAGES. ....................................................... 26

A.      Fuse Chicken Cannot Establish That There Was Even a Single Review of a Non-Fuse Chicken Product on a Fuse Chicken Product Detail Page................. 27

B.      Fuse Chicken Cannot Adduce Admissible Evidence That Negative Amazon.com Reviews of Non-Fuse Chicken Products Caused Any Lost Sales. ...................................................................................... 27

C.      There Is No Evidence Fuse Chicken Lost *International* Sales Because of Amazon.com Reviews. ................................................................... 29

IX.    CONCLUSION...................................................................................... 30

CERTIFICATE OF COMPLIANCE........................................................................ A

CERTIFICATE OF SERVICE ................................................................................B

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bridgeport Music, Inc. v. WM Music Corp.*,
    508 F.3d 394 (6th Cir. 2007) ..................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).......................................................11

*Charles v. Air Enters., LLC*,
    244 F. Supp. 3d 657 (N.D. Ohio 2017)...........................................20, 28

*Coach, Inc. v. Farmers Mkt. & Auction*,
    881 F. Supp. 2d 695 (D. Md. 2012) .........................................19

*Coach, Inc. v. Goodfellow*,
    717 F.3d 498 (6th Cir. 2013) ..................................................20

*Corbis Corp. v. Amazon.com, Inc.*,
    351 F. Supp. 2d 1090 (W.D. Wash. 2004)...................................17, 18

*Coventry Grp., Inc. v. Gottlieb*,
    7 N.E.3d 611 (Ohio Ct. App. 2014).........................................12

*Dixon v. Northridge Local Sch. Dist. Bd. of Edn.*,
    2008 WL 2572103 (Ohio Ct. App. June 5, 2008)...........................12, 13

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*,
    423 F.3d 539 (6th Cir. 2005) ..................................................22

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
    730 F.3d 494 (6th Cir. 2013) ..................................................23

*Infocision Mgmt. Corp. v. Foundation for Moral Law Inc.*,
    2010 WL 750141 (N.D. Ohio Mar. 1, 2010) ...........................26, 27, 29

*Interactive Prod. Corp. v. a2z Mobile Office Sols., Inc.*,
    326 F.3d 687 (6th Cir. 2003) ..................................................20

*Jones v. Staübli Motor Sports Div.*,
    897 F. Supp. 2d 599 (S.D. Ohio 2012) .................................13

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ..................................................14

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007).........................................24, 25

*Masck v. Sports Illustrated*,
    5 F. Supp. 3d 881 (E.D. Mich. 2014)......................................................................16

*McGee v. Armstrong*,
    2018 WL 3956879 (N.D. Ohio Aug. 16, 2018) ....................................................12

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    2015 WL 4394673 (W.D. Wash. July 16, 2015) ........................................... *passim*

*Mountain Top Beverage Grp., Inc. v. Wildlife Brewing N.B., Inc.*,
    338 F. Supp. 2d 827 (S.D. Ohio 2003) ................................................................19

*Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*,
    361 F.3d 312 (6th Cir. 2004) ...............................................................................14

*Quinn v. City of Detroit*,
    23 F. Supp. 2d 741 (E.D. Mich. 1998)..................................................................26

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
    477 F.3d 383 (6th Cir. 2007) ...............................................................................15

*Segal v. Geisha NYC LLC*,
    517 F.3d 501 (7th Cir. 2008) ...............................................................................21

*Snugglers' Meadow Farms, LLC v. Land O'Lakes, Inc.*,
    2006 WL 346396 (N.D. Ohio Feb. 13, 2006)............................................26, 29, 30

*Street v. J.C. Bradford & Co.*,
    886 F.2d 1472 (6th Cir. 1989) .............................................................................11

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)..............................................................................19, 20

*Too, Inc. v. TJX Cos., Inc.*,
    229 F. Supp. 2d 825 (S.D. Ohio 2002) ................................................................25

*United Van Lines, Inc. v. Am. Holiday Van Lines, Inc.*,
    487 F. Supp. 235 (E.D. Tenn. 1979).................................................................23, 24

*Ventura Content, Ltd. v. Motherless, Inc.*,
    885 F.3d 597 (9th Cir. 2018) ...............................................................................18

*Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*,
    1997 WL 698044 (N.D.N.Y. Nov. 6, 1997) .........................................................23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Based on the undisputed material facts, summary judgment must issue as a matter of law and this case should be dismissed.  Fuse Chicken's unfounded accusations of counterfeiting and speculative grievances of monetary harm remain as unsubstantiated today as they were when Fuse Chicken filed its Complaint in July 2017.  In 13 months of discovery, during which the parties exchanged 290,500 pages of documents, conducted 30 depositions, and responded to 276 interrogatories and requests for admission, Fuse Chicken failed to find evidentiary support for any of its legal claims—because there is none.

Fuse Chicken's suit seeks to blame Amazon.com, Inc. ("Amazon") for Fuse Chicken's failure to achieve its founder's unrealistic hopes for breakthrough growth and great wealth. Though Fuse Chicken's customers had complained from the company's outset about the quality of its products, and Fuse Chicken had not made the investments necessary to grow into an eight-figure company, Fuse Chicken apparently believed that its modest success raising $212,000 in a 2012 Kickstarter campaign was a guarantee of exponentially greater future success.

Fuse Chicken places the blame for its business failures on a purported "rash" of so-called "knock-off" versions of the company's phone-charging cable products entering the market in late 2016 through retail websites, including eBay, Groupon, Amazon.com, and others.  Despite Amazon.com being a relatively miniscule sales channel for Fuse Chicken's products— ███████ ████████████████████████████████████████—Fuse Chicken singled Amazon out as the one company that should pay for all of Fuse Chicken's problems, self-inflicted or otherwise, and endow it with the multimillion-dollar position to which it aspires.

Thirteen months of discovery have not borne out Fuse Chicken's claims.  Though the Complaint alleged widespread sales of infringing products on Amazon.com, Fuse Chicken has identified only *four* instances in which a non-Fuse Chicken product was purportedly shipped in place of a Fuse Chicken product.  Three of those four products are simply *different* products:

1

Cable Data Coil Braces.  Fuse Chicken admits in its Complaint that "[a] simple review of the Cable Data product indicates that it is not a Fuse Chicken product as there is no Fuse Chicken branding on the packaging or product."  The fourth "product" exists only as a hearsay photograph of a product for which there is no evidence of purchase on Amazon.com.

Despite Fuse Chicken's failure to substantiate anything like the "rash" of infringement alleged in its Complaint, its requested damages have grown exponentially.  While Fuse Chicken claimed in its Complaint that it had "lost between $50,000 and $100,000 in sales due to counterfeits and knock-offs sold on Amazon," it now seeks ███████████████ based on an entirely speculative theory: that there *must* be infringing products beyond the four it has identified; that negative customer reviews on www.amazon.com *must* relate to these never-seen other infringing products; and that customers across the planet *must* have been dissuaded from purchasing Fuse Chicken products because they *must* have relied on those English-language negative reviews.  Fuse Chicken should not be permitted to proceed to trial based on speculation.

## II.  STATEMENT OF ISSUES

1.  Whether Amazon is entitled to judgment as a matter of law on Fuse Chicken's claim for tortious interference with business expectancy, where Fuse Chicken cannot identify a business expectancy with a third party, let alone one that Amazon knew of and with which Amazon intentionally interfered.  Compl. ¶¶ 74-80.

2.  Whether Amazon is entitled to judgment as a matter of law on Fuse Chicken's copyright infringement claim, where Fuse Chicken has not identified any theory of copyright infringement; where Fuse Chicken has adduced no evidence that Amazon reproduced, or caused third-party sellers to reproduce, copyrighted materials without authorization; and where Amazon is immune from monetary liability under the Digital Millennium Copyright Act.  *Id.* ¶¶ 63-67.

3.  Whether Amazon is entitled to judgment as a matter of law on Fuse Chicken's coextensive trademark infringement, false designation of origin, and deceptive trade practices claims, where Fuse Chicken has adduced no evidence that Amazon knowingly permitted any third party to infringe Fuse Chicken's trademarks; where Amazon has licenses to display Fuse

Chicken's trademarks; and where there is no likelihood of confusion because the allegedly infringing product—the Cable Data Coil Brace—bears its own, non-Fuse Chicken source on its face: Cable Data. *Id.* ¶¶ 50-62, 68-73.

4.    Whether Amazon is entitled to judgment as a matter of law on Fuse Chicken's prayer for actual damages, where Fuse Chicken's theory of damages causation is based on speculation, not fact.

## III. STATEMENT OF FACTS[1]

### A. Amazon.com, Inc.

From its start in 1994 as an online bookstore, Amazon has consistently strived to be "Earth's most customer-centric company." Noggle Decl. ¶ 2. Amazon owns www.amazon.com, the U.S.-based online marketplace on which a wide variety of products are offered for sale both by Amazon and by third-party sellers ("Amazon.com"). *Id.* ¶ 3.

The foremost of Amazon's "leadership principles" is "customer obsession." *Id.* ¶ 2. Amazon considers its customers to include both consumers who purchase products and third-party sellers who sell their products on Amazon.com. *Id.*

#### 1. Amazon's intellectual property policies and enforcement

Amazon takes care to protect intellectual property rights. For example, before third-party sellers can list products for sale on Amazon.com, Amazon requires them to accept Amazon's Business Solutions Agreement, which prohibits the sale of products that infringe the intellectual property rights of others. *Id.* ¶ 10 & Ex. A. As another example, Amazon's publicly available Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit products on Amazon.com. *Id.* ¶ 13 & Ex. C. The policy warns third-party sellers that failure to abide by its terms "may result in loss of selling privileges, funds being withheld, and destruction of inventory in our possession." *Id.* A third example is Amazon's publicly available Intellectual Property Policy,

---

[1] Citations to "Barnhart Decl.," "Noggle Decl.," "Regan Decl.," and "Skovgard Decl." are to the Declarations of Lindsey Barnhart, Jason Noggle, Greg Regan, and Garth Skovgard, respectively, filed in support of Amazon's Motion for Summary Judgment.

which also applies to all third-party sellers and warns that "[e]ven if a seller is infringing on someone's intellectual property without knowledge, [Amazon] will still take action and the seller's account might receive a warning or be suspended."  Noggle Decl. ¶ 12 & Ex. B.

These are no idle threats.  Amazon employs numerous measures to enforce its intellectual property protection policies and rid Amazon.com of bad actors.  Most significantly, Amazon enlists copyright and trademark owners to notify it of infringement by submitting written "infringement notices."  Noggle Decl. ¶ 17.  Amazon provides a publicly available online form that identifies the information rights owners must submit so that Amazon can promptly respond to reports of claimed infringement.  *See id.*  Once a valid and complete infringement notice is submitted, Amazon investigates and takes action.  *Id.* ¶ 19.

Amazon also takes proactive steps to identify and prevent intellectual property infringement, including by employing algorithms designed to detect suspicious activity.  *Id.* ¶ 21. As a result of these systems, 99.9% of all Amazon page views by customers land on pages that did not receive a notice of claimed infringement.  *Id.*  Amazon's policies put third-party sellers on notice that Amazon "terminates the accounts of repeat infringers in appropriate circumstances," and Amazon enforces these policies.  *Id.* ¶¶ 12, 20 & Ex. B.

### 2. Product sales on Amazon.com

Amazon assigns an Amazon Standard Identification Number ("ASIN") to each product sold on Amazon.com.  Noggle Decl. ¶ 5.  Each ASIN-assigned product has a product detail page on Amazon.com on which sellers can list the product for sale.  *See id.*; Barnhart Decl. Ex. 1 (Noggle Tr.) 55:6-8.  An ASIN is specific to a product, not to a seller; for example, a four-pack of Duracell AA batteries will have one ASIN and one product detail page, even if there are many sellers of the four-pack.  This arrangement benefits customers by ensuring that they need not visit multiple product detail pages to see competing offers for the same product on Amazon.com.

Along with third-party sellers, Amazon itself also lists products for sale on product detail pages.  Noggle Decl. ¶ 5.  Products sold by Amazon are known as Amazon "retail" products. *Id.* ¶ 3.  Amazon sources many of the products it sells from third parties—known as "vendors"—

and then resells them on Amazon.com as the seller of record.  *Id.* ¶¶ 3-4.  In this way, one company—such as Fuse Chicken—can be both a third-party seller (when it sells its products directly on Amazon.com) and a vendor (when it sells its products to Amazon and Amazon resells them on Amazon.com).  *Id.* ¶ 4.  Amazon also sells used, returned, or damaged items that remain in sellable condition through its Amazon Warehouse Deals business.  Barnhart Decl. Ex. 2 (Ramsdell Tr.) 47:7-9.

Consistent with its customer-centric mission, Amazon strives to make the customer return process as efficient as possible.  Noggle Decl. ¶ 22.  Some customers take advantage of Amazon's return policies and engage in fraudulent returns.  *Id.*  For example, a customer may purchase a relatively expensive product on Amazon.com, substitute it with a cheaper version of that product purchased through a different sales channel, return the cheaper product to Amazon, receive a refund for the more expensive product, and pocket the difference in price.  *Id.* ████
███████████████████████████████████████████████████████████████
███████████████████████████████████.  *Id.* ¶ 23 ████████████████
███████████████████████  *Id.*

### 3.  Amazon.com product reviews and star ratings

Customers may post "star ratings" of products ranging from one to five stars as well as narrative reviews on product detail pages.  *Id.* ¶ 8.  A ████████████████████ rating is also posted on the product detail page.  *Id.*  Individuals may post star ratings or reviews on Amazon.com even if they purchased the product from somewhere other than Amazon.com.  *Id.* For example, a consumer who purchased a Fuse Chicken product directly from Fuse Chicken's website can post a star rating and review of the product on Amazon.com.  *Id.*  Certain reviews are labeled "Verified Purchase."  *Id.* ¶ 9.  That label signifies that the reviewer ████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████

████████████████████████████████████████████. *Id.*

**B.     Fuse Chicken, LLC**

Fuse Chicken designs and sells charging cables for phones and tablets.  Barnhart Decl. Ex. 3 (Siegl Tr.) 132:13-16.  Fuse Chicken launched in 2012 via a Kickstarter campaign for its "Une Bobine" product.  *Id.* Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 14:11-12; 26:19-21.  Fuse Chicken has since released other product lines, such as Titan and Armour.  *See id.* Ex. 3 (Siegl Tr.) 97:8-17. ████████████████████████████████████████████████████████████

████████████████████████████.  *Id.* Ex. 7 (J. Fawcett Tr.) 172:21-22.

Une Bobine—along with its later iterations, Bobine, Bobine Auto, and Bobine Flex—purports to act both as a charging cable and "as a support for your phone."  Barnhart Decl. Ex. 3 (Siegl Tr.) 99:20-22.  For many customers, the Bobine products did not live up to their promise.  From the time Bobine products were first sold on Amazon.com in 2013, customers posted negative reviews on Amazon.com, complaining that the products were not compatible with many smartphone cases, the products could not hold up a phone as advertised, and the product part that is inserted into a phone's charging port easily snapped off.  *Id.* Ex. 5 (Tederous Tr.) 70:10-71:2, 211:13-212:5, 238:24-239:24; *id.* Exs. 10-16 (negative Amazon.com reviews of Fuse Chicken products).

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**C.     Fuse Chicken's Distribution Channels**

Fuse Chicken sells its products in a variety of ways, including via its website (www.fusechicken.com), ████████████████████████████████████████

████████████████████████████████     Barnhart Decl. Ex. 3 (Siegl Tr.) 161:9-162:22; Dkt. 102 (Haas Exp. Rpt.) ¶ 53.  Over ████ of Fuse Chicken's product sales occur

outside of the United States, ███████████████████████.  *See* Barnhart Decl. Ex. 4
(Fuse Chicken 30(b)(6) Tr.) 250:13-252:8; Regan Decl. ¶ 4.

Fuse Chicken began selling its products as a third-party seller on Amazon.com in 2013.
Compl. ¶ 23.  Before doing so, Fuse Chicken agreed to Amazon's Business Solutions
Agreement.  Noggle Decl. ¶ 10 & Ex. A.  Among other terms, Fuse Chicken granted Amazon a
license to "use, reproduce, perform, display, distribute, adapt, modify, re-format, create
derivative works of, and otherwise commercially or non-commercially exploit in any manner"
Fuse Chicken's trademarks and copyrighted content that Fuse Chicken uploaded to
Amazon.com.  *Id.* ¶ 11 & Ex. A.  Amazon did not filter, edit, or copy any of the images that Fuse
Chicken uploaded on the Amazon.com product detail pages for Fuse Chicken's products.  *Id.* ¶ 6.

Fuse Chicken was also an Amazon.com vendor, and sold its products to Amazon for
resale on Amazon.com.  Noggle Decl. ¶ 4.  In vending its products to Amazon, Fuse Chicken
agreed to Amazon's Vendor Terms and Conditions, thereby granting Amazon a license to "use,
copy, display, perform and distribute the Product Information . . . [and] use all trademarks or
trade names included in the Product Information."  *Id.* ¶¶ 14-16 & Ex. D.  ████████████
███████████████████████████████████████████████████████
███████████████████████████.  *Id.* ¶ 24.

### D.    Purported Sale of So-Called "Knock-Off" Products

Around November 2016, Fuse Chicken's CEO, Jon Fawcett, claimed to have noticed so-
called "knockoff" or "copycat" Bobine products advertised for sale, including on eBay and
Facebook.  Barnhart Decl. Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 59:21-23, 76:15-77:18.  The
products Mr. Fawcett identified were branded as "Cable Data" products and do not bear any Fuse
Chicken trademarks or copyrighted content.  *See, e.g.*, *id.* Ex. 20 (photographs of a Cable Data
product marked as deposition exhibit).

Though Fuse Chicken claimed that a "rash" of allegedly counterfeit and knock-off
Bobine products also flooded Amazon.com, Compl. Ex. 1, there is *no* evidence to support this
generalized claim.  ███████████████████████████████████████████████

7

██████████████████████████████████████████████████████ *See,*
*e.g.*, Barnhart Decl. Ex. 25 (Fuse Chicken's First Supp. Resp. to Interrogatory No. 4). Even by
his own telling, ██████████████████████████████████████████████████████
██████████████████████████████████. *See id.*; *compare* Noggle Decl.
¶ 25 (██████ units of Fuse Chicken products sold on Amazon.com through the end of the
discovery period), *with infra* at 9-10 (listing the four non-Fuse Chicken products Fuse Chicken
alleges were sold on Amazon.com).

E.    **Amazon's Responses to Fuse Chicken's Notices of Claimed Infringement**

Over a period of approximately 12 months, Fuse Chicken submitted ██████ reports of
claimed infringement through the Amazon.com Report Infringement web form. Skovgard Decl.
¶ 3. Many of Fuse Chicken's reports were duplicative or invalid. *Id.*

Amazon took appropriate actions in response to every one of Fuse Chicken's valid
infringement notices; Fuse Chicken has adduced no evidence to the contrary. Skovgard Decl.
¶ 4. For example, ██████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████ *See id.* ¶¶ 4-5 & Ex. A.

In addition, in August and September 2017, at Fuse Chicken's request, Amazon
expended considerable efforts to █████████████████████████████
███████████████████████████████████████ Noggle Decl.
¶ 27. ███████████████████████████████████████████. *Id.*
█████████████████████████████████████████████████████████
██████████████████████████████████. *Id.* There is no
evidence that any purportedly inauthentic Fuse Chicken product was ever sold on Amazon.com
██████████████████████████.

Since September 2017, also at Fuse Chicken's request, Amazon has required ████████
█████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Id.* ¶ 28.

### F.     This Lawsuit

On July 21, 2017, Fuse Chicken filed suit against Amazon for (1) trademark infringement, Compl. ¶¶ 50-57; (2) false designation of origin, *id.* ¶¶ 58-62; (3) copyright infringement, *id.* ¶¶ 63-67; (4) deceptive trade practices, *id.* ¶¶ 68-73; and (5) tortious interference with business expectancy, *id.* ¶¶ 74-80.

#### 1.     Fuse Chicken's purported evidence of so-called inauthentic Fuse Chicken products sold on Amazon.com.

Though Fuse Chicken's CEO testified that, based on "[a] lot of investigation work," he believes "hundreds and hundreds" of "counterfeit or knock-off" Fuse Chicken products were sold on Amazon.com, Fuse Chicken has produced none of the results of that purported investigation.  Barnhart Decl. Ex. 7 (J. Fawcett Tr.) 59:12-60:22.  Rather, after extensive fact discovery, Fuse Chicken has specifically identified only four alleged sales of non-Fuse Chicken products on Amazon.com:

(a)     **December 17, 2016 Amazon.com Review**: a purportedly inauthentic Bobine Auto product depicted in a photograph attached to an Amazon.com customer review.  *Id.* Ex. 24 (screenshot of review).  At Fuse Chicken's request, ██████████████ ████████████████████████████████████ Noggle Decl. ¶ 26.  Fuse Chicken did not identify the reviewer during discovery, and did not adduce any evidence that the particular product unit shown in the photograph was purchased on Amazon.com.  As detailed *infra* at 20, this photograph is inadmissible hearsay.

(b)     **April 29, 2017** ████████████: a Cable Data Coil Brace ████████████████ ████████████████████████████████████. Barnhart Decl. Ex. 20 (photographs of the Cable Data Coil Brace); *see also id.* Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 147:18-150:20.  Neither Fuse Chicken's trademarks nor Fuse Chicken's

copyrights appear on the product or its packaging.  *Id.*  Fuse Chicken adduced no evidence that the product was purchased on Amazon.com, as opposed to being a fraudulent return.

(c)  **May 8, 2017** : a Cable Data Coil Brace purportedly ████████████████████████████████████████████. *Id.* Ex. 21 (photographs of Cable Data Coil Brace); *see also id.* Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 175:14-178:13.  Neither Fuse Chicken's trademarks nor Fuse Chicken's copyrights appear on the product or its packaging.  *Id.*

(d)  **January 23, 2018** ███████: a Cable Data Coil Brace ████████████████████████████████████████. *Id.* Ex. 22 (photographs of Cable Data Coil Brace); *see also id.* Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 153:19-156:19.  Neither Fuse Chicken's trademarks nor Fuse Chicken's copyrights appear on the product or its packaging.  *Id.*  Fuse Chicken adduced no evidence that the product was purchased on Amazon.com, as opposed to being a fraudulent return.[2]

### 2.  Fuse Chicken's theory of injury

Fuse Chicken's unsubstantiated theory of injury is that Amazon sold, or permitted the sale of, counterfeit or knock-off Fuse Chicken products on Amazon.com; that these sales resulted in negative reviews on Amazon.com; and that these negative reviews caused Fuse Chicken to lose between ████████████ in sales worldwide over a ████ month period.  Dkt. 102 (Haas Exp. Rpt.) ¶¶ 21, 89.  Fuse Chicken calculates its estimated lost profits from the purported lost sales as between ████████████. *Id.* ¶ 21.

The series of causal links Fuse Chicken proposes to explain how its alleged harm resulted

---

[2] Fuse Chicken has identified a few other supposedly infringing products it suspects were sold on Amazon.com pages for Fuse Chicken products, such as a Bose camera battery charger, Barnhart Decl. Ex. 23 (photographs of Bose charger), as to which its own expert disclaimed infringement, *see id.* Ex. 9 (Campbell Tr.) 217:1-13.  But it appears to have abandoned any claim of infringement with respect to these products, and did not test for consumers' reactions to them. Dkt. 98 (Campbell Exp. Report) Exs. C-D.

from Amazon's purported conduct is grounded not in evidence, but in speculation.  For example, Fuse Chicken posits (1) that *any* negative review of *any* Fuse Chicken product posted on Amazon.com after November 1, 2016 "███████████████████████████████ ██████████████," even though Fuse Chicken has specifically identified only one such alleged review; (2) that any prospective Fuse Chicken customer anywhere in the world (whether shopping on Amazon.com, or in a physical retail store in the Philippines, or on a non-English website in China) would necessarily read English-language reviews posted on the U.S. site, Amazon.com, before making a purchase decision; and (3) that Fuse Chicken would have grown its sales by over ██████ but for the alleged conduct by Amazon.  Barnhart Decl. Ex. 26 (Fuse Chicken Second Supp. Resp. to Interrogatory No. 20); *see* Dkt. 99 (Ghose Exp. Rpt.) ¶¶ 20, 53; Dkt. 102 (Haas Exp. Rpt.) ¶ 21.

Beyond lacking evidentiary support, Fuse Chicken's theory of causation is *contradicted* by its Chief Business Development Officer, James Siegl.  Mr. Siegl testified that no "██████ ██████████████████████████████████████████████████████" and "██ █████████████████████████████████████████████████████████."  Barnhart Decl. Ex. 3 (Siegl Tr.) 258:13-259:4.  Thus, Fuse Chicken cannot identify any customer or distributor who failed to purchase a Fuse Chicken product as a result of reviews on Amazon.com.

## IV.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 mandates summary judgment where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The trial court "has [no] duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citation omitted).  Instead, "[t]he non-moving party is under an affirmative duty to point out

specific facts in the record as it has been established that create a genuine issue of material fact."
*McGee v. Armstrong*, 2018 WL 3956879, at *5 (N.D. Ohio Aug. 16, 2018) (citation omitted).

## V.  FUSE CHICKEN CANNOT ESTABLISH ANY TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY.

To prevail on its claim for tortious interference with business expectancy, Fuse Chicken
must prove: (1) the existence of a specific and valid business expectancy; (2) Amazon's
knowledge of the expectancy; (3) Amazon's intentional interference with the expectancy;
(4) lack of justification; and (5) resulting damages.  *Dixon v. Northridge Local Sch. Dist. Bd. of
Edn.*, 2008 WL 2572103, at *10 (Ohio Ct. App. June 5, 2008).

Amazon is entitled to summary judgment because Fuse Chicken has not identified any
specific relationship with a third party that Fuse Chicken would have had but for Amazon's
alleged interference, let alone that Amazon intentionally interfered with any such business
relationship.  *See Coventry Grp., Inc. v. Gottlieb*, 7 N.E.3d 611, 613 (Ohio Ct. App. 2014)
(tortious interference with business expectancy occurs when the defendant "causes a *third person*
not to enter into or continue a business relationship with" the plaintiff) (emphasis added;
citations omitted).  To the contrary, Fuse Chicken employees testified that Fuse Chicken's
relations with third parties were unharmed by Amazon.  *See* Barnhart Decl. Ex. 3 (Siegl Tr.)
258:13-259:4 ("███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████").

Nor can Fuse Chicken identify any valid business expectancies.  When asked to
"[d]escribe in detail any 'valid business expectancy'" Fuse Chicken has or had, its sworn
interrogatory responses identified only general "expectations" it had of Amazon, untethered to
any third party:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████████████████████████

12

███████████████████████████████████████████.

*Id.* Ex. 27 (Fuse Chicken Resp. to Interrogatory No. 21). These unsupported and conclusory allegations that Amazon deprived Fuse Chicken of economic growth cannot support a tortious interference claim.

Fuse Chicken cannot identify a valid expectancy, and so it necessarily cannot prove Amazon's knowledge of or interference with any valid expectancy, or any damages to Fuse Chicken from such interference. *See Dixon*, 2008 WL 2572103, at *10. There is no evidence to support Fuse Chicken's tortious interference claim, and summary judgment is warranted.

## VI.  FUSE CHICKEN CANNOT ESTABLISH COPYRIGHT INFRINGEMENT.

Fuse Chicken's copyright infringement claim fails as a matter of law. Fuse Chicken has neither alleged the legal basis for this claim—*i.e.*, direct, contributory, or vicarious—nor identified facts to establish infringement under any theory. *See* Compl. ¶ 65. And no matter what Fuse Chicken intended to allege, its copyright claim fails because Fuse Chicken granted a license to Amazon for the challenged content. Moreover, Amazon is immune from monetary liability under the Digital Millennium Copyright Act ("DMCA") for any alleged copyright infringement by third parties.

### A.  Fuse Chicken Never Identified a Theory of Copyright Infringement.

Summary judgment should be granted on Fuse Chicken's copyright infringement claim because Fuse Chicken has failed to articulate whether it claims direct, contributory, or vicarious infringement. *See Jones v. Staübli Motor Sports Div.*, 897 F. Supp. 2d 599, 614 (S.D. Ohio 2012) (granting summary judgment when plaintiff's "sweeping reference to the entirety of" a statute in his complaint "hardly gives notice of" the specific theory of liability, "particularly in view of the fact that his substantive allegations failed to allege any facts" to support the theory).

In pleading copyright infringement, Fuse Chicken alleges only that "[t]he foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with interference to, the rights of Plaintiff." Compl.

13

¶ 65.  Nor did any cognizable infringement theory crystallize in discovery.  In response to Amazon's interrogatory asking Fuse Chicken to "state all facts on which Fuse Chicken relies to support its contention, if any, that Amazon has infringed" Fuse Chicken's trademarks or copyrights, Fuse Chicken did not once use the word "copyright" and did not identify any particular copyright it claimed Amazon infringed, either directly or indirectly.  Barnhart Decl. Ex. 28 (Fuse Chicken Resp. to Interrogatory No. 2).  Because Fuse Chicken "never raised [any] theory" of infringement in its Complaint, did not allege any facts "providing notice to [Amazon]" of what theory it intended to pursue, and did not seek to amend its Complaint to clarify its theory of infringement, Fuse Chicken cannot newly assert any such theory now, in opposition to Amazon's motion for summary judgment.  *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673, at *5 (W.D. Wash. July 16, 2015) (declining to consider vicarious liability theory asserted in opposition to motion for summary judgment).

**B.     Fuse Chicken's Copyright Infringement Claim Lacks Evidentiary Support.**

Summary judgment is warranted for the independent reason that Fuse Chicken cannot adduce any facts to support a copyright infringement claim.  Fuse Chicken has not identified any specific product listed or sold on Amazon.com that infringes a specific copyright owned by Fuse Chicken, let alone established that Amazon was the source of any unauthorized use of Fuse Chicken's copyrighted content.  Accordingly, Amazon is entitled to judgment as a matter of law.

**1.     Fuse Chicken cannot establish direct or contributory infringement.**

To prove direct infringement, Fuse Chicken must establish that it "owns [a] copyrighted creation, and that [Amazon] copied it."  *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004).  Contributory infringement "occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes" to another's infringing conduct.  *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007).  "[S]pecific knowledge of infringement" is required; "generalized knowledge . . . of the possibility of infringement" is insufficient for contributory liability.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).

14

To the extent Amazon can construe Fuse Chicken's inchoate infringement claim, Fuse Chicken may be alleging one of two theories: (1) that Amazon is liable for hosting product detail pages that include copyrighted images of Fuse Chicken products; or (2) that Amazon is liable for selling, or permitting the sale of, products that include Fuse Chicken copyrighted content on their packaging.  Neither theory is supported by facts.  As an initial matter, any infringement claim based on Amazon.com product detail pages fails because Fuse Chicken granted Amazon a license to use the copyrighted content at issue.  In addition, there is no evidence of any specific product listing on Amazon.com that infringes a copyright owned by Fuse Chicken, and no evidence of a product with infringing packaging ever having been sold on Amazon.com.

**Product Detail Pages.**  Fuse Chicken granted Amazon a license to use its copyrighted content, so Amazon cannot be liable under any direct infringement theory premised on the use of copyrighted Fuse Chicken content on Amazon.com product detail pages.  Fuse Chicken admits that it "granted to Amazon.com and its affiliated companies a worldwide, royalty-free license" for all copyrighted content it uploaded to Amazon.com.  Compl. ¶ 24; Noggle Decl. ¶ 11 & Ex. A.  Separately, pursuant to Amazon's Vendor Terms and Conditions ("VTC"), Fuse Chicken granted Amazon a "non-exclusive, worldwide, perpetual, irrevocable and royalty-free license to . . . use, copy, display, perform and distribute [Fuse Chicken's] Product Information on or in connection with any website[.]"  Noggle Decl. ¶ 16 & Ex. D.  The VTC defines "Product Information" to include any information collected from Fuse Chicken's website, or otherwise made available to Amazon by Fuse Chicken or by a third party at Fuse Chicken's direction.  *Id.* ¶ 15 & Ex. D.  Fuse Chicken has not identified any infringing content on Amazon.com, much less any that was not licensed to Amazon.  A license is a complete "defense to a claim of copyright infringement," and Fuse Chicken has waived any arguments otherwise.  *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).

Nor can Amazon be liable for contributory infringement, because there is no evidence that Amazon actively induced or caused third parties to reproduce or upload infringing versions of Fuse Chicken's copyrighted images.  Instead, the undisputed facts show that Amazon worked

to prevent and put a stop to any infringement of Fuse Chicken's copyrights by third parties once Amazon was on notice of suspected infringement.  Skovgard Decl. ¶¶ 3-5 & Ex. A; *see* Noggle Decl. ¶¶ 19-21.  Without any indication that Amazon "actively participated in the alleged copying [by third parties] of the digital images at issue," summary judgment is warranted.  *Milo & Gabby*, 2015 WL 4394673, at *6.

  **Product Packaging.**  Fuse Chicken has suggested that certain products branded as "Cable Data"—and *not* as "Fuse Chicken" products—contained Fuse Chicken's copyrighted images on their product packaging.  Compl. Ex. 1 at 4.  But Fuse Chicken has not adduced any evidence to substantiate that suggestion, much less any evidence that anyone ever sold such copyright-infringing packaging *on Amazon.com.  See id.* at 5 (showing *non*-infringing packaging allegedly sold on Amazon.com); *see also* Barnhart Decl. Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 63:22-24 ("I don't know that I've ever seen one in-person, a [product] that uses our copyright photography on packaging."); *id.* 147:18-150:20, 153:19-156:19, 175:14-178:13 (conceding no copyrighted images appear on non-Fuse Chicken products sold on Amazon.com).

**2.**  **Fuse Chicken cannot establish vicarious infringement.**

  Vicarious liability requires proof that Amazon (1) "has the right and ability to supervise the infringing conduct," and (2) "has an obvious and direct financial interest in the infringement."  *Masck v. Sports Illustrated*, 5 F. Supp. 3d 881, 888 (E.D. Mich. 2014).

  Amazon cannot be liable for vicarious infringement because Fuse Chicken cannot show that Amazon either had the ability to supervise third parties' purported infringement of Fuse Chicken's copyrights, or benefited financially from any alleged infringement.  There are no facts to establish that "Amazon could verify the copyright status of every" piece of content posted on its website by third parties, *id.* at 888, and such a task would be impossible.  By necessity, Amazon must rely on rights owners to notify it of suspected infringing activity.  Noggle Decl. ¶¶ 17-18.  In addition, Fuse Chicken cannot show any financial benefit to Amazon attributable to the alleged copyright infringement.  Amazon did not, for example, collect image hosting fees for Fuse Chicken's copyrighted images.  *Id.* ¶ 7.

16

### C.    The Digital Millennium Copyright Act Bars Monetary Relief.

Summary judgment is appropriate to the extent Fuse Chicken's claim is premised on copyright infringement by third parties because Amazon is protected by the safe harbor of the DMCA.  *See* Dkt. 17, Fifth Additional Defense.  Specifically, Section 512(c) of the DMCA protects eligible "service providers" from all monetary and most equitable relief for copyright infringement committed by their users.  17 U.S.C. § 512(c).  To qualify for protection, a service provider must (1) "adopt," "reasonably implement[], and inform[] subscribers and account holders of . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers"; and (2) "accommodate and . . . not interfere with standard technical measures."  *Id.* § 512(i)(1).  Next, if infringing content was put online by a third party, the service provider is not liable if it: (3) has no actual or apparent knowledge of that activity, or acts expeditiously to remove or disable access to the material upon obtaining such knowledge or receiving a valid DMCA notice; and (4) lacks the right and ability to control the infringing activity or does not receive a financial benefit directly attributable to that activity.  *Id.* § 512(c).

As courts have determined, "[t]here is no doubt that Amazon fits within the definition" of a service provider eligible for the DMCA's safe harbor protections.  *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1098 (W.D. Wash. 2004), *abrogated on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010); *accord Milo & Gabby*, 2015 WL 4394673, at *7.  Amazon also satisfies the other safe harbor requirements. *First*, Amazon implemented and informed users of its anti-infringement polices.  Noggle Decl. ¶¶ 10-13 & Exs. A-C; *see also Milo & Gabby*, 2015 WL 4394673, at *8 (holding that Amazon satisfied infringement policy requirement); *Corbis*, 351 F. Supp. 2d at 1100 (same).  Amazon requires all third-party sellers to agree to policies that prohibit intellectual property infringement. *See* Noggle Decl. ¶¶ 10-13 & Exs. A-C.  Amazon also has instituted a copyright infringement notification system, a team dedicated to reviewing and responding to DCMA-compliant notifications, and a policy to terminate the seller accounts of repeat infringers.  *See id.* ¶¶ 10-13,

17

17-21.

*Second*, Amazon does not interfere with measures rights owners use to identify and protect copyrighted works.  *See Milo & Gabby*, 2015 WL 4394673, at *8 (finding criterion satisfied when plaintiff did not challenge Amazon's assertion of compliance); *Corbis*, 351 F. Supp. 2d at 1106 (same).  For example, ████████████████████████████████████████ ██████████████████████████████████████████████.  *See* Noggle Decl. ¶ 7.

*Third*, Amazon removed from Amazon.com all third-party uploaded content purportedly infringing Fuse Chicken's copyrights that was the subject of valid DMCA notices.  *See* Skovgard Decl. ¶¶ 3-5 & Ex. A.  Fuse Chicken has not identified any notice of infringement submitted by Fuse Chicken to which Amazon did not respond.

*Fourth*, Amazon neither has the ability to control third-party sellers' infringing activity nor receives a financial benefit directly attributable to any alleged infringing activity.  "Merely because Amazon could identify the [alleged copyright infringers] and terminate their accounts does not mean [Amazon] exercised the type of right and ability to control that would disqualify them from [the DMCA] safe harbor."  *Corbis*, 351 F. Supp. 2d at 1110.  Nor does Amazon have the practical ability to "analyze every image it receives from third party sellers, compare the submitted image to all other copyrighted images that exist in the world, and determine whether each submitted image infringes someone's copyright interest."  *Milo & Gabby*, 2015 WL 4394673, at *9; *see also* Noggle Decl. ¶ 18.  And Amazon does not "ma[k]e any money directly from" the copyrighted content posted by third-party sellers.  *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th Cir. 2018).

Fuse Chicken has not adduced any contrary evidence, so summary judgment must issue.

## VII.  FUSE CHICKEN CANNOT ESTABLISH TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, OR DECEPTIVE TRADE PRACTICES.

Fuse Chicken's claim for trademark infringement, and its coextensive claims for false designation of origin and deceptive trade practices—all of which are premised on Amazon's alleged infringement of Fuse Chicken's trademarks, *see* Compl. ¶¶ 38-47—fail because the only

potentially admissible evidence Fuse Chicken has identified as relating to "infringing" products are charging cables called the "Coil Brace," from the brand Cable Data.  Cable Data Coil Braces do not use Fuse Chicken's marks or anything similar, and Fuse Chicken has no evidence that anyone mistook, or was likely to mistake, Cable Data Coil Braces for Fuse Chicken products based on any use by Amazon of Fuse Chicken's trademarks.  All three claims fail because the "touchstone of liability" for each is whether Amazon's "use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Mountain Top Beverage Grp., Inc. v. Wildlife Brewing N.B., Inc.*, 338 F. Supp. 2d 827, 831 (S.D. Ohio 2003) (citations omitted) ("Claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act . . . are subject to the same standards as their federal counterparts.").[3]

### A.   Amazon Is Not Contributorily Liable Because Amazon Took Action Against All Suspect Sellers.

For Amazon to be contributorily liable for trademark infringement, false designation, or deceptive trade practices, Fuse Chicken must prove that Amazon allowed third-party sellers to continue listing infringing products for sale on Amazon.com—despite knowing or having reason to know those "particular listings [were] infringing." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107-09 (2d Cir. 2010) ("Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.").[4]  Fuse Chicken cannot identify any infringing listings of which Amazon had notice and to which Amazon failed to respond.  The undisputed facts show that Amazon took action in response to each of Fuse Chicken's trademark infringement notices.  Skovgard Decl. ¶¶ 3-5 & Ex. A.  Moreover, the record suggests only two

---

[3] The title of Fuse Chicken's second cause of action generically references 15 U.S.C. § 1125(a), a statute which includes distinct subsections for "False Designation of Origin" (15 U.S.C. § 1125(a)(1)(A)) and "False or Misleading Advertising" (15 U.S.C. § 1125(a)(1)(B)).  Fuse Chicken's allegations, however, plead only a claim for False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A).  *See* Compl. ¶ 59.

[4] *See also Coach, Inc. v. Farmers Mkt. & Auction*, 881 F. Supp. 2d 695, 700-05 (D. Md. 2012) (contributory liability applies across Lanham Act).

instances that arguably would support Fuse Chicken's contributory liability theory, and neither qualifies as trademark infringement.

*First*, Fuse Chicken identified a customer review that included a photo it claims depicts a counterfeit Bobine Auto product purchased from a third-party seller. Compl. Ex. 1 at 8. The review ███████████████████████████. Barnhart Decl. Ex. 24 (screenshot of review); Noggle Decl. ¶ 26. And there is no evidence that the product in the photograph was even sold on Amazon.com, let alone who sold it. There also is no evidence that Amazon knew or had reason to know the unidentified seller was engaging in infringement before the purported sale occurred—without which Fuse Chicken cannot prove contributory infringement. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503-04 (6th Cir. 2013); *Tiffany*, 600 F.3d at 107. Moreover, the photo is improper hearsay evidence because Fuse Chicken relies on it for the truth of the matter it asserts—*i.e.*, "This is a picture of the product purchased on Amazon.com." *See* Fed. R. Evid. 801(a). As such, the hearsay photo cannot create a genuine dispute of material fact. Fed. R. Evid. 802; *Charles v. Air Enters., LLC*, 244 F. Supp. 3d 657, 661 (N.D. Ohio 2017).



*Second*, Fuse Chicken ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ Barnhart Decl. Ex. 1 (Noggle Tr.) 219:5-16. Once Fuse Chicken notified Amazon ██████████████████████████████ ██████████████████████████████████████████████████ █████████████ Noggle Decl. ¶ 27. Amazon cannot be contributorily liable on this ground.

**B.    Amazon Is Not Directly Liable for Any Trademark Infringement, False Designation, or Deceptive Trade Practices.**

To prevail on its direct infringement theory, Fuse Chicken must establish that Amazon "us[ed] a mark to identify *its goods* that is similar to the plaintiff's trademark." *Interactive Prod. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003). Fuse Chicken's direct infringement claim rests on the three units of the Cable Data Coil Brace it suspects Amazon itself (as opposed to third-party sellers) sold through the Amazon.com Bobine product detail page: █

███████████████████████████████████████████████

████████████████████████████. *See supra* at 9-10.  These product sales cannot give

rise to liability for two independent reasons: (1) Fuse Chicken licensed Amazon to use its marks

on Amazon.com; and (2) the Cable Data Coil Brace creates no likelihood of confusion.

### 1. Amazon's licenses permit it to display Fuse Chicken trademarks online, and Fuse Chicken has waived its right to claim infringement.

Fuse Chicken granted Amazon a license to use its marks on Amazon.com, thereby

waiving its right to claim trademark infringement.  Amazon's Vendor Terms and Conditions, to

which Fuse Chicken agreed when it vended Bobine and Bobine Auto to Amazon, *see* Noggle

Decl. ¶ 14, give Amazon license to "use, copy, display, perform and distribute [Bobine and

Bobine Auto] Product Information on or in connection with any website . . . [and] use all

trademarks or trade names included in the Product Information," *id.* ¶ 16 & Ex. D.  The "Product

Information" and "trademarks . . . included in the Product Information" necessarily include the

names "Fuse Chicken," "Bobine," and "Bobine Auto."  *See id.* ¶ 15.  Fuse Chicken also agreed

to Amazon's Business Solutions Agreement, which gives Amazon "license to use, reproduce,

perform, display, . . . and otherwise commercially or non-commercially exploit *in any manner*"

Fuse Chicken's trademarks and Product Information.  *Id.* ¶¶ 10-11 & Ex. A (emphasis added);

Compl. ¶ 24.

"[W]here the trademark holder has authorized another to use its mark, there can be no

likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark

as authorized."  *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008).  The licenses

permit Amazon to use the Fuse Chicken and Bobine marks "on . . . any website," and "in any

manner"; they plainly permit Amazon to use those marks on the product detail page from which

it sold Fuse Chicken Bobine products.  Because Amazon's use of Fuse Chicken's trademarks

was licensed, there can be no liability.  *Id.*; 3 McCarthy on Trademarks and Unfair Competition

§ 18:40 (5th ed.) ("Every license carries with it a waiver of the right of the trademark owner to

sue for infringement arising out of acts . . . within the scope of the license.").

####    2.    **Fuse Chicken has not adduced evidence of any legally relevant likelihood of confusion.**

Fuse Chicken's direct infringement claims appears to be based solely on the fact that the Cable Data Coil Brace shares some visual similarities with the Bobine.  But while one product's visual similarities to another, standing alone, might, under some circumstances, give rise to *trade dress* infringement—a claim Fuse Chicken has *not* alleged—it cannot support claims for *trademark* infringement, false designation, or deceptive trade practices, which are all premised on Amazon's alleged improper use of Fuse Chicken's *trademarks*.  *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 547 (6th Cir. 2005) ("[T]rademark and trade dress are two distinct concepts under the Lanham Act.").

As depicted below, the Cable Data Coil Brace product on which Fuse Chicken bases its trademark (and coextensive) claims does not feature "Fuse Chicken," "Bobine," or any other similar mark on either its packaging or the product.  Instead, the packaging says "Cable Data," while the product within the packaging bears the mark "Creative Stand" or "Wopow":

| **Fuse Chicken Bobine** | **Cable Data Coil Brace** |
|:---:|:---:|
|  |  |

*See also* Barnhart Decl. Exs. 20-22 (photographs of Cable Data products).  And the products are far from identical; for example, unlike the T-shaped Bobine, the Cable Data Coil Brace takes the form of a hand:

**Fuse Chicken Bobine**

**Cable Data Coil Brace**




Fuse Chicken side-steps the fact that the Cable Data Coil Brace makes no use of a Fuse Chicken trademark by couching its direct infringement theory as one of "palming off"—*i.e.*, "[s]ubstituti[ng] one brand of goods when another brand is ordered."  4 McCarthy on Trademarks § 25:1; *see* Compl. Ex. 1 at 5 ("Amazon is palming off Cable Data product as Fuse Chicken product.").  But "palming off," like other forms of trademark infringement, requires Fuse Chicken to prove a likelihood of consumer confusion.  4 McCarthy on Trademarks § 25:1. That is, Fuse Chicken must—and cannot—prove that "an ordinary consumer would confuse the products at issue, which in fact come from different sources, as emanating from a single source or from associated sources."  *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 504 (6th Cir. 2013).

"There is hardly likelihood of confusion or palming off when," as here, "the name of the [source] is clearly displayed" on the allegedly infringing product.  *United Van Lines, Inc. v. Am. Holiday Van Lines, Inc.*, 487 F. Supp. 235, 239 (E.D. Tenn. 1979) (alteration in original) (citing *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972); *see also Groeneveld*, 730 F.3d at 510; *Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*, 1997 WL 698044, at *13 (N.D.N.Y. Nov. 6, 1997) ("clear labeling of a product with the manufacturers' name avoids a likelihood of confusion with the product of a competitor").  The

23

allegedly infringing product here clearly displays its source: Cable Data.  As Fuse Chicken admits in its Complaint: "A simple review of the Cable Data product indicates that it is not Fuse Chicken product as there is no Fuse Chicken branding on the packaging or product."  Compl. Ex. 1 at 5.  And Fuse Chicken's 30(b)(6) witness admitted that none of the three Cable Data units purportedly sold by Amazon bears any Fuse Chicken trademarks.  *See* Barnhart Decl. Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 147:18-150:20, 153:19-156:19, 175:14-178:13.

Notably, there is no evidence of any actual consumer confusing a Cable Data Coil Brace for a Fuse Chicken Bobine.  In response to an Amazon interrogatory asking Fuse Chicken to state each instance of consumer confusion, Fuse Chicken did not identify a single instance of a customer purportedly confusing a Cable Data Coil Brace for a Fuse Chicken product.  *See* Barnhart Decl. Ex. 25 (Fuse Chicken Supp. Resp. to Interrogatory No. 5); *United Van Lines*, 487 F. Supp. at 239 (no likelihood of confusion without evidence of actual confusion and it was "undeniable that the names of the respective companies are clearly displayed on the logos").

In lieu of factual evidence, Fuse Chicken commissioned a litigation survey of non-Fuse Chicken customers.  But Fuse Chicken's survey did not test—or even purport to test—for any confusion caused by Amazon's use of Fuse Chicken's *trademarks*.  *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 596 (S.D.N.Y. 2007) ("Confusion caused by stimuli irrelevant to the trademark at issue should be disregarded.").  Instead, Fuse Chicken's survey asked respondents to imagine ordering a Fuse Chicken Bobine charger on Amazon.com and receiving a Cable Data Coil Brace, then asked if "███████████████████████████████ ████████████████████"  Dkt. 98 (Campbell Exp. Rpt.) Ex. C at 6.

The survey did *not* attempt to discern *why* any respondent believed the imaginary product received was the imaginary product ordered.  *See id.*; *see also* Barnhart Decl. Ex. 9 (Campbell Tr.) 151:4-24.  As a result, and as Fuse Chicken's survey expert *admitted*, the survey can provide no basis to conclude that respondents' purported confusion was based on a misleading use of Fuse Chicken's *trademarks* or confusingly similar marks—as opposed to, for example, visual similarities between the physical products (*i.e.*, potential confusion as to trade dress).  *Id.* 140:24-

141:18 

."). Stated differently, it is possible that every survey respondent who answered "yes" to the "⬛⬛⬛⬛" question did so because s/he thought the physical product ordered and the physical product received *looked* similar, not because s/he had in mind any use of a Fuse Chicken mark. Indeed, that is the most likely explanation, since the Cable Data Coil Brace *does not include* any mark remotely like "Fuse Chicken" or "Bobine."[5]

This design failure is fatal to Fuse Chicken's survey, because the confusion regarding the product source necessary for trademark infringement must stem from the marks rather than other perceived similarities between the products at issue. *Malletier*, 525 F. Supp. 2d at 596.

### C.     Fuse Chicken Has No Admissible Evidence of Counterfeiting.

In addition to its general trademark infringement claim, Fuse Chicken alleges the sale of "counterfeit" products on Amazon.com. Compl. ¶¶ 38-39. Counterfeiting is a species of trademark infringement, giving rise to special damages, and requiring that the defendant intentionally use a mark "which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *see Too, Inc. v. TJX Cos., Inc.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002) (to show counterfeiting, Fuse Chicken has to identify a "product [bearing] a sham [Fuse Chicken] trademark that is an intentional and calculated reproduction of the genuine trademark"). Fuse Chicken's purported evidence of counterfeiting is limited to a single, inadmissible hearsay photo, and ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛, none of which can serve as the basis for any liability, because Amazon did not permit any sale knowing it

---

[5] Fuse Chicken's survey did ask for an explanation from respondents who answered affirmatively to a *separate* question asking whether they believed the Data Cable product was "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛," as to why they held that belief. Fuse Chicken's survey expert testified that "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛," and "⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛.'" Barnhart Decl. Ex. 9 (Campbell Tr.) 149:19-150:24.

was infringing.  *Supra* pp. 19-20.  Because Fuse Chicken's only other potentially admissible evidence of Amazon selling non-Fuse Chicken products consists of three Cable Data Coil Braces that Fuse Chicken admits bear no Fuse Chicken marks, and, separately, because Amazon's use of Fuse Chicken's trademarks was licensed, Fuse Chicken cannot prove counterfeiting.

## VIII.  FUSE CHICKEN CANNOT ESTABLISH THAT AMAZON CAUSED ITS ALLEGED LOST PROFITS DAMAGES.

To recover actual damages, Fuse Chicken bears the burden of proving that unlawful conduct by Amazon *caused* those damages.  *See Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 751 (E.D. Mich. 1998) (recovery of actual damages requires proof of "the existence of a causal connection between the [defendant's] alleged infringement and some loss of anticipated revenue").  Damages causation is a proper subject for summary judgment, and this Court has granted such relief when, as here, evidence of the factual underpinnings of the causation theory is lacking.  *See, e.g.*, *Infocision Mgmt. Corp. v. Foundation for Moral Law Inc.*, 2010 WL 750141, at *6 (N.D. Ohio Mar. 1, 2010); *Snugglers' Meadow Farms, LLC v. Land O'Lakes, Inc.*, 2006 WL 346396, at *5 (N.D. Ohio Feb. 13, 2006).

Fuse Chicken seeks lost profit damages from sales it claims it would have received but for alleged infringement on Amazon.com.  Dkt. 102 (Haas Exp. Rpt.) ¶ 104.  Fuse Chicken's causation theory rests entirely on an interdependent string of speculative premises: specifically, that (1) allegedly non-genuine Fuse Chicken products began appearing on Amazon.com after November 1, 2016, Dkt. 99 (Ghose Exp. Rpt.) ¶ 13; and (2) negative reviews and ratings of Fuse Chicken products on Amazon.com after that date *must have been* reviews of non-Fuse Chicken products, Barnhart Decl. Ex. 27 (Fuse Chicken Resp. to Interrogatory No. 20).  Fuse Chicken then contends that, because (3) the star ratings on Amazon.com for some Fuse Chicken products purportedly declined after November 1, 2016 and (4) worldwide sales of Fuse Chicken products—most of which occur outside the U.S.—were lower than Fuse Chicken's CEO desired, the entirety of the purported sales decline *must* have been caused by the purported decline in Amazon.com ratings.  This logical leap depends on the proposition that prospective Fuse

Chicken customers *across the globe* who decided not to purchase Fuse Chicken products were dissuaded by reviews of non-genuine Fuse Chicken products on *Amazon.com*—the U.S. website. Fuse Chicken then baldly concludes that the alleged infringement on Amazon.com caused Fuse Chicken to lose up to ███████████ in sales worldwide.  Dkt. 99 (Ghose Exp. Rpt.) ¶¶ 78, 86, 104; Dkt. 102 (Haas Exp. Rpt.) ¶ 21.  There is no factual support for Fuse Chicken's inferences.

### A.  Fuse Chicken Cannot Establish That There Was Even a Single Review of a Non-Fuse Chicken Product on a Fuse Chicken Product Detail Page.

As described at pages 9-10, Fuse Chicken has identified only four allegedly inauthentic products that were purportedly sold on Amazon.com—including the "product" that exists in this case only as a low-resolution photo from a ███████████ customer review.  But even assuming that the sale of so-called "knock-off" Cable Data Coil Braces can be actionable, Fuse Chicken cannot show a causal link between the purported sales and its alleged lost profits—because Fuse Chicken cannot tie those purported sales to negative Amazon.com reviews.  Fuse Chicken has identified only *one* specific product review on Amazon.com that was purportedly posted by a customer who allegedly purchased inauthentic Fuse Chicken product on Amazon.com.  *Supra* at 9.  However, as detailed *supra* at 20, that review is hearsay, and Fuse Chicken did not produce any evidence that the product pictured in the review was purchased *on Amazon.com*.

Fuse Chicken nevertheless speculates that "███████████████████████████ ██████████████████████████████████████████████████████████████ ████████" Barnhart Decl. Ex. 27 (Fuse Chicken Resp. to Interrogatory No. 20) (emphasis added). This "bald assertion" without supporting evidence "cannot serve as a basis for a finding of genuine issues of material fact on this subject."  *Infocision*, 2010 WL 750141, at *5.

### B.  Fuse Chicken Cannot Adduce Admissible Evidence That Negative Amazon.com Reviews of Non-Fuse Chicken Products Caused Any Lost Sales.

Even assuming Fuse Chicken could identify negative reviews of non-Fuse Chicken products on Fuse Chicken product detail pages, there is no evidence that any lost sales were *caused by* those reviews.  James Siegl, Fuse Chicken's Chief Business Development Officer, testified that no "████████████████████████████████████████████

27

█████████████," and "████████████████████████████████████

███████████."  Barnhart Decl. Ex. 3 (Siegl Tr.) 258:13-259:4.  The only evidence

Fuse Chicken offers of purported lost sales is Mr. Siegl's testimony that three of Fuse Chicken's

distributors told him "███████████████████████████████████████████

███████████████████████████████████████████."  *Id.* 259:11-15.  The █████████

███████████████████████████████████████ is substantiated only by

"statements made by an out of court declarant to another out of court declarant, who then relayed

the statements to" Mr. Siegl—textbook multi-layered hearsay.  *Charles*, 244 F. Supp. at 661.

Hearsay "cannot create a genuine issue of material fact" for purposes of summary judgment.  *Id.*

Even if admissible, this testimony would not establish that any customer declined to

purchase Fuse Chicken products because of Amazon.com reviews *posted by customers who

received non-Fuse Chicken products*.  In fact, customers who purchased *genuine* Fuse Chicken

products posted numerous negative Amazon.com reviews.  *See, e.g.*, Barnhart Decl. Ex. 5

(Tederous Tr.) 70:10-71:2, 211:13-212:5, 238:24-239:24.

Nor does Fuse Chicken's product reviews expert, Anindya Ghose, adequately link

purported lost sales to any alleged infringement on Amazon.com.  Other than observing ████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

Dr. Ghose does nothing to tie any purported decline in star ratings or product sales to any

infringement by Amazon.[6]  *See id.* Ex. 8 (Ghose Tr.) 58:7-13 ("████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

███████); *id.* 268:8-20 (acknowledging that correlation is not equivalent to causation).

As this Court reasoned in *Infocision Management Corp. v. Foundation for Moral Law*,

---

[6] As a predicate matter, this and certain of Dr. Ghose's other opinions are rife with
methodological errors and not grounded in facts, rendering them unreliable.  *See* Amazon's
concurrently-filed Motion to Exclude Certain Opinions of Plaintiff's Expert Anindya Ghose.

*Inc.*, an expert's "unsubstantiated opinion, alone, cannot bridge the evidentiary gap" when there is no evidence that the hypothesized causal effect actually played out in reality.  2010 WL 750141, at *6 (granting summary judgment on causation).  Because of the unbridged evidentiary gap here, Dr. Ghose's unsubstantiated opinion cannot create a genuine dispute of material fact. *Id.*; *see also Smugglers' Meadow Farms*, 2006 WL 346396, at *5-6 (granting summary judgment as to causation when plaintiffs' experts opined merely that the purported harm was "consistent with" the defendant's alleged unlawful conduct).

> **C.      There Is No Evidence Fuse Chicken Lost *International* Sales Because of Amazon.com Reviews.**

At a minimum, the Court should grant summary judgment with respect to any international lost profits Fuse Chicken seeks.  Over ███ of Fuse Chicken's sales occur outside of the U.S., ████████████████████████.  *See* Barnhart Decl. Ex. 4 (Fuse Chicken 30(b)(6) Tr.) 250:13-252:8; Regan Decl. ¶ 4.  But there are no facts to support the assumption on which Fuse Chicken's lost international profits theory relies: that prospective customers located outside of the U.S.—particularly in non-English speaking countries—consulted reviews on Amazon.com, a U.S. marketplace, when deciding whether or not to buy a Fuse Chicken product.

This assumption is premised on nothing more than a single unsubstantiated statement made by Dr. Ghose: that "███████████████████████████████ ████" Dkt. 99 (Ghose Exp. Rpt.) ¶ 53.  Dr. Ghose does not cite any authority for this statement, instead drawing a causal connection between Amazon.com reviews and international sales merely because some international Amazon marketplaces—*e.g.*, www.amazon.in, Amazon's Indian marketplace—"████████████████████████████ ████████"  *Id.*  The hypothetical possibility that a prospective customer in India could click on a link on Amazon.in to view Amazon.com reviews (of *some* product) does not create a genuine dispute of fact.  Nor is activity on Amazon's international marketplaces at issue here. *See* Dkt. 87 (affirming ruling that evidence related to the alleged infringement on Amazon's international marketplaces is not properly discoverable in this case).

Importantly, Dr. Ghose does not identify any basis for his assumption that prospective customers shopping *offline* (*i.e.*, in brick-and-mortar stores) outside of the U.S. would consult Amazon.com when making purchasing decisions.  Dr. Ghose's unsupported opinions on this issue are unreliable and conclusory, should be excluded, *see* Amazon's Motion to Exclude Certain Opinions of Plaintiff's Expert Anindya Ghose, and cannot create a genuine dispute of material fact.  *See Snugglers' Meadow Farms*, 2006 WL 346396, at *5 (finding expert reports "made up of factual exposition, speculation, or conjecture" not sufficient to create genuine dispute of fact and granting summary judgment as to causation).

## IX.  CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in Amazon's favor on each of Fuse Chicken's claims and on Fuse Chicken's prayer for actual damages.


DATED: February 1, 2019                    */s/ Clara J. Shin*

Clara J. Shin (admitted *pro hac vice*)
Nathan E. Shafroth (admitted *pro hac vice*)
Lindsey Barnhart (admitted *pro hac vice*)
David S. Watnick (admitted *pro hac vice*)
COVINGTON & BURLING, LLP

Roger M. Synenberg (#32517)
Clare C. Moran (#81134)
SYNENBERG, COLETTA & MORAN, LLC

*Attorneys for Defendant Amazon.com, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that Amazon.com, Inc.'s Memorandum of Points and Authorities complies with the applicable page limitations specified by Civil Local Rule 7.1(f).  Dkt. 22 at 1 (designating case complex).

*/s/ Clara J. Shin*

A

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2019, a copy of the foregoing Amazon.com, Inc.'s Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof, and accompanying declarations and exhibits, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Clara J. Shin*

B