**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| FUSE CHICKEN, LLC, | ) | Case No. 5:17-cv-01538-SL |
| | ) | |
| Plaintiff, | ) | Hon. Sara Lioi |
| v. | ) | Hon. Kathleen B. Burke |
| | ) | |
| AMAZON.COM, INC. | ) | **AMAZON.COM, INC.'S MOTION TO** |
| and DOES 1–10, | ) | **EXCLUDE PLAINTIFF'S EXPERT** |
| | ) | **DANIEL C.K. CHOW AND MEMORANDUM** |
| Defendant(s). | ) | **OF POINTS AND AUTHORITIES IN** |
| | ) | **SUPPORT THEREOF** |

Pursuant to Federal Rules of Evidence 702 and 403, and Local Civil Rule 7.1, Amazon.com, Inc. moves to exclude the report, opinions, and trial testimony of Fuse Chicken, LLC's expert Daniel C.K. Chow ("Motion"). This Motion is based on the Memorandum of Points and Authorities, the supporting declaration and exhibits thereto, all pleadings and papers on file in this action, and any other information and argument that the parties may present. Amazon.com, Inc. respectfully requests a hearing on its Motion.

DATED: February 21, 2019

*/s/ Clara J. Shin*

Clara J. Shin (admitted *pro hac vice*)
Nathan E. Shafroth (admitted *pro hac vice*)
Lindsey Barnhart (admitted *pro hac vice*)
David S. Watnick (admitted *pro hac vice*)
COVINGTON & BURLING, LLP

Roger M. Synenberg (#32517)
Clare C. Moran (#81134)
SYNENBERG, COLETTA & MORAN, LLC

*Attorneys for Defendant Amazon.com, Inc.*

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. Mr. Chow's Opinions Are Irrelevant to Fuse Chicken's Claims. ........ 3

1. Mr. Chow's generalized observations about counterfeiting in China are irrelevant to Fuse Chicken's claims. ........ 4

2. Mr. Chow's opinion that " [REDACTED] is irrelevant to Fuse Chicken's claims. ........ 6

3. Mr. Chow's opinion that " [REDACTED] is irrelevant to Fuse Chicken's claims. ........ 6

B. Mr. Chow's Opinions Must Be Excluded for the Separate Reason that They Are Unreliable. ........ 7

1. Mr. Chow's factual assertion that Amazon made a " [REDACTED] " for Chinese sellers is premised solely on untested hearsay. ........ 8

2. Mr. Chow's factual assertions that [REDACTED] are premised solely on untested and unsubstantiated hearsay. ........ 9

3. Mr. Chow is not qualified to opine as to the source or origin of any allegedly infringing products. ........ 11

C. Mr. Chow's Fuse Chicken- and Amazon-Specific "Opinions" Are Factual Assertions Inappropriate For Expert Testimony. ........ 12

D. Mr. Chow's Opinions Create a Serious Danger of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time. ........ 12

IV. CONCLUSION ........ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On October 12, 2018, reportedly around 7:00 or 8:00 am, Fuse Chicken's expert, Daniel C.K. Chow, began drafting a report that was finalized and served on Amazon later that evening.[1] The report, including Mr. Chow's "Qualifications" and "Assignment and List of Materials Considered," is 18 paragraphs and without exhibits. *See* Dkt. 100 (Chow Report) ¶¶ 1-18.[2] And those 18 paragraphs make only one reference to Amazon—premised on a factual assumption Mr. Chow did nothing to verify: "[REDACTED]." *Id.* ¶ 14. The remainder of Mr. Chow's last-minute report consists of irrelevant generalizations about "[REDACTED]" and unreliable and irrelevant assertions "[REDACTED]." *Id.* ¶¶ 1, 9.

Mr. Chow's report and opinions are untethered from Fuse Chicken's claims of tortious interference with business expectancy, copyright infringement, trademark infringement, false designation of origin, and deceptive trade practices. To resolve these claims, a jury must determine whether any products infringing Fuse Chicken's intellectual property rights were sold through Amazon.com, and whether consumers confused these infringing products for the genuine article. The jury will *not* be asked to make factual determinations about counterfeiting in China, Amazon's policies towards merchants based in China, or whether any "[REDACTED]" were manufactured in China.

---

[1] Watnick Decl. Ex. 1 (Chow Dep. Tr.) 210:1-8 ("I started drafting it about, I would say, 8:00 or 7:00. I get into the office at about 7:00 in the morning. I think I started it right around then . . . Q. 7:00 or 8:00 a.m. on [October] 12th? A. Yeah.").

[2] On January 28, 2019, Fuse Chicken filed the Chow Report under seal. Dkt. 100.

Mr. Chow admitted that his opinions, which purport to provide "the context for counterfeiting in China," do *not* "relate in any way" to whether allegedly infringing Fuse Chicken products were sold on Amazon.com:

> Q. You understand that Fuse Chicken has what it considers to be examples of the allegedly infringing product sold on Amazon.com? . . .
> A. Yes.
> Q. Does your opinion relate in any way to whether those products are or are not infringing? . . .
> A. *The opinions that I gave right now, no.*
> Q. And the opinions in your report? . . .
> A. I'm not sure what you're asking, but *I would say in giving the context for counterfeiting in China, no.*

Watnick Decl. Ex. 1 (Chow Dep. Tr.) 60:18-61:12 (emphases added).

In addition to being irrelevant, Mr. Chow's day-of-service opinions about counterfeiting in China are unreliable, and in many cases demonstrably wrong. Mr. Chow's opinions are also unduly prejudicial in that their only ostensible purpose is to associate Amazon with a purported Chinese counterfeiting industry. Rather than try its case on the merits, Fuse Chicken apparently intends to put Amazon on trial for all counterfeiting in China and the Chinese government's purported unwillingness to stop it. Mr. Chow's report and opinions have no connection to Fuse Chicken's claims, and Amazon respectfully requests that the Court exclude them from this case.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both *rests on a reliable foundation* and is *relevant to the task at hand*." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (emphasis added). An expert opinion must be based on "the expert's scientific, technical, or other specialized knowledge," *see* Fed. R. Evid. 702(a), and must be relevant to the claims or defenses at issue, *see* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *Goldman v. Healthcare Mgmt. Sys., Inc.*, 628 F. Supp. 2d 748, 756 (W.D. Mich. 2008) (excluding expert report under Rule 402). Moreover, even

if relevant, the Court may exclude expert testimony if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time." Fed. R. Evid. 403.

As the party offering Mr. Chow's testimony, it is Fuse Chicken's "burden to establish by a preponderance of evidence" that Mr. Chow's testimony is admissible. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 2010 WL 2643417, at *4 (N.D. Ohio July 1, 2010).

## III. ARGUMENT

### A. Mr. Chow's Opinions Are Irrelevant to Fuse Chicken's Claims.

To be admissible, expert testimony must be "sufficiently tied to the facts of the case" and must "aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citation omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" to the jury, and must be excluded. *Id.* (citation omitted).

Fuse Chicken asserts five causes of action in this case: (1) tortious interference with business expectancy, which requires Fuse Chicken to prove that Amazon intentionally interfered with a business relationship between Fuse Chicken and a third party, *see Coventry Grp., Inc. v. Gottlieb*, 7 N.E.3d 611, 613 (Ohio Ct. App. 2014); (2) copyright infringement, which requires Fuse Chicken to prove that Amazon impermissibly copied (or contributed to or benefited from another's copying of) Fuse Chicken's copyrighted materials, *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007); and (3-5) trademark infringement, false designation of origin, and deceptive trade practices, each of which requires Fuse Chicken to prove Amazon's actions created a likelihood that consumers would confuse non-Fuse Chicken product for genuine Fuse Chicken product, *see Mountain Top Beverage Grp., Inc. v. Wildlife Brewing N.B., Inc.*, 338 F. Supp. 2d 827, 831 (S.D. Ohio 2003).

Mr. Chow's opinions, on the other hand, are limited to the following: that there is counterfeiting in China, generally, Dkt. 100 (Chow Report) ¶¶ 2-8, 11-14; that [REDACTED] , *id.* ¶¶ 9-10; and that [REDACTED]

[REDACTED], *id.* ¶ 14. These so-called opinions and the factual assertions on which they are premised, true or false, will not aid the jury in resolving any dispute at issue in the case, and are therefore irrelevant and must be excluded. *Daubert*, 509 U.S. at 591; *see Sahu v. Union Carbide Corp.*, 2014 WL 3765556, at *12 (S.D.N.Y. July 30, 2014) (evidence is irrelevant where, even if true, it would not assist plaintiff in proving liability).

**1. Mr. Chow's generalized observations about counterfeiting in China are irrelevant to Fuse Chicken's claims.**

The overwhelming majority of Mr. Chow's report pertains to the broad subject of "[REDACTED]." Dkt. 100 (Chow Report) ¶ 1. Untethered from the facts of this case, Mr. Chow describes Chinese authorities' purported failure to curtail counterfeiting, the alleged proliferation of Chinese counterfeit products online, and his experience combatting counterfeit Proctor & Gamble products in China when he worked for that company over two decades ago. *Id.* ¶¶ 3-9, 11-14. None of these opinions relates to anything the jury will be asked to decide in this case. Most pertinently, Mr. Chow's opinions will not assist a jury in determining whether any allegedly infringing products were actually sold on Amazon.com, whether consumers were likely to confuse them for Fuse Chicken products, or whether Fuse Chicken has suffered any damages from the alleged infringement. *See Daubert*, 509 U.S. at 591 (expert testimony must "aid the jury in resolving a factual dispute") (citation omitted).

Mr. Chow *admitted* this at his deposition. After testifying that trademark infringement was the only claim of which he was aware in this case, Watnick Decl. Ex. 1 (Chow Dep. Tr.) 54:6-23, Mr. Chow conceded that his opinions about "counterfeiting in China," generally, are not relevant to proving infringement:

> Q. You understand that Fuse Chicken has what it considers to be examples of the allegedly infringing product sold on Amazon.com? . . .
> A. Yes.
> Q. Does your opinion relate in any way to whether those products are or are not infringing? . . .

      A. . . . *I would say in giving the context for counterfeiting in China, no.*

*Id.* 60:18-61:12 (emphasis added).

Mr. Chow attempts to justify his opinions by claiming that "in order to understand Fuse Chicken's case, it is necessary to put the case in the larger context, and the larger context of the case involves understanding counterfeiting in China." *Id.* at 278:23-279:6. Mr. Chow is wrong. There is no record evidence that any third-party seller in China sold an inauthentic Fuse Chicken product on Amazon.com, and the "larger context" is irrelevant. Mr. Chow's descriptions of the apparent proliferation of counterfeiting in China have no bearing on Fuse Chicken's claims and allegations, and are a classic example of impertinent background material warranting exclusion.

*In re Heparin Prod. Liab. Litig.*, 2011 WL 1059660, at *10 (N.D. Ohio Mar. 21, 2011) is instructive. In that case, a product-liability action about an allegedly contaminated pharmaceutical apparently sourced from China, the Court deemed "context" testimony, like Mr. Chow's, to be improper, and excluded it. Specifically, the Court excluded "generalized opinions" about China including: "1) China is a risky place from which to acquire source materials, especially [the drug at issue]; 2) the risks of sourcing materials in China include the risks of counterfeits and contaminants; [and] 3) [the defendant] should have anticipated certain cultural phenomenon within the Chinese business environment, such as intentional counterfeiting." *Id.* at *9-11. This Court excluded those opinions because, among other things, they were irrelevant and did not have "an adequate connection or link to the conduct of the parties in th[at] case." *Id.* at *11. Likewise, in *Young v. Mentor Worldwide LLC*, the court excluded an expert's general opinions about polypropylene mesh products, rather than the "specific mesh product" at issue in the case, despite the expert's assertion that "[i]f we want to understand what is occurring after implantation of any polypropylene mesh of variable design, we have to know all this background, and we have to [know] all these studies, and all the knowledge which was accumulated over the years. Then we can interpret accurately case-specific material." 312 F. Supp. 3d 765, 771 (E.D. Ark. 2018) (brackets omitted).

As in *In re Heparin* and *Young*, Mr. Chow's proposed testimony to help the jury "understand[] counterfeiting in China" has no relevant connection to the facts of Fuse Chicken's case or the questions the jury must answer.

**2. Mr. Chow's opinion that is irrelevant to Fuse Chicken's claims.**

Mr. Chow's report makes *one* passing reference to Amazon, and that reference is unrelated to Fuse Chicken's claims. Specifically, Mr. Chow opines that: " ." Dkt. 100 (Chow Report) ¶ 14.

Mr. Chow's opinion on this matter is irrelevant. Determining whether " " and whether " " has no probative value in determining whether Amazon.com or third parties sold products that infringed Fuse Chicken's trademarks or copyrights, which is the issue the jury must resolve. Mr. Chow's testimony therefore would not assist the jury in determining whether any product sold on Amazon.com was inauthentic and/or infringing.

Moreover, and as further explained in Section B.1, Mr. Chow has no reliable basis for his predicate assertion about Amazon's " "—he is simply regurgitating passing references to such a " " from hearsay news articles he read and assumed (without checking) were true.

**3. Mr. Chow's opinion that " is irrelevant to Fuse Chicken's claims.**

Mr. Chow's report contains only *two* paragraphs that even purport to relate to any facts from this case. *See* Dkt. 100 (Chow Report) ¶¶ 9-10. In those two paragraphs, Mr. Chow makes

allegations regarding the geographic locations of where purportedly infringing Fuse Chicken products are manufactured and sold:

*Id.* On this basis, he opines " ." *Id.* ¶ 9.

The geographic location of the Cable Data Coil Brace manufacturer or any third-party sellers of Fuse Chicken products are irrelevant to "resolving [any] factual dispute" at issue in the case. *Daubert*, 509 U.S. at 591, 597; *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993) ("[E]xpert testimony that does not relate to any issue in the case is not relevant and therefore not helpful."); *Henry v. Allstate Property & Casualty Ins. Co.*, 2009 WL 10665203, *1 (W.D. Tenn. 2009) (in insurance coverage matter, excluding expert opinion regarding the cause of the house fire at issue, because it was irrelevant to determining defendant's coverage obligations). With respect to the Cable Data Coil Brace, the pertinent issues include whether the Cable Data Coil Brace infringes Fuse Chicken's intellectual property rights; whether the Cable Data Coil Brace was sold on Amazon.com; whether consumers mistakenly believe the Cable Data Coil Brace is made by Fuse Chicken; and whether Amazon or anyone else used Fuse Chicken copyrighted content in connection with the sale of that product. With respect to third-party sellers of Fuse Chicken products, the probative issues include whether they sold any inauthentic products on Amazon.com and, if so, whether they infringed Fuse Chicken's intellectual property by creating a likelihood of consumer confusion. Whether or not those companies are located is irrelevant.

**B. Mr. Chow's Opinions Must Be Excluded for the Separate Reason that They Are Unreliable.**

In addition to being irrelevant, Mr. Chow's assertions concerning Amazon's purported policy of encouraging Chinese merchants to sell goods on Amazon.com and the purported

locations of alleged Fuse Chicken "counterfeiters" are not reliable and should be excluded under Federal Rule of Evidence 702. Rather than the required "sufficient facts or data," *id.*, Mr. Chow bases his assertions on speculation, untested assumptions, and uncorroborated hearsay.

**1. Mr. Chow's factual assertion that [REDACTED] is premised solely on untested hearsay.**

Mr. Chow's only bases for opining on [REDACTED] are two hearsay news articles, both of which make this factual assertion only in passing, and without support. Watnick Decl. Ex. 1 (Chow Dep. Tr.) 167:25- 172:5; *id.* Ex. 5 (Forbes Article) ("When Amazon began pushing for more Chinese merchants to start selling on their U.S. and European marketplaces in 2015 . . . ."); *id.* Ex. 6 (CNBC Article) (same).

Mr. Chow admitted that he did nothing to confirm whether these in-passing statements about Amazon's purported "push" were accurate; he simply "assumed" they were. *Id.* Ex. 1 (Chow Dep. Tr.) 168:15-172:5 ("I assumed that the magazine or . . . publication did their fact checking. . . . I, again, assumed that this is a reputable publication and they did their fact checking."). Mr. Chow's "opinion" is based on nothing more than a rote relay of hearsay, which is categorically unreliable and inadmissible. *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (citation omitted) (when an expert seeks to transmit hearsay to a jury, he "is no longer applying his extensive experience and a reliable methodology, [and] *Daubert* teaches that the testimony should be excluded"); *see also Rover Pipeline, LLC v. 10.55 Acres of Land*, 2018 WL 4386024, *9 (N.D. Ohio Sept. 14, 2018) ("assumptions must be supported by evidence in the record"). Had Mr. Chow attempted to confirm these articles by consulting the evidentiary record in this case, he would have found no support for them. None of the Amazon witnesses who were asked about this alleged "[REDACTED] knew what Fuse Chicken's counsel was talking about. *See* Watnick Decl. Ex. 7 (Amazon 30(b)(6) Dep. Tr.) 180:10-16 ("Q. [REDACTED]

[REDACTED]

[REDACTED]); *id.* Ex. 8 (Effgen Dep. Tr.) 138:24-139:4

(“Q. . . . A. I don’t know.”).

2. **Mr. Chow’s factual assertions that are premised solely on untested and unsubstantiated hearsay.**

Mr. Chow asserts that three purported third-party sellers— . Dkt. 100 (Chow Report) ¶ 10. There is no evidentiary support for Mr. Chow’s fact allegations other than hearsay assertions fed to Mr. Chow by Fuse Chicken’s outside counsel.

. Mr. Chow testified that Fuse Chicken’s outside counsel told him that , but he did not know counsel’s basis for this assertion—which, in fact, has no basis in the record. Watnick Decl. Ex. 1 (Chow Dep. Tr.) 161:19-163:13.[3] Counsel’s unfounded communication is hearsay. And “[w]hile an expert may rely on hearsay in forming his opinion, he may not simply transmit that hearsay to the jury to prove the truth of the matter asserted.” *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 678 (S.D.N.Y. 2011) (citation omitted). But that is precisely what Mr. Chow proposes to do: transmit to the jury Fuse Chicken’s counsel’s factually unsupported claim that . That is not “expert testimony,” and should be excluded. *See Mejia*, 545 F.3d at 197.

Mr. Chow also claims, but cannot substantiate, that . At Mr. Chow’s deposition, he testified that he believed that the company was ,” a fact he then claimed to have learned through a Google

[3] Fuse Chicken has produced the emails between its counsel and Mr. Chow, *id.* Ex. 2, and Mr. Chow’s notes of his discussions with counsel, *id.* Ex. 3, and neither contains any evidence indicating .

search. Watnick Decl. Ex. 1 (Chow Dep. Tr.) 152:5-154:13 [REDACTED] [REDACTED]. But a Google search reveals no such information. *See* google.com/search?q="[REDACTED]". Moreover, Fuse Chicken's counsel specifically informed Mr. Chow that all information found about [REDACTED]":

[REDACTED]

Watnick Decl. Ex. 2 at FCEXP00000278. Mr. Chow's contrary testimony is unreliable and must be excluded.

[REDACTED]. Mr. Chow's factual representations about [REDACTED] are also based on nothing other than representations made by Fuse Chicken's outside counsel. At his deposition, Mr. Chow testified that he "[REDACTED]" that [REDACTED] [REDACTED]. *Id.* Ex. 1 (Chow Dep. Tr.) 166:6-15. Once again, there is no basis for this hearsay assertion,[4] and Mr. Chow's parroting of it is categorically unreliable. *Mejia*, 545 F.3d at 197. Indeed, the only mention of [REDACTED] Mr. Chow makes in his report is to state that the company is based in "[REDACTED]." Dkt. 100 (Chow Report) ¶ 10.

That assertion—that [REDACTED]—is baseless. Mr. Chow's only supporting citation is to the web address [REDACTED]/, which appears to be the webpage for an unrelated company called Guangzhou Xi Xun Electronics Co., Ltd. Watnick Decl. Ex. 4 (Xi Xun webpage screenshots). Mr. Chow could not explain how Guangzhou Xi Xun Electronics Co., Ltd. pertained to [REDACTED] he just [REDACTED]

[4] Fuse Chicken's production of its counsel's communications with Mr. Chow contain no such statements. *Id.* Ex. 2 (Mr. Chow's emails with counsel).

because "[redacted]." *Id.* Ex. 1 (Chow Dep. Tr.) 154:14-155:16. Mr. Chow may not present this speculation as "expert opinion." *Rover Pipeline*, 2018 WL 4386024, *9 ("Expert testimony may not be based on mere speculation, and assumptions must be supported by evidence in the record").

[redacted] Mr. Chow does not actually opine that [redacted] sold—or is even likely to have sold—infringing Fuse Chicken products on Amazon.com. He asserts only that it (like [redacted] is based in "[redacted]" Dkt. 100 (Chow Report) ¶ 10. Yet there is no evidence in the record that it was a third-party seller of Fuse Chicken products on Amazon.com, and Mr. Chow has never asserted otherwise.

### 3. Mr. Chow is not qualified to opine as to the source or origin of any allegedly infringing products.

Mr. Chow is not an investigator and he does not describe any credentials for identifying the source of purportedly infringing Fuse Chicken products. Instead, Mr. Chow writes at length about his prior experience as an *attorney* for Proctor & Gamble in China, when [redacted]" Dkt. 100 (Chow Report) ¶ 6. Nowhere in his report does Mr. Chow assert that he is capable of performing this investigatory work himself, that he did so in forming his opinions in this case, or that he hired an investigator to do so. *See Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529, 540 (N.D. Ohio 2015) (expert's opinion must rely on "on his own skills, education, or experience"). Indeed, it is hard to imagine how Mr. Chow could have performed such an investigation, given that he was notified about this case only two days before his expert report was due, Watnick Decl. Ex. 1 (Chow Dep. Tr.) 210:16-211:1, and wrote his report in mere hours, relying on spoon-fed factual assertions from counsel, *see id.* at 161:19-163:13, 166:6-15, 210:1-8; *In re Prempro Prod. Liab. Litig.*, 765 F. Supp. 2d

1113, 1119 (W.D. Ark. 2011) (excluding as unreliable expert report "written in about five hours at the behest and assistance of Plaintiffs' counsel").

**C. Mr. Chow's Fuse Chicken- and Amazon-Specific "Opinions" Are Factual Assertions Inappropriate For Expert Testimony.**

Mr. Chow's only "opinions" bearing a direct relationship to the facts of this case or Amazon are: (1) his claim that , Dkt. 100 (Chow Report) ¶ 14; and (2) the alleged geographic location of certain sellers and manufacturers, *id.* ¶ 9-10. These are not expert "opinions" based on Mr. Chow's "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702(a); rather, they are factual assertions relayed to Mr. Chow by counsel or through the internet, *see supra* Section A.1-3, and should be excluded. *See Wood v. Montana Dep't of Revenue*, 2011 WL 4348301, at *2 (D. Mont. Sept. 16, 2011) (excluding expert's "factual assertions" as not amounting to "scientific, technical, or other specialized knowledge").

**D. Mr. Chow's Opinions Create a Serious Danger of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time.**

While devoid of any relevance to Fuse Chicken's legal claims, Mr. Chow's report is dense with cultural generalizations, broad assertions about China's counterfeiting industry, and guilt-by-association conclusions:



Dkt. 100 (Chow Report) ¶ 7.

. *Id.*

*Id.*

. *Id.* at 9.



. *Id.* at 12.

*Id.* at 14.

Mr. Chow's opinions present a severe "a danger of . . . unfair prejudice" to Amazon, and should be excluded under Federal Rule of Evidence 403 even if they were relevant (which they are not). *In re Heparin* reached this same conclusion for proposed expert testimony about Chinese business culture and the risk of counterfeiting in China (which it also deemed irrelevant):

> [G]eneralized opinions about Chinese culture and business practice have no link to the parties involved in this case and have a serious risk of prejudicing the jury. Courts repeatedly exclude this type of testimony because the risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even xenophobia.

2011 WL 1059660, at *11 (citation omitted); *see also Hong v. City of St. Louis*, 698 F. Supp. 180, 181-82 (E.D. Mo. 1988) (granting new trial where statements made during "cross-examination of plaintiff Dr. Hong concerning plaintiff's position with the government of China . . . could have prejudicially appealed to xenophobic tendencies of the jury.").

Any inferences the jury may derive from Mr. Chow's testimony that product sold on Amazon.com by Chinese sellers must be or is likely to be counterfeit would be unfairly prejudicial because it would "beg[] the jury to draw an inference adverse to [Amazon] based entirely on its [third-party sellers'] national origin." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1007, 1009 (9th Cir. 2001) ("Allowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype. In stark terms, [the expert's] syllogism reduced to this: (a) Korean businesses generally are corrupt;

(b) Jinro is a Korean business; (c) therefore, Jinro is corrupt. . . . [T]his is an impermissible syllogism.").

At the end of Mr. Chow's deposition, counsel for Fuse Chicken asked him: "Why are your opinions . . . relevant to this case?" Watnick Decl. Ex. 1 (Chow Dep. Tr.) 278:20-22. In response, Mr. Chow gave a speech in which he proposed to extend to the jury an unfairly prejudicial invitation to punish Amazon for China's alleged misdeeds (producing counterfeits), and Amazon's alleged misdeeds outside of this case (creating a "paradise for counterfeiters"):

> Well, in order to understand Fuse Chicken's case, it is necessary to put the case in the larger context, and the larger context of the case involves understanding counterfeiting in China because these counterfeit products are the source of— China's the source of these counterfeit products, and they've been able to enter the United States through Amazon's website.
>
> And in addition to this, it is important to understand Amazon's important role in facilitating the entry of Chinese counterfeits onto the U.S. market, that, in fact, Amazon has created what I've called a paradise for counterfeiters by giving them what they've always wanted, which is a legitimate distribution channel that they can use to reach retailers and end use consumers.

*Id.* 278:23-280:1.

Mr. Chow has no reliable basis for these irrelevant opinions, *see supra* Sections A-B, which amount to precisely the sort of unfairly prejudicial "evidence" that should be excluded under Rule 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice . . . ."); *In re Heparin*, 2011 WL 1059660, at *11; *Hong*, 698 F. Supp. at 181-82; *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 2012 WL 5878730, at *11 (E.D. La. Nov. 21, 2012) (in defective products class action regarding Chinese drywall, excluding under Rule 403 "reports of problems with other products manufactured in China, including lead-based paint in toys").

This case is not a referendum on China's counterfeiting controls. If Fuse Chicken is to prevail on its claims, it must prove to a jury by a preponderance of the evidence that non-Fuse Chicken products were sold as Fuse Chicken products Amazon.com, and that consumers

confused those non-Fuse Chicken products for the genuine article. Mr. Chow cannot help Fuse Chicken make that proof; he can only encourage the jury to punish Amazon for unsubstantiated allegations unrelated to this case. The Court should prevent him from doing so.

**IV. CONCLUSION**

For the foregoing reasons, the Court should strike Mr. Chow's report in its entirety and should preclude Mr. Chow from presenting any opinion at trial or at any other stage of these proceedings.

DATED: February 21, 2019

*/s/ Clara J. Shin*

Clara J. Shin (admitted *pro hac vice*)
Nathan E. Shafroth (admitted *pro hac vice*)
Lindsey Barnhart (admitted *pro hac vice*)
David S. Watnick (admitted *pro hac vice*)
COVINGTON & BURLING, LLP

Roger M. Synenberg (#32517)
Clare C. Moran (#81134)
SYNENBERG, COLETTA & MORAN, LLC

*Attorneys for Defendant Amazon.com, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February, 2019, a copy of the foregoing Amazon.com, Inc.'s Motion to Exclude Plaintiff's Expert Daniel C.K. Chow and Memorandum of Points and Authorities in Support Thereof, and accompanying declarations and exhibits, was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Clara J. Shin*