# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| FUSE CHICKEN, LLC | ) | CASE NO. 5:17-cv-01538-SL |
| | ) | |
| Plaintiff, | ) | Hon. Sara Lioi |
| | ) | Hon. Kathleen B. Burke |
| vs. | ) | |
| | ) | |
| AMAZON.COM, Inc., et. al., | ) | **FUSE CHICKEN, LLC'S OPPOSITION TO** |
| | ) | **AMAZON.COM, INC.'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant(s). | ) | |

Pursuant to Federal Rule of Civil Procedure 56, Fuse Chicken, LLC opposes Amazon.com, Inc.'s motion for summary judgment ("Opposition") as to all claims in the Complaint. Dkt. 1. This Opposition is based on the Memorandum of Points and Authorities, the supporting declarations, all pleadings and papers on file in this action, and any other information and argument that the parties may present. Fuse Chicken respectfully requests a hearing.

DATED: March 1, 2019

_/s/_ _____

Kathryn Lee Boyd (admitted _pro hac vice_)
Matthew P. Rand (admitted _pro hac vice_)
McKool Smith, P.C.
300 South Grand Avenue
Suite 2900
Los Angeles, California 90071
(213) 694-1180

Eric B. Halper (admitted _pro hac vice_)
Alyssa M. Pronley (admitted _pro hac vice_)
McKool Smith, P.C.
One Bryant Park
47th Floor
New York, New York 10036
(212) 402-9413

Joel A. Holt (#0080047)
Ickes\Holt
4301 Darrow Road, Suite 1100
Stow, Ohio 44224

_Attorneys for Plaintiff Fuse Chicken, LLC_

## TABLE OF CONTENTS

I.     Introduction and Summary of Argument ................................................................1

II.    Statement of Facts ...............................................................................................2

       A.     Amazon Sold Fake Products Using Fuse Chicken's Intellectual
              Property ....................................................................................................2

              1.     Amazon Gives Third-Party "Sellers" Unfettered Access ................................3

              2.     Suspicious Third Party Sellers Began Selling on Amazon ..............................4

              3.     Returns and Test-Buys Show Non-Fuse Chicken Products
                     from Amazon ....................................................................................5

              4.     Amazon Permitted Sales of Fakes Using Fuse Chicken's IP ........................7

              5.     ███████████████████████████ ....................................................8

              6.     ███████████████████████████ ....................................................8

       B.     Amazon Failed to Adequately to Respond to Fuse Chicken .......................................9

              1.     Fuse Chicken Notified Amazon of Infringement ............................................9

              2.     Amazon Did Not Properly Respond to Fuse Chicken's
                     Notices .......................................................................................10

              3.     ██████ ███ ██████ ███ █████ ███ ██████ ...............................12

              4.     Protection of Intellectual Property Was Ineffective or
                     Unavailable ..................................................................................13

       C.     Fuse Chicken Product Purchasers Left Negative Reviews on Amazon .....................13

              1.     Fake Products Caused Consumer Confusion and Negative
                     Reviews .......................................................................................13

              2.     Negative Reviews on Amazon Harmed Fuse Chicken ..................................15

III.   Summary Judgment Standard ..............................................................................16

IV.    Amazon Interfered With Fuse Chicken's Business Expectancy ..............................17

i

**V.**    Whether There is a Copyright Claim is materially disputed ....................................19

    A.    Fuse Chicken Can Establish Direct Infringement....................................19

    B.    Fuse Chicken Can Establish Contributory Infringement ............................19

    C.    Fuse Chicken Can Establish Vicarious Infringement .................................20

    D.    Amazon's Alleged Responses to Notices Were Insufficient .....................20

    E.    The Digital Millennium Copyright Act Does Not Apply .........................21

**VI.**    Amazon's License is Not A Defense in This Case.................................................22

**VII.**    Evidence Exists to Prove Amazon Violated the Lanham Act ...............................23

    A.    Fuse Chicken Can Establish Direct Trademark Infringement ...................23

    B.    Fuse Chicken Can Establish Contributory Trademark Infringement.........25

    C.    Amazon is Liable for False Designation of Origin, False Advertising and Deceptive Trade Practices .................................................................27

**VIII.**    Amazon Caused Fuse Chicken's Lost Profits Damages ........................................29

**IX.**    Conclusion............................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Council of Certified Podiatric Physicians and*
  *Surgeons v. American Bd. of Podiatric Surgery, Inc.*,
  185 F.3d 606 (6th Cir. 1999) ........................................................................28

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................16, 29

*Balance Dynamics v. Schmitt*,
  204 F.3d 683 (6th Cir. 2000) ........................................................................28

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................16

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*,
  78 F.3d 1111 (6th Cir. 1996) ........................................................................27

*Chanel, Inc. v. Wrice*,
  No. 5:13-cv-891, 2015 WL 521144 (Feb. 9, 2015) (Lioi, J.) ......................23

*Coach, Inc. v. Gata Corp.*,
  No. 10-cv-141-LM, 2011 WL 2358671 (D.N.H. June 9, 2011)..................26

*Coach, Inc. v. Goodfellow*,
  717 F.3d 498 (6th Cir. 2013) ..................................................................25, 27

*Columbus Fin., Inc. v. Howard*,
  327 N.E.2d 654 (Ohio 1975) ........................................................................26

*Corbis Corp. v. Amazon.com, Inc.*,
  351 F. Supp. 2d 1090 (W.D. Wash. 2004) ..................................................22

*Da Hua Non-Ferrous Metals Co., Ltd. v. W.D. Mask Cotton Co.*,
  No. 00, 1997 WL 234610 (6th Cir. 1997) ....................................................22

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
  109 F.3d 275 (6th Cir. 1997) ........................................................................24

*Dawson v. Blockbuster, Inc.*,
  No. 86451, 2006 WL 1061769 (Ohio Ct. App. Mar. 16, 2006) ..................28

iii

*Dixon v. Northridge Local School Dist. Bd of Edn.*,
No. 2007-CA-101, 2008 WL 2572103 (Ohio Ct. App. June 5, 2008) ........................................ 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ................................................................................................................ 19

*Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*,
30 F.3d 466 ........................................................................................................................... 27

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*,
759 F.2d 1261 (6th Cir. 1985) ................................................................................................ 24

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*,
423 F.3d 539 (6th Cir. 2005) .................................................................................................. 25

*Ginn v. Stonecreek Dental Care*,
30 N.E.3d 1034 (Ohio Ct. App. 2015) ..................................................................................... 18

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
730 F.3d 494 (6th Cir. 2013) .................................................................................................. 25

*Hard Rock Cafe Int'l (USA) Inc. v. Morton*,
No. 97 Civ. 9483 (RPP), 1999 WL 717995 (S.D.N.Y. Sept. 9, 1999) ........................................ 24

*Hendricks v. Physicians Skin & Weight Centers, Inc.*,
No. SACV 12-2169 ................................................................................................................. 29

*Jones v. Staübli Motor Sports Div.*,
897 F. Supp. 2d 599 (S.D. Ohio 2012) .................................................................................... 22

*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) .................................................................................................. 19

*LidoChem, Inc. v. Stoller Enters., Inc.*,
500 Fed.Appx. 373 (6th Cir. 2012) .................................................................................... 17-18

*Lorillard Tobacco Co. v. Amouri's Grand Foods*,
453 F.3d 377 (6th Cir. 2006) .................................................................................................. 23

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ................................................................................................ 26

*Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007) ..................................................................................... 25

*Mann v. Wal-Mart Store East, LP*,
   No. 4:12-CV-84-SKL, 2014 WL 12531082 (E.D. Tenn. Apr. 1, 2014)........................................1

*Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*,
   852 F. Supp. 2d 925 (S.D. Ohio 2012) ......................................................17

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   2015 WL 4394673 (W.D. Wash. July 16, 2015) ..........................................22

*NCR Corp. v. ATM Exchange, Inc.*,
   No. 1:05CV383, 2006 WL 1401635 (S.D. Ohio 2006) ................................19

*Preston v. Murty*,
   512 N.E.2d 1174 (Ohio 1987) ....................................................................18

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
   477 F.3d 383 (6th Cir. 2007) ......................................................................22

*Rosetta Stone Ltd. v. Google, Inc.*,
   676 F.3d 144 (4th Cir. 2012) ......................................................................26

*Sherwood v. BNSF Railway Co.*,
   No. 1:16-cv-00008-EJL-REB, 2018 WL 2144147 (D. Idaho May 15, 2018) ..............................21

*Slone v. Purina Mills, Inc.*,
   927 S.W.2d 358 (Mo. Ct. App. 1996) .........................................................17

*Superhype Pub., Inc. v. Vasiliou*,
   838 F.Supp. 1220 (S.D. Ohio 1993) ...........................................................20

*Sygma Photo News, Inc. v. High Soc'y Magazine*,
   778 F.2d 89 (2nd Cir. 1985) .......................................................................20

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
   488 F.3d 352 (6th Cir. 2007) ......................................................................29

*Tiffany (NJ), Inc. v. eBay, Inc.*,
   600 F.3d 93 (2d Cir. 2010) .....................................................................26-27

*United Van Lines, Inc. v. Am. Holiday Van Lines, Inc.*,
   487 F. Supp. 235 (E.D. Tenn. 1979).............................................................25

*Vuitton et Fils, S.A. v. Crown Handbags*,
   492 F.Supp. 1071 (S.D.N.Y. 1979) *aff'd*, 622 F.2d 577 (2d Cir. 1980)........................................23

*Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*,
 No. 97-CV-1274, 1997 WL 698044 (N.D.N.Y. Nov. 6, 1997) ...................................................... 25

*Zinganything, LLC v. Imp. Store*,
 158 F. Supp. 3d 668 (N.D. Ohio 2016) (Lioi, J.) .......................................................................... 19

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

The facts of this case are hotly disputed and Amazon's motion for summary judgment should be denied. Amazon.com, Inc. ("Amazon") willfully used and encouraged third parties to use Fuse Chicken's ("FC") trademarks and copyrights to sell fake, inferior FC products on its global e-commerce platform, causing purchasers to be confused and to leave negative reviews on FC's Amazon product detail pages ("PDPs"). That conduct, which began in November 2016, and the resulting negative Amazon reviews caused FC to suffer harm to its reputation and a loss of sales across all of its brand lines and throughout its global distribution channels.[1]

Substantial evidence demonstrates that Amazon did, in fact, infringe FC's intellectual property ("IP"). *First*, starting in November 2016, Amazon permitted unfettered access to an influx of suspect, third-party sellers sending fake FC products to Amazon's fulfillment centers to be sold on FC's PDPs, displaying FC's trademarks and copyrights. *Second*, Amazon did not, nor did it allow FC to vet, monitor, or restrict any of these third party sellers to ensure their products were genuine or that their use of FC's IP was authorized. *Third*, at the same time, thousands of third-party PDPs were created on Amazon.com using FC's trademarks and copyrights that attempted to sell and did sell items that were not FC products. *Fourth*, during the same time, FC began receiving customer returns of knockoff FC products purchased from FC's PDPs. *Fifth*, FC conducted "test buys"—buying what Amazon represented were genuine products and received fakes. *Sixth*, starting in the fall of 2016, FC's Amazon.com reviews and star ratings plummeted and at least one review attached a photograph of a fake FC product.

---

[1] Amazon points to the over 290,500 pages of discovery without mentioning that over 280,300 pages were produced by Fuse Chicken. Given Amazon's size and resources, its discovery is deficient on its face. This litigation tactic comes from the company's well-documented culture of secrecy. *See, e.g.*, Rand Decl. Ex. 1. Despite these difficulties, Fuse Chicken has evidence to meet its burden at trial on all claims. *See Mann v. Wal-Mart Store East, LP*, No. 4:12-CV-84-SKL, 2014 WL 12531082, at *5 (E.D. Tenn. Apr. 1, 2014).

1

In response to the negative reviews, FC investigated the performance of its own products and determined that the products performed the same as they had before the negative reviews appeared, thus ruling out that the products themselves caused the precipitous drop in ratings. This finding was confirmed by professional reviews, which did not change during this period. Even Amazon admits that FC notified Amazon over a thousand times that its IP was being infringed. █████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████

As a result, the negative reviews on Amazon became entrenched and potential customers (distributors, retailers, and end users)—who regularly consult Amazon product reviews—were turned away from FC's brand. Consequently, FC's sales and exponential growth, that it enjoyed prior to November 2016, flat-lined, causing permanent damage.

Amazon contends that FC can point to no evidence to support three overarching factual issues: (1) ██████████████████, *see* Dkt. 119 at 7-8; (2) ████████████ ██████████████████, *see id*. at 8-9; and (3) ████████ ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████. *See* Fed. R. Civ. Pro. 56(c).

## II.  STATEMENT OF FACTS

### A.  Amazon Sold Fake Products Using Fuse Chicken's Intellectual Property

When FC began selling its genuine products on Amazon in 2013 it agreed to the Amazon Business Solutions Agreement ("ABSA"), which permitted Amazon to use its copyrighted images and its registered trademarks. *See* Dkt. 121-1 at 3. Under the ABSA, Amazon agreed not to interfere with FC's right to protect its IP. *See id*. Notably, "████████████████████████████

████████████████████████████████████████

████████" Rand Decl. Ex. 3 at 19-20.

By the fall of 2016, FC was going strong, selling 16 products on Amazon. *See* Rand Decl. Ex. 4, Ex. A. Each PDP described the product offered using FC's copyrighted photographs and trademarked names, and included FC's warranty information. *See, e.g.*, Rand Decl. Exs. 5, 6. ██

████████████████████████████████████████

██████████████████████████████ *See* Chow Decl. ¶¶ 4-; *see also* Rand Decl. Ex. 7. ████████████████████████████████

████████████████████████████████████████

████████████████████ . *See* Chow Decl. ¶¶ 4-7; *see also* Rand Decl. Ex. 12.

1. **Amazon Gives Third-Party "Sellers" Unfettered Access**

████████████████████████████████████ . *See* Rand Decl. Ex. 8 at 253:21-25. ████████████████████████████████████

████████████████████████████████████:

- ████████████████████████████████████████
  ████████████████ *See* Rand Decl. Ex. 2 at 175:16-22, 189:13-14.
- ████████████████████████████████████████
  ████████████████████ . *See* Rand Decl. Ex. 2 at 44:5-20.
- Amazon purchases its retail products from companies, known as "vendors," █████████████████████████ At least one Amazon employee stated that ████████████████████████████ ,

3

██████████████████████████████████████████. *See* Rand
Decl. Ex. 2 at 175:16-22, 189:13-14; Ex. 9; Ex. 10.

- ████████████████████████████████. *See* Rand Decl. Ex. 8 at
  298:1-16.

- ████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████
  ████████████████████████████████. *See* Rand Decl. Ex. 8 at 138:15-18, 141:5-7, 182:6-
  183:3. In so doing, Amazon uses the IP associated with a particular PDP to market and sell
  products that do not have the right to use or be associated with that IP.

### 2.    Suspicious Third Party Sellers Began Selling on Amazon

FC began selling its products on Amazon in 2013. From this point until the first quarter of

2018, the only other company authorized to sell FC products on or to Amazon was FC, ████████

████████████████████████████████████████████████████. *See* Fawcett

Decl ¶ 14. Starting in early 2018, ██████████████████████████████████████

██████████████████████. *See id*. ¶ 15. Nevertheless, other companies sold products on Amazon. FC

investigated these companies and determined that ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. *See*

*id*. ¶¶ 64-89, Ex. A. ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████. *See* Rand Decl. Ex. 11. ████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████. *See* Fawcett Decl. Ex. A.

The marked uptick in counterfeiting FC experienced in 2016 comports with the opinion of Professor Daniel Chow, an expert in Chinese counterfeiting. 

███████████████████████████████████████████████

██████████████████████████████████████. *See* Chow Decl. ¶¶ 4-6. █

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████. *See* Fawcett Decl. Ex. A.

### 3. Returns and Test-Buys Show Non-Fuse Chicken Products from Amazon

Amazon admits that four counterfeit products were sold on FC's PDPs, *see* Dkt. 119 at 9-10:

1) ████████████████████████████████████████████

█████████████████████████████████████ *See* Rand Decl. Ex. 13 at 16; Fawcett Decl. ¶ 16.

2) ████████████████████████████████████████████

████████████████████ *See* Rand Decl. Ex. 13 at 13; Rand Decl. Ex. 2 at 134:24—136:12; Dkt. 120-4 at 148:9—150:4; Fawcett Decl. ¶¶ 44-46.

3) ████████████████████████████████████████████

██████████████████ *See* Rand Decl. Ex. 2 at 134:20-23, 136:13-139:8, 142:2—144:12; Fawcett Decl. ¶¶ 30-31.

4) ████████████████████████████████████████████

████████████ *See* Dkt. 120-4 at 153:19-156:19; Fawcett Decl. ¶¶ 50-52; Rand Decl. Ex. 14 at 6-7.

But far more evidence demonstrates that Amazon sold non-FC products on FC's PDPs. █████

██████████████████████████████████████████████ Fawcett Decl. ¶ 29. Amazon

admits that ████████████████████████████████. *See* Rand Decl. Ex. 8 at

23-25.  Nonetheless, ████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████ *See* Fawcett Decl. ¶¶ 29-43; *see also* Rand Decl. Ex. 13 at 7-13

(listing test buys).  Indeed, ████████████████████████████████

██████████████████████ *See* Rand Decl. Ex. 13 at 8-13.████████████

█████████████████████████████████████████████████:

1)  ████████████████████████████████████████████
    ████████████████████████████████ *See* Rand Decl. Ex. 13 at
    11, Ex. 15; Fawcett Decl. ¶¶ 32-34.

2)  ████████████████████████████████████████████
    ████████████████████████████████ *See* Rand Decl.
    Ex. 13 at 11, Ex. 16 at 253:14—254:5; Fawcett Decl. ¶¶ 35-36.

3)  ████████████████████████████████████████████
    ████████████████████████████████████████████
    *See* Rand Decl. Ex. 13 at 11, Ex. 16 at 253:14—254:5; Fawcett Decl. ¶¶ 37-38.

4)  ████████████████████████████████████████████
    ████████████████████████████████████████████
    ████████████████████████████████████████████
    *See* Fawcett Decl. ¶¶ 39-40; Rand Decl. Ex. 17; Dkt 122-1 at 46.

5)  ████████████████████████████████████████████
    ████████████████████████ *See* Fawcett Decl. ¶¶ 41-42; Rand Decl. Ex. 19.

Two additional returns also demonstrate that Amazon *itself* sold counterfeit versions of FC's

products:

1)  ████████████████████████████████████████████



██████████████████████████████████████████████████████████. *See* Rand Decl. Ex. 13 at 13, Ex. 21, Ex. 16 at 258:15-24, Ex. 22 at 190:21—191:13; Fawcett Decl. ¶¶ 61-62.

2)  ███████████████████████████████████████████████████████████████████ Rand  Decl.  Ex.  14  at  7;  Fawcett Decl. ¶¶ 47-48.

Further, █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. *See* Rand Decl. Ex. 13 at 15, 17; Ex. 14 at 8; Ex. 11 at 114-1520755-9054606 & 111-9097170-5396262; Fawcett Decl. ¶¶ 55-60.

### 4.  Amazon Permitted Sales of Fakes Using Fuse Chicken's IP

████████████████████████████████████████████████████████

████████████████████  ██████  ██████████████████████████████

████████████████████:

- ██████████████████████████████████████ Rand Decl. Ex. 10.
- █████████ Rand Decl. Ex. 23.
- ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

*See* Fawcett Decl. ¶ 21.

- ████████████████████████████████████████ Rand Decl. Ex. 10.

---

[2] Amazon claims that Fuse Chicken █████████████████████████████t. *See* Dkt. 119-1 at 15 n.2. Not so. Further, ██████████████████████████████ *Id*. ████████████████████. *See* Dkt. 120-9 at 217:1-17.

[3] During this time period, █████████████████ *See* Rand Decl. Exs. 10, 23.

████████████████████████████████████████████████ *See* Rand Decl. Ex. 11.

**5.** ████████████████████████████████████████████████████

Beginning in the fall of 2016, FC's trademarks and copyrighted photographs were appearing on PDPs that FC did not create or authorize. *See* Fawcett Decl ¶ 25. FC submitted infringement notices for these pages. ████████████████████████████████████

████████████████ *See* Dkt. 122-1. ████████████████████████

████████████████████████████. *See* Rand Decl. Ex. 25.[4] ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████[5]

**6.** ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████. *See* Dkt. 1-1 at 9. ████████████████████

████████████████████████████████████. *See* Dkt. 119-1 at 13. As set forth in greater detail below, ████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *see* Rand Decl. Ex. 28 at 7, Ex. 20 a 25-26—████████████████████

████████████████████████████. *Id*. at 6. ████████████████████,

---

[4] Of course, no matter what actions Amazon claims to have taken with respect to the non-Fuse Chicken ASINs, ████████████████████████████████████████████████ *See* Rand Decl. Exs. 26, 27.

*Compare* Rand Decl. Ex. 11  at lines 18513, 18518-20, 18705, 18887, 18902, 18933, 20995, 21388, 21702, 22793, 23015 *with* Dkt. 122-1 at 45, 47, 48.



. Rand Decl. Ex. 8 at 219:5-21. Before it could do so,

*See id.* at

188:17—191:5.

[7]

**B.     Amazon Failed to Adequately to Respond to Fuse Chicken**

   **1.     Fuse Chicken Notified Amazon of Infringement**

  Amazon contends that the only manner in which it could be

*See* Amazon Br. at 8. The evidence is

otherwise.                                                                                      , Dkt.

122 ¶ 1,

. *See* Rand

Decl. Ex. 29 at 64:16—65:14, 98:13—100:4, Ex. 30; *see also id.* Ex. 2 at 84:25—85:18, Ex. 20 at 6-

8.

  FC submitted notices in all of these manners, including (*i*) the report infringement web form;

(*ii*) emails to Amazon staff,                                              another of FC's contacts at

Amazon; (*iii*)                                     ; (*iv*) by letter from its counsel, Kathleen Walker, to

---

[6] *See* Rand Decl. ¶ 13.
[7] Amazon profited on the sale of Fuse Chicken products. *See* Rand Decl. Ex. 11 (column J, "contribution profit amt"), Ex. 2 at 282:24—283:3, 301:11-18.

David Zapolsky, Amazon's general counsel; and (v) notices to notice@amazon.com and copyright@amazon.com. *See* Fawcett Decl. ¶ 17; *see also* Dkt. No. 1-1; Rand Decl. Exs. 31, 32, 23 and 33.

### 2.    Amazon Did Not Properly Respond to Fuse Chicken's Notices

Amazon contends that ███████████████████████████████████████

███████████████████████████ Amazon Br. at 8. In support, it cites Skovgard's declaration and Exhibit A to that declaration. *See id.* (citing Dkt. 122 ¶¶ 4-5 & Ex. A).[8] Skovgard states that he ███████████████████████████████████████████████████, and that he set forth this information in Dkt. 122-1. *See* Dkt. 122 ¶¶ 4-5. However:



- ███████████████████████████████████████████████
  ███████████████████████████████████████████████
  ████████████████████████████████ *See* Rand Decl. Ex. 29 at 269:17—271:9.

- ███████████████████████████████████████████████
  ███████████████████████████████████████████████
  ███████████████████████████████████████████████
  ███████████████████████ *See id.* at 273:3—274:3, 275:24—276:11, 278:21—281:4, 286:5-13, 288:7—289:15, 291:15—292:5, 292:24—293:20, 295:6—296:5, 297:17—298:24, 299:4-10, 301:2-13, 303:14-19.[9]

- ███████████████████████████████████████████████
  ███████████████████████. *See id.* at 257:3—258:6, 267:7-20.

- ███████████████████████████████████████████████
  ███████████████████████████████ *See id.* at 282:6-20, 292:7-10, 292:15-17, 300:4-22.

- ███████████████████████████████████████████████ *see, e.g.*, Dkt. 122-1

---

[8] Exhibit A was part of Amazon's 3rd Supplemental Objections & Responses to FC's 1st Set of Interrogatories. Dkt. 122 ¶ 5. The deposition references a nearly identical chart attached as Exhibit A to Amazon's 2nd Supplemental Objections & Responses to FC's 1st Set of Interrogatories. *See* Rand Decl. Ex. 34.

[9] This testimony is referring to notice ID ██████ ████████████████████████████████████

Line 1451,



. *See* Rand Decl. Ex. 29 at 296:16-19.

*See id.* at 296:20—297:14.

- Certain information in Dkt. 122-1 is incorrect. For example, this chart states that Amazon received notice that EZ4MOB infringed FC's IP on January 27, 2017. Dkt. 122-1 Lines 1392-93. However, Amazon had notice as early December 2016 when Price told FC that "EZ4MOB is an active third party seller whose price is way too low to be legit." *See* Rand Decl. Ex. 23.

Amazon identified Skovgard as the person most knowledgeable about

Yet, Skovgard did not

. *See id.* Ex. 47 at 6, Ex. 29 at

57:8-14, 58:20—59:4, 58:11-13, 76:24—77:7, 88:4-21, 89:15—90:5, 140:14—141:1, 141:13—

142:9, 209:3-13, 209:22—210:4, 210:9—211:3.

Pursuant to Amazon's policies,

. *See* Rand

Decl. Ex. 29 at 98:4-7, 130:19—131:1.

. *See* Rand Decl. Exs. 40, 41 and 48; Fawcett Decl. ¶¶ 18-19.

*See* Rand Decl. Ex. 29 at 210:19—217:7.

Amazon also ignored the cease and desist letter sent by Walker to Amazon on May 17, 2017. In this letter, Walker clearly identified herself as FC's counsel. *See* Dkt. 1-1 at 1. She set forth the results of FC's preliminary investigation into the infringement of FC's IP on Amazon.com—an investigation undertaken with virtually no help from Amazon, the party with most of the relevant

11

information. Walker sent this letter to David Zapolsky, Amazon's general counsel, ██████████. *See* Rand Decl. Ex. 35. Starting in February 2017, ████████████████████. *See id*. Ex. 36. ██████████████████████. *See id*. Ex. 49. ████████████████████████████████████████████████████████████████████████████

██████ *See* Ex. 2 at 229:5-12, Ex. 38 at 9:25—10:5, 101:1—104:9.

        **3.**    ████████████████████████████████████

Amazon also cites its ████████ as another example of its actions to protect FC's IP. *See* Dkt. 119-1 at 13. However:

- ████████████████████████████████████████████████████████████████████████████████████████████████. *See* Rand Decl. Ex. 39 at 75:20—76:1, 100:16—101:9, 101:10-19, 110:24—111:15.

- ██████████████████████████████████████████████████████. *See id*. at 102:11-22, Ex. 20 at 26.

- ████████████████████████████████████████████████████████████████████████████████████. *See id*. at 28:15-22, 30:8-20, 32:9-22, 48:13-21, 80:20—81:1.

- ████████████████████████████████████████████████. *See id*. at 117:3-20, 118:5-15.

- ██████████████████████████████████████. *See id*. at 88:21—89:.

- ████████████████████████████████████████. *See id*. at 100:3-15.

- ████████████████████████████████████████████████

██████████████████████████████████. *See id.* at 64:11-16, 110:19-23.

- ████████████████████████████████████████
  ███████ *See id.* at 111:18—112:13, 116:20—117:2.

- ████████████████████████████████████
  ███████████████████████. *See id.* at 116:3-20.
  During his deposition, █████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████. *See*
*id.* at 124:11-15, 129:20—130:3, 153:17-156:11. ███████████

██████████████████ *See* Fawcett Decl. ¶ 93.

**4.**    **Protection of Intellectual Property Was Ineffective or Unavailable**

FC became part of ███████████ in March 2014. At least until mid-2017, sellers like FC

could not submit infringement notices through ███████████. Instead, █████████████████

██████████████████████████████████████. *See* Fawcett Decl. ¶¶ 22-24. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ Dkt 119-1 at 21; Dkt. 121 ¶ 17-18. █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████. *See* Fawcett Decl. ¶ 25.

**C.**    **Fuse Chicken Product Purchasers Left Negative Reviews on Amazon**

**1.**    **Fake Products Caused Consumer Confusion and Negative Reviews**

13

It is undisputed that consumers who purchase a FC product by "clicking" on Amazon's FC PDPs expect to receive the actual product they order. *See* Rand Decl. Ex. 5, Ex. 43 at 45:19-46:1, Ex. 44 at 90:20-91:3, Ex. 45 at 202:3-25; 204:3-24. The evidence shows that purchasers who receive a counterfeit or knock-off product shipped by Amazon in an Amazon-labeled container would mistake the product's origin to be the FC product she ordered and expected to receive. ████████████

████████████████████████████████████████████████

████████████████████████████  *See* § II.A.3.

Amazon███████████████████████████████████████████

███████████████████████████████  *See* Rand Dec. Ex. 2 at 132-139, 147-148**.** Moreover, ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████  *See* Campbell Decl. ¶¶ 12-18.

Customer`s receiving cheap knock-offs that do not perform as represented on Amazon's product page are more likely to review the product negatively. For example, in December 2016 a "verified purchaser" left a scathing review of FC's Bobine Auto product with a picture of a fake attached to the review.  *See* Fawcett Decl. ¶ 16. Moreover, beginning in November 2016, the number of negative reviews increased and star ratings decreased of the very products being sold by suspect sellers. *See* Fawcett Decl. ¶ 91; Ghose Decl. Ex. A. ██████████████████████████

████████████████████████████████████████████████

██████████. ¶¶ 30-54.

FC investigated whether any changes could explain the sudden change in its reviews in such a short period of time. There were no changes. *See* Rand Decl. Ex. 27 at 38:16-22, 40:9-42:7.

Notably, ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ *See* Ghose Decl. ¶ 5.

### 2. Negative Reviews on Amazon Harmed Fuse Chicken

████████████████████████████████████████████████████

██████████  ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

15

████████████████████████████████████ ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 254.

---

[10] Dr. Ghose noted that Amazon.com is currently the search engine where over half of consumers start their online product research, and 90% of customers check Amazon.com even if they find the product they want to order on a different website. *See* Ghose Decl. ¶ 9, Ex. B.

16

## IV.  AMAZON INTERFERED WITH FUSE CHICKEN'S BUSINESS EXPECTANCY

The elements for tortious interference with business expectancy under Ohio law are: (1) the existence of a valid business expectancy;[11] (2) defendant's knowledge of the expectancy; (3) defendant's intentional interference with the expectancy; (4) lack of justification; and (5) resulting damages. *See Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012).[12] Whether FC had a valid business relationship or a future expectancy of a business relationship with customers both on Amazon and through other channels "are factual questions for the jury." *LidoChem, Inc. v. Stoller Enters., Inc.*, 500 Fed.Appx. 373, 384 (6th Cir. 2012).

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████. *See Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 370 (Mo. Ct. App. 1996) (a "regular course of similar prior dealings suggests a valid business expectancy" under Missouri law, which has the same elements of tortious interference as Ohio law). *See* Rand Decl. Ex. 11; § II.A.3.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

---

[11] Amazon added "specific" to this element; the cases do not. *See, e.g., Dixon v. Northridge Local School Dist. Bd of Edn.*, No. 2007-CA-101, 2008 WL 2572103, at *10 (Ohio Ct. App. June 5, 2008).

[12] *Coventry Grp., Inc. v. Gottlieb*, 7 N.E.3d 611, 613 (Ohio Ct. App. 2014), cited by Amazon, which determined that the "collection of a judgment does not induce a third person to not enter into or continue a business relationship," is inapposite. This case has nothing to do with judgment collection. Furthermore, ████████

██████ *See* Rand Decl. Ex. 46 at 244:22-245:15, 255:20-23, 258:11-259:12, 259:19-260:6.

17

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. *See* §
II.A.

████████████████████████████████████████████████████████████████

█████████████████████████████████████████. Tortious interference with

business expectancy is a claim aimed at one "who interferes with [the] business relations of another,

both existing and prospective." *See LidoChem, Inc.*, 500 Fed.Appx. at 384 (quoting *Northern*

*Plumbing & Heating, Inc. v. Henderson Bros., Inc.*, 83 Mich. App. 84 (1978) (discussing Michigan

law, which has the same elements of tortious inference as Ohio law). ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████ Under Ohio law, a party is entitled to pecuniary loss from tortious

interference, as well as "consequential harms for which the interference was a legal cause. . . .

Consequential damages in a tortious interference action include all damages proximately caused by

the defendant's misconduct, including lost profits." *Ginn v. Stonecreek Dental Care*, 30 N.E.3d 1034,

1043 (Ohio Ct. App. 2015) (quotation, citation, and alteration omitted).[13]

---

[13] Ohio law also allows for an award of punitive damages in tort cases upon a finding of actual malice, fraud, oppression, or insult on the part of the defendant. *See Columbus Fin., Inc. v. Howard*, 327 N.E.2d 654, 658 (Ohio 1975). Punitive damages are clearly warranted here. ████████████████████████████████████
████████████████████████████████████████████████████████████ *See* §§ II.A.1, II.A.3, II.A.6, II.B.1-
4. Amazon's actions constitute a "conscious disregard" for the fact that its actions will harm others, in this case, Fuse Chicken and its customers. *See Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987) (finding that a "conscious disregard for the rights . . . of other persons that has a great probability of causing substantial harm" can constitute actual malice).

## V.  WHETHER THERE IS A COPYRIGHT CLAIM IS MATERIALLY DISPUTED

### A.  Fuse Chicken Can Establish Direct Infringement

To prevail on a direct copyright infringement claim, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003); 17 U.S.C. §§ 106(1), (2). Amazon does not dispute FC's ownership of a valid copyright.[14] The PDPs, for 23 ASINs offering FC products for sale, use FC's copyrighted photographs. *See* § II.A; Rand Decl. Ex. 53 at 5. ██████████████████████

████████████████████████████████████████████████████████

████████████████     *See* § II.A.3-4; Rand Decl. Ex. 11. Accordingly, a reasonable jury could find that Amazon has directly infringed FC's copyrights. *See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 675 (N.D. Ohio 2016) (Lioi, J.) (holding defendant liable for copyright violations where it admittedly reproduced plaintiff's copyrights both on defendant's website and on counterfeit products defendant sold through Amazon).

### B.  Fuse Chicken Can Establish Contributory Infringement

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *NCR Corp. v. ATM Exchange, Inc.*, No. 1:05CV383, 2006 WL 1401635 (S.D. Ohio 2006) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Here, Amazon is contributorily liable for ████████████████████████████████████████████

████████████████████████████████████. *See* §§ II.A.1-6. While Amazon claims that it

████████████████████████████████████████████████████████

---

[14] FC's valid copyrights, [FUSE] CHICKEN CELEBRATING 5 YEARS: 2012-2017, is the subject of a valid Certificate of Registration, Registration Number TX 8-278-584, issued on December 2, 2016. *See* Dkt. 1 ¶ 19. It includes the images displayed on genuine FC product packaging and PDPs. *See* § 2.A.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

### C.    Fuse Chicken Can Establish Vicarious Infringement

Amazon is liable for vicarious copyright infringement because it (1) ████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████  *See* § II.A.6; *see also Superhype Pub.,*

*Inc. v. Vasiliou*, 838 F.Supp. 1220, 1225 (S.D. Ohio 1993) (granting copyright holders motion for

summary judgment finding defendants vicariously liable for copyright infringement) (citing

*RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773, 781 (8th Cir. 1988); *Sygma Photo

News, Inc. v. High Soc'y Magazine*, 778 F.2d 89, 93 (2nd Cir. 1985) (holding that all " who

participate in, exercise control over, or benefit from the infringement are jointly and severally liable

as copyright infringers").

### D.    Amazon's Alleged Responses to Notices Were Insufficient

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████  *See* § II.B.2. ████████
████████████████████████████████████████████████████████

*see* Rand Decl. Ex. 29 at 138:8-11, Ex. 39 at 31:1-12. 

*See, e.g.*, *id*. Ex. 29 at 92:14—93:8, 100:13-23, 131:2-10, 150:4-6, 227:5-23, Ex. 39 at 84:11-24, 120:20—121:6.

*Sherwood v. BNSF Railway Co.*, No. 1:16-cv-00008-EJL-REB, 2018 WL 2144147, at *6 (D. Idaho May 15, 2018).

Accordingly, there is ample evidence supporting each theory of copyright infringement that creates issues of material fact. Amazon's support, *Jones v. Staübli Motor Sports Div.*, 897 F. Supp. 2d 599, 614 (S.D. Ohio 2012), a products liability case, is inapplicable. Dkt. 119-1 at 18. There, plaintiff "failed to allege *any* facts" to support its failure to warn theory. *Id*. at 614 (emphasis added).

### E.    The Digital Millennium Copyright Act Does Not Apply

Amazon does not have a Digital Millennium Copyright Act ("DMCA") defense. *See* 17 U.S.C. § 512. The safe harbor bars liability for copyright infringement for storing, transmitting or displaying infringing content posted by third parties, so long as the conditions in the DMCA are met, including notice and take-down requirements. *See* 17 U.S.C. § 512(a)-(d).

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████.[15] *See* §§ II.A, II.A.1, n.8.

Even if the DMCA did apply, it specifically states that if a third party makes the copyright material available online without authorization, the service provider must respond expeditiously to remove, or disable access to, the infringing material. *See* 17 U.S.C. § 512(b)(2)(E). ████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. *See, e.g., Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1106-07 (W.D. Wash. 2004).

## VI.   AMAZON'S LICENSE IS NOT A DEFENSE IN THIS CASE

It is well-settled that a license must be pled as an affirmative defense, or it is waived. Fed. R. Civ. Pro. 8(c) (listing "license" as an "affirmative defense" that a defendant must "affirmatively state" in its Answer to the Complaint). Indeed, the one case Amazon cites stands for this proposition and cites authority for the fact that a license is an affirmative defense. *See Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citing *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir.1998) (license is an *affirmative defense* to copyright claim). Amazon failed to assert a license for use of FC's trademarks or copyrights as an affirmative defense. *See* Dkt. 17 at 28-30. Therefore, they may not assert the license now and the defense is waived. *See Da Hua Non-Ferrous*

---

[15] Amazon incorrectly presents *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) and *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) as if they establish that Amazon is eligible for the DMCA's safe harbor. Dkt. 119-1 at 22. Not so; the DMCA inquiry is fact specific and the facts in those cases differ materially. Both *Milo & Gabby* and *Corbis Corp.* focus on the fact that the only sales at issue were third party sales, "Amazon was not the seller of the alleged infringing products," and Amazon did not take legal title to the products. *See, e.g., Milo & Gabby*, 2015 WL 4394673, at *2, *6. Neither addresses ██████████████████████████.
████████████████████████████████████████████████████████████████
     *See* §§ II.A.1-4.

*Metals Co., Ltd. v. W.D. Mask Cotton Co.*, No. 00, 1997 WL 234610, at *3 (6th Cir. 1997) (defense waived because not plead as affirmative defense in answer under Fed. R. Civ. Pro. 8(c)). Separately, the defense is inapplicable in this case because Amazon did not have a license to use FC's IP to sell non-genuine FC products. *See* § II.A.

## VII.   EVIDENCE EXISTS TO PROVE AMAZON VIOLATED THE LANHAM ACT

### A.   Fuse Chicken Can Establish Direct Trademark Infringement

"To establish trademark infringement under 15 U.S.C. § 1114, plaintiffs must show that: (1) they own a valid trademark; (2) defendants used the trademark 'in commerce' without plaintiffs' authorization; (3) defendants used [p]laintiffs' [trademarks], or an imitation thereof, 'in connection with the sale, offering for sale, distribution, or advertising' of goods and services; and (4) defendants' use of the [trademarks] is likely to cause consumer confusion." *Chanel, Inc. v. Wrice*, No. 5:13-cv-891, 2015 WL 521144, at *4 (Feb. 9, 2015) (Lioi, J.) (quoting *The Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910 (S.D. Ohio 2014). *See also* 15 U.S.C. § 1114(a).

*First*, there is no dispute that FC is the exclusive owner of federal trademark registrations for each of the trademarks applied to the non-FC products, product listings, and product packaging at issue, including "Fuse Chicken," "Bobine," and "Titan." *Second*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* §§ II.A. *Third*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* §§ II.A.2-6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This is sufficient to impose direct liability on Amazon for trademark infringement. *See Lorillard Tobacco Co. v. Amouri's Grand Foods*, 453 F.3d 377, 378-79 (6th Cir. 2006); *Vuitton et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1076 (S.D.N.Y. 1979) *aff'd*, 622 F.2d 577 (2d Cir. 1980)

23

(infringement where defendant "offer[ed] for sale a combination of product and trademark which exactly mimics that of plaintiff, resulting in the type of confusion and deception which the Lanham Act was designed to prevent").

*Fourth*, the "touchstone of liability" under 15 U.S.C. § 1114 "is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In traditional trademark infringement cases involving similar but not identical marks, the confusion analysis turns on a comparison of the two marks under the framework set forth in *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261 (6th Cir. 1985). However, "[w]here, as here, the infringing products are counterfeits, likelihood of confusion may be presumed." 16 F. Supp. 3d at 912 (quotation and citation omitted).

There is ample evidence, both direct and circumstantial, of customer confusion. Several customers returned fake FC products that they purchased on Amazon to FC, indicating they believed they were Fuse Chicken products. Additionally, ███████████████████████████████████ ████████████████████████████. *See* §§ II.A.3. This evidence alone is sufficient. As the Sixth Circuit explained, "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music Stores*, 109 F.2d2d at 280.

Amazon's practices cause customer confusion by allowing multiple sellers to sell both genuine and non-genuine products, ███████████████████████████████████ █████████████████████████████████████████ *See Hard Rock Cafe Int'l (USA) Inc. v. Morton*, No. 97 Civ. 9483 (RPP), 1999 WL 717995, at *30 (S.D.N.Y. Sept. 9, 1999) ("When a licensee makes both permissible and impermissible use of a trademark in selling

merchandise on the Internet, the likelihood of confusion is strong. It is improbable that the public

will be able to ascertain which uses are unauthorized and which are not.").



At

most, it goes to the weight of the evidence which is the purview of the jury, not a basis for summary

judgment. *United States v. Bonds*, 12 F.3d 540, 561 (6th Cir. 1993).[18]

## B.     Fuse Chicken Can Establish Contributory Trademark Infringement

Amazon is liable for contributory trademark infringement for intentionally inducing third

parties to infringe FC's marks by giving open access to third party sellers who sell fake products on

FC's PDPs. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) (defendant

---

[16] Amazon's conclusory assertion that ████████████████████████████████. *See* Dkt.
149.

[17] Amazon cites several inapposite cases regarding confusion. *Gibson Guitar Corp. v. Paul Reed Smith
Guitars, LP*, 423 F.3d 539 (6th Cir. 2005), *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d
494 (6th Cir. 2013), *United Van Lines, Inc. v. Am. Holiday Van Lines, Inc.*, 487 F. Supp. 235 (E.D. Tenn.
1979), *Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*, No. 97-CV-1274, 1997 WL
698044 (N.D.N.Y. Nov. 6, 1997), *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007),
*see* Dkt. 119-1 at 27-30, all involve products that are (i) purchased in a physical store where the genuine and
non-genuine products are both displayed, so that customers can compare the differences; and/or (ii) are
expensive items that would not likely be purchased "without substantial care and research." However, the PDP
with Fuse Chicken's trademarks and copyrights is the only thing the customer sees when making purchases
online. The customer expects to receive the product they purchased on the PDP and, moreover, trusts Amazon
to fulfill the order accurately and with genuine product. Thus, the customer naturally believes they have
received the genuine product and is necessarily confused.

[18] Fuse Chicken is entitled to treble damages and an award of attorneys' fees under the Lanham Act. A court
shall award treble damages if the violation consists of intentionally using a mark, knowing it is counterfeit, in
sale, offer for sale, or distribution of goods or services; or providing services necessary to such violation with
the requisite intent. *See* 15 U.S.C. § 1117(a) and (b).

contributorially liable for its vendors' infringements, and its actions were willful, when it allowed

vendors it knew or should have known were infringing to continue to sell in its marketplace).

Multiple courts have found contributory liability in cases involving internet marketplaces and/or

service providers, concluding that such companies may be liable if they knew or had reason to know

that vendors were engaging in infringing activity. *See, e.g.*, *Rosetta Stone Ltd. v. Google, Inc*., 676

F.3d 144, 165 (4th Cir. 2012).[19]

Here, Amazon is contributorily liable for:



Finally, there is ample evidence that Amazon has actual knowledge of third party sellers'

infringement at least through: 

___

[19] Amazon cites *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 105-10 (2d Cir. 2010), but it does not apply.
First, courts have noted that cases, like *Tiffany*, are for "situations where the infringing activity and the alleged
contributory infringer were physically remote from one another." *Coach, Inc. v. Gata Corp.*, No. 10-cv-141-
LM, 2011 WL 2358671, at *7 (D.N.H. June 9, 2011) (quoting *Tiffany*, 600 F.3d at 107). Here, the third party
infringers were selling on the same marketplace and using Amazon's fulfillment centers that Amazon itself
sells on and controls. Second, the Sixth Circuit has noted that where service providers have not done enough to
remove infringing content, like Amazon here, courts have imposed contributory liability. *See, e.g.*, *id*.
*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) is similarly inapposite (finding
notices containing150-page long lists of "every title copyrighted" by plaintiff not specific enough). Fuse
Chicken's notices contained specific and detailed information.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ t. *see, e.g.*, *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013)

(finding market owner "willfully blind" for failing to deny access to offending vendors or undertake

reasonable investigation). ████████████████████████████████████████████

████████████████████████████████████████████████

### C.     Amazon is Liable for False Designation of Origin, False Advertising and Deceptive Trade Practices

FC asserts claims for false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

The factors considered in assessing a claim under § 1125(a)(1)(A) are the same as employed under §

1114 in assessing a claim for trademark infringement. *See Champions Golf Club, Inc. v. The

Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996). *See* § V.A. Ample disputed facts

show that customer confusion under Section 1125(a)(1)(A) was highly likely and, while not required

to sustain the claim, did, in fact, occur. *See Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30

F.3d 466, 472, n.8 (under 15 U.S.C. § 1125(a)(1)(A), "[p]roof of actual confusion is not necessary;

likelihood of confusion is all that need be shown" (citation omitted)). *See* § VI.A.

Sufficient evidence also supports FC's claim for false advertising under Section

1125(a)(1)(B). *See* Dkt. 119-1 at 24, n.3. A false advertising claim must contain the following five

elements: (1) the defendant made false or misleading statements of fact concerning his own product

or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the

intended audience; (3) the statement is material in that it will likely influence the deceived

consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce;

and (5) there is some causal link between the challenged statements and harm to the plaintiff. *See Balance Dynamics v. Schmitt*, 204 F.3d 683, 690 (6th Cir. 2000). Further, "[w]here statements are literally false, a violation may be established without evidence that the statements actually misled consumers" and "[a]ctual deception is presumed." *Am. Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999).

Here, certain of Amazon's statements for the offer of sale of goods were "literally false." For example, Amazon stated that certain products were "Sold by Fuse Chicken," "Sold by Amazon," or "Sold by [another specific vendor]" when, in fact,



Ohio's Deceptive Trade Practices Act, R.C. 4165, is Ohio's state law equivalent of the Lanham Act. Therefore, the same tests for liability apply and the facts establish that there is at least a material issue of fact for the jury to determine. *See Dawson v. Blockbuster, Inc.*, No. 86451, 2006

---

[20] Fuse Chicken is entitled to treble damages under 15 U.S.C. § 1125(a) for False Designation of Origin and False Advertising.

WL 1061769, at *3 (Ohio Ct. App. Mar. 16, 2006) ("The Ohio Deceptive Trade Practices Act is substantially similar to the federal Lanham Act . . . .").

## VIII.    AMAZON CAUSED FUSE CHICKEN'S LOST PROFITS DAMAGES

The causation of damages is proven by showing a causal connection "between the . . . alleged infringement and some loss of anticipated revenue." *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 358 (6th Cir. 2007) (citation omitted). ███████████████████████████

███████████████████████████   ██████   █████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. Regardless,

circumstantial evidence suffices to prove causation. *See, e.g.*, *Hendricks v. Physicians Skin & Weight Centers, Inc.*, No. SACV 12-2169 AG (RNBx), 2014 WL 12561621, at *3 (C.D. Cal. Feb. 4, 2014).

Fake FC products were negatively reviewed, which caused lost sales. Around the same time FC began seeing suspect seller names under its own PDPs, suspect sellers were also increasingly selling product under other PDPs using FC's IP. ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████  Therefore, this is a material issue of fact, and summary judgment should be denied. *Anderson*, 477 U.S. at 249.

[21] ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

Similarly, FC can establish that the negative reviews caused FC to lose international sales.



████████████████████████████████████████████████████████

████████████████████████████

## IX.   CONCLUSION

For the forgoing reasons, the Court should deny summary judgment as to each of Fuse

Chicken's claims and on Fuse Chicken's prayer for actual damages.

DATED: March 1, 2019                    */s/Kathryn Lee Boyd*

Kathryn Lee Boyd (admitted *pro hac vice*)
Matthew P. Rand (admitted *pro hac vice*)
McKool Smith, P.C.
300 South Grand Avenue
Suite 2900
Los Angeles, California 90071
(213) 694-1180

Eric B. Halper (admitted *pro hac vice*)
Alyssa M. Pronley (admitted *pro hac vice*)
McKool Smith, P.C.
One Bryant Park
47th Floor
New York, New York 10036
(212) 402-9413

Joel A. Holt (#0080047)
Ickes\Holt
4301 Darrow Road, Suite 1100
Stow, Ohio 44224

*Attorneys for Plaintiff Fuse Chicken, LLC*

---

[23] Contrary to Amazon's suggestion regarding international marketplaces, *see* Dkt. 119-1 at 34, the impact of Amazon U.S. reviews resulting from infringement on and through Amazon's U.S. website is at the heart of this case.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that Fuse Chicken, LLC's OPPOSITION TO AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT complies with the applicable page limitations specified by Civil Local Rule 7.1(f). Dkt. 22 at 1 (designating case complex).

*/s/ Kathryn Lee Boyd*

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on March 1, 2019, a copy of the foregoing Fuse Chicken, LLC's Opposition To Amazon.com, Inc.'s Motion for Summary Judgment was filed electronically and that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<em>/s/ Kathryn Lee Boyd</em>