UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| FUSE CHICKEN, LLC | ) CASE NO. 5:17-cv-01538-SL |
| | ) |
| Plaintiff, | ) Hon. Sara Lioi |
| | ) Hon. Kathleen B. Burke |
| vs. | ) |
| | ) |
| AMAZON.COM, Inc., et. al., | ) **FUSE CHICKEN, LLC'S OPPOSITION TO** |
| | ) **AMAZON.COM, INC.'S MOTION TO** |
| | ) **EXCLUDE CERTAIN OPINIONS OF** |
| Defendant(s). | ) **PLAINTIFF'S EXPERT DANIEL C. K.** |
| | ) **CHOW AND MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES IN SUPPORT** |
| | ) **THEREOF** |

Pursuant to Federal Rules of Evidence 702 and 403, Fuse Chicken, LLC respectfully submits this opposition to Amazon.com, Inc.'s Motion to Exclude Certain Opinions of Plaintiff's Expert Daniel C. K. Chow and Memorandum of Points and Authorities in Support Thereof.

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| **I.** | Introduction | | 1 |
| **II.** | Argument | | 2 |
| | **A.** | Legal Standard | 2 |
| | **B.** | Chow is Highly Qualified to Opine on the Source of Infringing Products | 3 |
| | **C.** | Chow's Opinions are Relevant | 5 |
| | **D.** | Chow's Opinions Are Reliable | 9 |
| | | **1.** Chow Applied His Expertise to the Facts in This Case | 10 |
| | **E.** | Chow's Opinions Are Not Unduly Prejudicial | 13 |
| **III.** | Conclusion | | 15 |

**I.     Introduction**

The source of Amazon's negative reviews that harmed Fuse Chicken's reputation is at the heart of this case. Fuse Chicken contends that the reviews were caused by Amazon's sale of inferior, fake products. Amazon disputes that it sold fake Fuse Chicken products and that they caused the downturn in Amazon ratings and reviews. The jury will be tasked with determining the truth.

Only Amazon  However, there is ample circumstantial evidence to prove that the increased negative reviews were of third-party fake products sold by illegitimate, suspect sellers on Amazon's marketplace. In its Opposition to Amazon's Motion for Summary Judgment, Fuse Chicken set forth evidence that in the Fall of 2016, an increased number of suspect third-party sellers began selling Fuse Chicken products through Amazon, Amazon commingled the fakes with genuine products, simultaneously Fuse Chicken's negative product ratings began to increase, and the reviews targeted the very characteristics indicative of fakes that Fuse Chicken received through vendor returns from Amazon and test buys. *See generally* Dkt. 157 (Opposition to Defendant's Motion for Summary Judgment).

Also as part of its case to prove that (1) fake, inferior Fuse Chicken products were created in or about the Fall of 2016 and (2) were sold on and by Amazon, Fuse Chicken offers the opinion of Professor Daniel C. K. Chow, an expert in the sale of fake consumer products by Chinese counterfeiters. Chow's opinion is relevant to both material issues by showing that suspect third-party sellers, ███████, were operating in an area of high concentration of counterfeiting, and that based on his study and

1

experience in the field, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See generally* Dkt. 100 (Chow Expert Report)

Chow's opinions bear directly on the disputed issue of the source of products sold on Amazon at the time negative reviews increased. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Such reliable bases satisfy the *Daubert* standard of specialized knowledge, *see Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), and will assist the jury to understand the evidence or to determine a fact in issue. *See Travelers Cas. Ins. Co. of Am. v. Volunteers of Am. Ky., Inc.*, No. 5:10-301-KKC, 2012 WL 3610250, at *1 (Aug. 21, 2012).

Furthermore, the only prejudice to Amazon is that Chow's opinion overcomes Amazon's position that there were <u>no</u> counterfeits of Fuse Chicken products, that they were <u>not</u> sold by Amazon, and that the negative reviews were <u>not</u> of fake Fuse Chicken products. Thus, Fed. R. Evid. 403 does not apply here. Amazon's motion should be denied.

## II.     Argument

### A.     Legal Standard

Though the party offering the expert must demonstrate admissibility by a preponderance of the evidence, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993), that party does "not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Instead, "they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Id*.

2

This Court has recognized that motions to exclude expert testimony "should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Funk v. Rent All Mart, Inc.*, No. 3:00 CV 7086, 2002 WL 34417021, at *1 (N.D. Ohio July 9, 2002). The "rejection of expert testimony is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quotation and citation omitted).

### B. Chow is Highly Qualified to Opine on the Source of Infringing Products

*Daubert* applies to "scientific," "technical" and "*other specialized*" knowledge. *Kumho*, 526 U.S. at 141 (quoting Fed. R. Evid. 702) (emphasis added). If an expert's knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may pursuant to Rule 702, present opinion testimony. *See Travelers Cas. Ins. Co. of Am.*, 2012 WL 3610250, at *1.

Here, Chow's specialized knowledge in Chinese counterfeiting of consumer products and his ample knowledge, skills, experience, training, and education in counterfeiting in general, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ qualify him to offer his opinions in this case under Rule 702. *See* Dkt. 100 ¶¶ 2-8, 11-14; Dkt. No. 152 ¶¶ 3-6 (Chow Decl. in Support of Opp. to Motion for Summary Judgment).

Chow holds a J.D. from Yale Law School and is currently the Bazler Chair in Business Law at Ohio State University Moritz College of Law. *See* Dkt. 100 ¶ 2; Dkt. No. 152 ¶¶ 2-3. Further, he is widely considered an expert on counterfeiting in China and has written extensively on the issue. *See* Dkt. 100 ¶ 1; Dkt. No. 152 ¶ 3. He has testified before Congress on several occasions and was featured on the CBS News Program 60 Minutes in a program entitled "The World's Greatest Fakes" about counterfeiting in China. *See id*. Chow is fluent in Mandarin and has lived and worked in the

3

People's Republic of China. As head of the legal department at Procter & Gamble (China), Ltd. ("P&G") he was in charge of protecting and enforcing P&G's brands and intellectual property, especially from counterfeiting. *See* Dkt. 100 ¶ 1-2; Dkt. No. 152 ¶ 3. Chow also participated in numerous meetings with Chinese government officials relating to counterfeiting, led industry efforts in forming the China Anti-Counterfeiting Coalition, served as the first executive secretary of this group, and authored the China "White Paper" on counterfeiting. *See id*.

Contrary to Amazon's contention, Chow is more than qualified to opine on the source of purportedly infringing Fuse Chicken products. Dkt. 145 at 13 (Amazon Motion to Exclude Certain Opinions of Daniel C. K. Chow). Not only does Chow have extensive experience researching and studying counterfeiting, but it was also his job to protect P&G's brand by working with people to identify the sources of counterfeiters and stop them. Further, Chow *personally participated* in numerous investigations and raids of counterfeiters along with private investigators and law enforcement officials. *See* Dkt. 100 ¶ 2; Dkt. No. 152 ¶ 3.

In addition, Chow continues to work on intellectual property and counterfeiting matters in China as a consultant and legal expert. He also travels to China frequently and speaks regularly to Chinese lawyers and academics about intellectual property and other business issues in China. *See id*. Therefore, Chow clearly has specialized knowledge of and experience with counterfeiting products in China and identifying the source of counterfeiters.

As discussed below, using this expertise, Chow reliably investigated sellers of Fuse Chicken products and applied his expertise to the facts at issue.[1] The reliability of his investigative process

---

[1] Chow clearly relies on his own knowledge, skills, education, and experience in this case to come to his conclusions regarding counterfeiting, in contrast to the expert in *Huffman v. Electrolux Home Products., Inc.*, 129 F. Supp. 3d 529 (N.D. Ohio 2015), a case which Amazon cites. In that case, the purported expert on mold "admitted that he was not qualified" to conduct tests on or even to identify mold. *Id*. at 540.

4

and methodology are not dependent on when Chow started to draft his report or even the conclusions he came to, but on whether that process is accepted in his field. *See Daubert*, 509 U.S at 594-95.

Further, Chow was not "spoon-fed" assertions,² but rather ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ *See* Dkt. 164-10 (Amazon Sales Spreadsheet). Chow necessarily needed to be provided such information in order to ████████████████████████████████████████

████████████████, in order to opine on the likelihood of those sellers being counterfeiters of Fuse Chicken products.

**C.     Chow's Opinions are Relevant**

Expert "testimony must assist the trier of fact and must fit the facts of the case, that is, there must be a connection between the [testimony] offered and the disputed factual issues in the case." *Travelers Cas. Ins. Co. of Am.*, 2012 WL 3610250, at *1 (quotations and citations omitted). Chow's opinions do just that. Specifically, Chow's ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Chow's testimony is both broader than Amazon claims and more closely tied to the case at issue. First, Amazon incorrectly claims that Chow's testimony is limited to the fact that there is

████████████████████████████████████████

---

² *In re Prempro Products Liability Litigation*, 765 F. Supp. 2d 1113, 1119 (W.D. Ark. 2011), cited by Amazon, is inapposite. In that case, the expert indicated that he had never really thought about the issue on which he opined prior to the request for a report and there was reliable evidence contradicting his testimony. In contrast, Chow was asked to opine on issues falling squarely within his decades-long expertise and Amazon does not argue that counterfeiting is not an issue or that potential counterfeit products did not come from China.

███████████████████████████████████████████████████████████ *See* Dkt. 145 at 5-6. While Chow's testimony extends beyond that, those subjects alone are relevant to whether and how fake Fuse Chicken products ended up being sold on and by Amazon.

*Sahu v. Union Carbide Corp.*, No. 07 Civ. 2156(JFK), 2014 WL 3765556 (S.D.N.Y. July 30, 2014), *see* Dkt. 145 at 6, does not support Amazon's contentions to the contrary. In *Sahu*, which concerned whether certain toxins were emitted from a specific chemical manufacturing plant through a certain process, the court found that the expert testimony was unhelpful because it related to a different plant and plaintiff did not connect the toxins or manufacturing process at issue to that particular plant. *See Sahu*, 2014 WL 3765556, at *12. Here, Chow's opinions relate to the actual counterfeit activity *in this case*, explaining, and thereby tending to prove, how fake Fuse Chicken products were introduced and how they ended up being sold through and by Amazon.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
Chow's opinions address both of those disputed issues.

Amazon's reliance on *In re Heparin Products Liability Litigation*, MDL No. 1953, 2011 WL 1059660 (N.D. Ohio Mar. 21, 2011), is misplaced. In *In re Heparin*, a products liability action, the expert testimony at issue focused on "Chinese cultural norms." 2011 WL 1059660, at *10. The court excluded this testimony because the expert did not have training in or education "that might qualify one to provide reliable information about the *cultural traits and behavior patterns of a particular group of people of a given ethnicity or nationality*," *id*. at *10 (quotation and citation omitted), and "no professional experience with pharmaceutical or API manufacturing outside of this litigation." *Id*.

6

at *11. In contrast, Chow's testimony is clearly within his knowledge and experience regarding counterfeiting of consumer products in China and how it relates to the products in this case. His opinion is not about Chinese cultural generally or about any field outside of his expertise. *Young v. Mentor Worldwide LLC*, 312 F. Supp. 3d 75 (E.D. Ark. 2018) is similarly inapposite because the court did not allow discussion of a product that was not at issue after the expert admitted that complications from one product are different than others. 312 F. Supp. 3d at 771. Here, Chow ▮, and thus applicable here. *See* Dkt. 100 ¶¶ 9-10.

  Amazon also argues, wrongly, that Chow's testimony is solely for the purpose of context. Chow's testimony is not merely context, ▮ ▮.[3]

  Amazon's bald statement that there is no evidence that any third-party seller in China sold an inauthentic Fuse Chicken product is simply wrong. *See* Dkt. 145 at 7. There is ample evidence: the ▮ *See generally* Dkt. 157. ▮ Dkt. 100 ¶¶ 9-10.

---

[3] Amazon has not identified any evidence to the contrary. ▮, proves nothing.

Further, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ is yet another building block leading to reasonable inferences that the likely source of the negative Amazon reviews were indeed of fake Fuse Chicken products.

As Amazon itself concedes, part of what Fuse Chicken must prove is that "non-Fuse Chicken products were sold as Fuse Chicken products [on] Amazon.com, and that consumers confused those non-Fuse Chicken products for the genuine article." Dkt. 145 at 17. Chow's opinions are essential to helping the jury understand whether and how Fuse Chicken counterfeits made their way onto Amazon's marketplace and became part of Amazon's commingled inventory. ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 100 ¶¶ 3, 10; Pronley Decl. Ex. 1 at 64:16-67:3, 277:25-278:15. ▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ aid in proving Fuse Chicken's case. *See* Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence").

Amazon may dispute Chow's conclusions, but that does not make them irrelevant.[4] Indeed, whether his opinions satisfy Fuse Chicken's burden of proof (either alone or combined with other evidence) is a question of fact for the jury, not a gatekeeping issue for the court. *See Bell v. Sam's East, Inc.,* No. 1:16-cv-315-SKL, 2018 WL 910668, at *3 (E.D. Tenn. Feb. 15, 2018).

Contrary to Amazon's contention, Chow does not offer any opinions that constitute a referendum on China's counterfeiting controls. *See* Dkt. 145 at 16. Instead, the information he

---

[4] Amazon claims that Chow "admitted" that his opinions are not relevant to prove infringement, but this claim distorts the record. *See* Dkt. 145 at 6-7. In response to the cited question, Chow specifically stated that he was not sure what counsel was asking him, and counsel's question did not address all suspect sellers who sold product under Fuse Chicken's product detail pages on Amazon, let alone identify any specific seller or show the witness any specific product. *See* Dkt. 145-2 at 60-61. Further, Chow's opinions alone need not prove infringement to be relevant. Nor is an expert required to draw legal conclusions about what his opinions actually prove.

provides is relevant to issues in this case for the jury to infer that counterfeit Fuse Chicken products were made and offered for sale on Amazon. In addition, ▮▮▮▮▮ ▮▮▮▮▮ is relevant to prove Amazon's willful and contributory infringement. *See, e.g.*, *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) (finding defendant contributorially liable for its vendors' infringements, and that its actions were willful, when it allowed vendors it knew or should have known were infringing to continue to sell in its marketplace). Based on his experience and specialized knowledge, ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮. *See* Dkt. 100 ¶¶ 11-14. This testimony is directly relevant to whether Fuse Chicken was damaged by infringement and how Amazon's conduct caused the harm.

Amazon cannot on one hand argue that Chow's opinions regarding the source of counterfeit Fuse Chicken products on Amazon are irrelevant, and on the other hand assert that Fuse Chicken cannot prove the source of the products reviewed on Amazon as a defense to liability. ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮.[5] Even so, Amazon has ▮▮▮▮▮ ▮▮▮▮▮

Chow's opinions are relevant not only to Fuse Chicken's case in chief, but also to counter Amazon's defenses.

### D. Chow's Opinions Are Reliable

---

[5] *See* Pronley Decl. Ex. 2 at 148:2-14, 150:12–151:7, 163:15–164:3, 195:5–196:7.

The Court in *Daubert* listed several factors for consideration in assessing the reliability of expert testimony. However, the test of reliability is "'flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho*, 526 U.S. at 141 (citation omitted). "Proposed testimony must be 'supported by appropriate validation—i.e., good grounds, based on what is known." *Daubert*, 509 U.S at 590. Notably, Amazon does not argue that Chow is factually incorrect. Amazon simply argues, wrongly, that Chow is not entitled to rely on certain sources of information.

### 1. Chow Applied His Expertise to the Facts in This Case

Unlike a lay witness, "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (citing Fed. R. Evid. 702, 703). "Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id*.

Unlike the expert in *United States v. Mejia*, 545 F.3d 79 (2d Cir. 2008), Chow "appl[ied] his extensive experience and a reliable methodology" to the materials he reviewed, rather than simply "repeating hearsay evidence without applying any expertise whatsoever." *Id*. at 197 (quotations and citations omitted). Specifically, ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

Dkt. 100 ¶¶ 2, 3, 12, 14. The rules of evidence provide that expert opinions based, in part, on things like news articles should be admitted if the facts or data are "of a type reasonably relied upon by experts in the particular field" in forming opinions or inferences upon the subject. Fed. R. Evid. 703 cmte. note (quotation omitted); *see also Daubert*, 590 U.S. at 595; *Aloe Vera of Am. Inc. v. United*

10

*States*, No. CV-99-01794-PHX-JAT, 2014 WL 3072981, at *12, n.4 (D. Ariz. July 7, 2014) (finding that because the expert would reasonably rely upon the contents of news reports in opining on the topics at issue, the opinions were admissible under Rule 703). Not only are reputable news publications in the relevant industry within the realm of acceptable and reliable sources on which an expert such as Chow may rely, but ███████████████████████████████████████████████████████████████████████████████████████████████████ *See* Dkt. 100 ¶ 13.[6]

Chow's opinions ████████████████████ s in his report are also reliable. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. In fact, many experts render opinions based solely upon hypotheticals presented by counsel, which is permitted under Rule 703. *See Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours and Co.*, 90 F. Supp. 3d 746, 770 (S.D. Ohio 2015) (citing *Dow Corning Corp. v. Weather Shield Mfg., Inc.*, No. 09-10429, 2011 WL 2490962, at *9 (E.D. Mich. June 22, 2011).

Chow ██████████████████████████████████████████████████████████████████████████ *See* Dkt. 164-10. He was asked to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[6] Even assuming certain of the information were arguably hearsay, Amazon concedes that experts may rely on hearsay in forming their opinions. *See* Dkt. 145 at 11. Furthermore, Amazon has not pointed to any evidence contradicting that it did, in fact, make it easier and cheaper for sellers to ship products from China directly to Amazon. On the contrary, ████████████████████████████████████████████████████████████████████████████████████████████, confirming that this is exactly what happened.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████████████████████, partially based on searching for information regarding the company on Google. *See* Dkt. 145-2 at 152:5-154:13. This is significant because ████████████████████████████████████████████ Dkt. 100 ¶¶ 3, 11. Further, Chow ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████ *Id*. ¶¶ 3, 9-10.

Disputing Chow's findings and not the reliability of his sources, Amazon claims that it conducted a Google search on one name investigated by Chow and it revealed "no such information." Dkt. 145 at 12. However, when a Google search is conducted for the ████████████ ████ ██████████████████████ ████████████████████████████████████████████████████

██████████████████ a website for the company showing it is based in Shenzhen appears and is translatable. *See* Pronley Decl. Ex. 3. ████████████████████████████████ and even cited to it in their brief, but appears not to have conducted a full search of this name in addition to █████████ ██████ *See* Dkt. 164-10; Dkt. 145 at 12. ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████ However, Chow, who is fluent in Mandarin, *see* Dkt. 100 ¶ 1; Dkt. No. 152 ¶ 3, ████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Therefore, contrary to Amazon's arguments, his determinations regarding this seller are reliable.

Amazon's argument regarding ████████████████████ is similarly flawed. ███████████ ████████████████████████████████████████████████████████████████████████████

12



*See* Dkt. 164-10. Therefore,

Pronley Decl. Ex. 4.

*see, e.g.*, Dkt. 157 at Sec. II.A.3.

Investigation, particularly in a case such as this, means taking the step of verifying information based on Chow's expertise. *See* Pronley Decl. Ex. 1 at 64:16-67:3, 277:25-278:15. Chow did this, and, therefore, his opinions are reliable and admissible. If Amazon wants to attack how Chow performed his investigation into these sellers, that is an issue for cross examination. *Daubert*, 509 U.S. at 595. To satisfy Rule 702, Chow is not required to conduct his investigation in a particular manner, and Amazon provides no authority otherwise. *See Little Hocking Water Ass'n*, 90 F. Supp. 3d at 757 (explaining "an expert need not base his opinion on the best possible evidence, or the most ideal scientific evidence in order for it to gain admissibility. Instead, the role of the Court is to ensure that expert testimony is based upon good grounds, based on what is known." (quotations and citation omitted)).

      **E.**      **Chow's Opinions Are Not Unduly Prejudicial**

To warrant exclusion for unfair prejudice, such prejudice must *substantially* outweigh the probative value. Fed. R. Evid. 403. Indeed "[t]he Sixth Circuit has found this requirement to be significant," particularly with regard to expert evidence. *Spaulding v. Tate*, No. 3:11–18–DCR, 2012 WL 4597966 (E.D. Ky. 2012) (finding expert testimony should not be excluded under 403 solely because it goes against opposing party's case). Under the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). Evidence should not be excluded merely because it is damaging or prejudicial to a party; instead, it must be *unfairly* prejudicial. *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993).

Chow's opinions are evidence to aid the jury in determining (1) the existence of counterfeits of Fuse Chicken products and (2) the likelihood that Chinese counterfeiters would sell those products on Amazon, both of which are disputed facts in this case. Chow's opinion directly relates both to Fuse Chicken's *prima facie* case and to issues ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇ The only "prejudice" Amazon can identify is that Chow's opinions rebut Amazon's own positions. Amazon has not shown that they would incite, inflame, or arouse the sympathy of the jurors, or suggest a decision based on an improper basis. *See, e.g.*, *United States v. Williams*, No. 06-CR-20411, 2010 WL 188233, at *4 (E.D. Mich. Jan 15, 2010) (finding that "just because the evidence, when combined with other evidence, may damage Defendants' cases[ ] does not mean that the prejudice is unfair" (citation omitted)).

Further, Chow's opinions are not "dense with cultural generalizations" nor do they delve into Chinese culture generally so as to pander to xenophobia or cultural stereotypes, as Amazon claims.

14

*See* Dkt. 145 at 14-15. Chinese intellectual property theft and counterfeiting are factual phenomena, not racist slurs.[7] The cases Amazon cites regarding prejudice, including *In re Heparin Products Liability Litigation*, 2011 WL 1059660, *Hong v. City of St. Louis*, 698 F. Supp. 180 (E.D. Mo. 1988), and *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993 (9th Cir. 2001), are wholly off-point. Chow gives opinions based on his experience working in China and with Chinese counterfeiters, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In the cases Amazon cites, the opinions related solely to Chinese culture, when that was not an issue in the case. Further, in two of the cases, *Hong* and *Jinro Am. Inc.*, one of the parties was Chinese or Korean, making testimony of "cultural stereotyping" or any that could evoke "xenophobic" tendencies with regard to those nationalities substantially more prejudicial than any such testimony would be in a case against Amazon. *See Hong*, 698 F. Supp. at 182-83; *Jinro America Inc.*, 266 F.3d at 1006-07.

What would truly confuse the jury, and substantially prejudice Fuse Chicken, is allowing Amazon to argue, without corroboration, that there is no evidence that Amazon reviews of Fuse Chicken products are of counterfeit products, and not allowing Fuse Chicken to respond with reliable expert testimony regarding the source of counterfeits in Amazon's inventory.

**III.    Conclusion**

For the reasons set forth herein, Fuse Chicken respectfully requests that the Court deny Amazon.com, Inc.'s Motion to Exclude Certain Opinions of Plaintiff's Expert Daniel C. K. Chow.

---

[7] *See* Dkt. 100 ¶¶ 8, 13 (citing United States Government Accountability Office, Intellectual Property: Agencies Can Improve Efforts to Address Risks Posed by Changing Counterfeits Market 13 (Jan. 2018), 2.

| | |
|---|---|
| DATED: March 15, 2019 | */s/Kathryn Lee Boyd* |
| | Kathryn Lee Boyd (admitted *pro hac vice*) |
| | Matthew P. Rand (admitted *pro hac vice*) |
| | McKool Smith, P.C. |
| | 300 South Grand Avenue |
| | Suite 2900 |
| | Los Angeles, California 90071 |
| | (213) 694-1180 |
| | |
| | Eric B. Halper (admitted *pro hac vice*) |
| | Alyssa M. Pronley (admitted *pro hac vice*) |
| | McKool Smith, P.C. |
| | One Bryant Park |
| | 47th Floor |
| | New York, New York 10036 |
| | (212) 402-9413 |
| | |
| | Joel A. Holt (#0080047) |
| | Ickes\Holt |
| | 4301 Darrow Road, Suite 1100 |
| | Stow, Ohio 44224 |
| | |
| | *Attorneys for Plaintiff Fuse Chicken, LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2019, a copy of the foregoing Fuse Chicken, LLC's Opposition To Amazon.com, Inc.'s Motion to Exclude Certain Opinions of Plaintiff's Expert Daniel C. K. Chow and Memorandum of Points and Authorities in Support Thereof was filed electronically and that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/*Kathryn Lee Boyd*
    Kathryn Lee Boyd

## CERTIFICATION OF PAGE LIMIT COMPLIANCE

Pursuant to Local Rule 7.1 and the Initial Standing Order, Dkt. 4, I hereby certify on March 15, 2019 that Fuse Chicken, LLC's Opposition to Amazon.com, Inc.'s Motion to Exclude Certain Opinions of Plaintiff's Expert Daniel C. K. Chow and Memorandum of Points and Authorities in Support Thereof complies with page limits set by this Court for nondispositive motions.

/s/*Kathryn Lee Boyd*
Kathryn Lee Boyd