# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| FUSE CHICKEN, LLC, | ) | Case No. 5:17-cv-01538-SL |
| | ) | |
| Plaintiff, | ) | Hon. Sara Lioi |
| v. | ) | Hon. Kathleen B. Burke |
| | ) | |
| AMAZON.COM, INC. | ) | **AMAZON.COM, INC.'S REPLY** |
| and DOES 1–10, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY** |
| Defendant(s). | ) | **JUDGMENT** |
| | ) | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.    FUSE CHICKEN'S OPPOSITION CONFIRMS IT CANNOT ESTABLISH ITS CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY. ........................................................................................................ 3

II.   FUSE CHICKEN CANNOT ESTABLISH ANY THEORY OF COPYRIGHT INFRINGEMENT.......................................................................................................... 4

    A.    Fuse Chicken Does Not Dispute That Its Complaint and Discovery Responses Failed to Identify a Theory of Copyright Infringement. ...................... 4

    B.    Fuse Chicken's Newly Asserted Copyright Infringement Theories Lack Legal and Evidentiary Support. ........................................................................... 5

        1.    Fuse Chicken licensed the use of its copyrighted works to Amazon, precluding a claim for direct copyright infringement. ................................ 5

        2.    Fuse Chicken cannot establish contributory copyright infringement.......................................................................................... 7

        3.    Fuse Chicken cannot establish vicarious copyright infringement. ........... 10

    C.    The Digital Millennium Copyright Act Bars Monetary Relief............................ 11

III.   FUSE CHICKEN DID NOT PLEAD AND CANNOT ESTABLISH A FALSE ADVERTISING CLAIM. ............................................................................................ 13

IV.   FUSE CHICKEN CANNOT ESTABLISH TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, OR DECEPTIVE TRADE PRACTICES. ......... 14

    A.    There Is No Genuine Dispute That Only *One* Non-Fuse Chicken Product Was Sold on a Fuse Chicken Amazon.com Product Detail Page. ........................ 14

        1.    Non-Amazon.com sales. ........................................................................ 14

        2.    Returns. ................................................................................................ 16

        3.    Inadmissible evidence. ........................................................................... 17

    B.    Amazon Is Not Contributorily Liable Because Fuse Chicken Cannot Identify Any Seller Amazon Knowingly Permitted to Infringe............................ 18

    C.    Fuse Chicken's Direct Liability Theory Is Barred by Amazon's Licenses, and Also Fails Because There Is No Likelihood of Confusion. ........................... 20

        1.    Amazon holds broad licenses to display Fuse Chicken trademarks. ........ 20

        2.    Fuse Chicken cannot establish likelihood of confusion........................... 21

        3.    Fuse Chicken cannot prove any counterfeiting........................................ 24

V.   FUSE CHICKEN CANNOT ESTABLISH THAT AMAZON CAUSED ITS
     ALLEGED LOST PROFITS DAMAGES. .................................................................... 25

     A.   Fuse Chicken Bears the Burden of Proving Damages Causation. ........................ 26

     B.   Fuse Chicken Has Not Satisfied Its Burden to Identify Evidence That Any
          Review Posted on a Fuse Chicken Product Detail Page Was of a Non-Fuse
          Chicken Product Purchased on Amazon.com. ..................................................... 27

     C.   Fuse Chicken Fails to Identify Evidence That Negative Amazon.com
          Reviews of Non-Fuse Chicken Products Resulted in Lost Sales. ......................... 27

     D.   Fuse Chicken Has Not Satisfied Its Burden to Identify Evidence That Fuse
          Chicken Lost *International* Sales Because of Amazon.com Reviews. ................. 29

CONCLUSION ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................27

*Ashland Oil & Refining Co. v. Kenny Constr. Co.*,
395 F.2d 683 (6th Cir. 1968) ....................................................................28

*Baker v. City of Detroit*,
483 F. Supp. 919 (E.D. Mich. 1979)............................................................6

*Balance Dynamics Corp. v. Schmitt Indus., Inc.*,
204 F.3d 683 (6th Cir. 2000) ...............................................................13, 14

*Bennett v. Am. Online, Inc.*,
2007 WL 2178317 (E.D. Mich. 2007)........................................................11

*Blight v. Target Corp.*,
2009 WL 1384162 (E.D. Mich. May 13, 2009).........................................13

*Bridgeport Music, Inc. v. WB Music Corp.*,
508 F.3d 394 (6th Cir. 2007) ......................................................................7

*Bryant v. Commw. of Ky.*,
490 F.2d 1273 (6th Cir. 1974) .............................................................10, 18

*Charles v. Air Enters.*,
244 F. Supp. 3d 657 (N.D. Ohio 2017)..................................................17, 28

*Coach, Inc. v. Gata Corp.*,
2011 WL 2358671 (D.N.H. June 9, 2011).................................................20

*Coach, Inc. v. Goodfellow*,
717 F.3d 498 (6th Cir. 2013) ...............................................................19, 20

*Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., Inc.*,
486 F. Supp. 2d 286 (S.D.N.Y. 2007).......................................................25

*Corbis Corp. v. Amazon.com, Inc.*,
351 F. Supp. 2d 1090 (W.D. Wash. 2004).................................................12

*Dumas v. City of Flint*,
2013 WL 3762702 (E.D. Mich. July 16, 2013) ..........................................9

*Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*,
954 F.2d 713 (Fed. Cir. 1992)....................................................................21

*Fershtadt v. Verizon Commc'ns Inc.*,
  2010 WL 571818 (S.D.N.Y. Feb. 9, 2010)............................................................13

*Ginn v. Stonecreek Dental Care*,
  30 N.E.3d 1034 (Ohio Ct. App. 2015) ................................................................3, 4

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998)...............................................................6, 7, 20, 21

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*,
  730 F.3d 494 (6th Cir. 2013) ...............................................................................24

*Hard Rock Cafe Int'l (USA) Inc. v. Morton*,
  1999 WL 717995 (S.D.N.Y. Sept. 9, 1999).........................................................22

*Hoyt v. Dep't of Children & Families*,
  309 F. Supp. 2d 299 (D. Conn. 2004) ....................................................................8

*Jones v. Staübli Motor Sports*,
  897 F. Supp. 2d 599 (S.D. Ohio 2012) ...................................................................4

*Justice v. Atchison*,
  2009 WL 3413914 (E.D. Ky. Oct. 20, 2009)......................................................4, 25

*LidoChem, Inc. v. Stoller Enters., Inc.*,
  500 F. App'x 373 (6th Cir. 2012) ...........................................................................3

*Lopez v. Young*,
  2014 WL 956155 (M.D. Tenn. Mar. 12, 2014) .....................................................13

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007)..............................................................22, 23

*Marinelli v. Prete*,
  2010 WL 2025374 (Ohio Ct. App. May 21, 2010)..................................................3

*Masck v. Sports Illustrated*,
  5 F. Supp. 3d 881 (E.D. Mich. 2014)................................................................10, 11

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  2015 WL 4394673 (W.D. Wash. July 16, 2015) ..........................................4, 12, 30

*N. Plumbing & Heating, Inc. v. Henderson Bros.*,
  268 N.W.2d 296 (Mich. Ct. App. 1978) .................................................................3

*Newcomb v. City of Troy*,
  719 F. Supp. 1408 (E.D. Mich. 1989)...................................................................26

iv

*Olszonicki v. United States*,
    867 F. Supp. 610 (N.D. Ohio 1994).........................................................................26

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
    477 F.3d 383 (6th Cir. 2007) .....................................................................................6

*Rosetta Stone Ltd. v. Google, Inc.*,
    676 F.3d 144 (4th Cir. 2012) .............................................................................18, 19

*Snugglers' Meadow Farms, LLC v. Land O'Lakes, Inc.*,
    2006 WL 346396 (N.D. Ohio Feb. 13, 2006)........................................................26

*Stavrinides v. Vin Di Bona*,
    2018 WL 1311440 (C.D. Cal. Mar. 12, 2018)....................................................5, 21

*Sygma Photo News, Inc. v. High Soc'y Magazine*,
    778 F.2d 89 (2d Cir. 1985).......................................................................................11

*THOIP v. Walt Disney Co.*,
    788 F. Supp. 2d 168 (S.D.N.Y. 2011)...............................................................22, 23

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010).......................................................................................19

*United Van Lines, Inc. v. Am. Holiday Van Lines, Inc.*,
    487 F. Supp. 235 (E.D. Tenn. 1979)................................................................23, 24

*Ventura Content, Ltd. v. Motherless, Inc.*,
    885 F.3d 597 (9th Cir. 2018) ...................................................................................12

*Wolf v. Procter & Gamble Co.*,
    555 F. Supp. 613 (D.N.J. 1982) ..............................................................................17

*Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*,
    1997 WL 698044 (N.D.N.Y. Nov. 6, 1997) ..........................................................24

*Zinganything, LLC v. Import Store*
    158 F. Supp. 3d 668 (N.D. Ohio 2016)....................................................................6

## INTRODUCTION

Fuse Chicken's 31-page Opposition confirms that it cannot substantiate its claims.[1]  Fuse Chicken does not present evidence that Amazon sold or knowingly allowed counterfeit products to be sold on Amazon.  Fuse Chicken instead contends that Amazon's business practices—designed to help customers such as by allowing multiple sellers to list all sale offers for a given product on a single page, rather than forcing customers to navigate hundreds of seller-specific pages—*might* allow unidentified counterfeiters to reach customers.  And rather than identify specific instances of counterfeit products sold on Amazon.com, Fuse Chicken points to products allegedly sold on non-United States Amazon websites, and presents speculative testimony from its CEO that ██████████████████████████████████████████████████ ███████████████  Where it cannot ignore the gap between its speculation and the lack of supporting evidence, Fuse Chicken argues that Amazon—the defendant—should have the burden of disproving that speculation.  The evidentiary record supplied by the parties shows that the facts material to Fuse Chicken's claims are uncontroverted, and those undisputed facts warrant summary judgment in Amazon's favor.

As to the tortious interference claim, it is undisputed that Fuse Chicken has not identified a single party with whom it had a relationship with which Amazon intentionally interfered.  Fuse Chicken thus fails to satisfy the required first element of that claim.

As to the copyright infringement claim, summary judgment should issue at the threshold because it is undisputed that Fuse Chicken never disclosed any theory of infringement in its Complaint or when asked directly to do so in discovery.  Further, Fuse Chicken does not dispute that it granted Amazon a license to display and commercially exploit its copyrighted works "in any manner," which provides Amazon a complete defense to any of Fuse Chicken's new theories of infringement.  Fuse Chicken admits this license in the first paragraph of its Statement of Facts,

---

[1] Fuse Chicken incorrectly certified that it complied with the 30-page limit for its Opposition. The Opposition would have been even longer had Fuse Chicken properly spaced the many single-spaced bullet points throughout its Statement of Facts.  *See* Opp. 11-15, 18-21.

and offers no evidence or argument—beyond an unsubstantiated conclusion—that Amazon's display of Fuse Chicken images on Amazon.com was outside the broad scope of the license.

As to Fuse Chicken's coextensive trademark infringement, false designation of origin, and deceptive trade practices claims, Fuse Chicken offers no evidence to dispute that only *one* non-Fuse Chicken product was ever sold on a Fuse Chicken product detail page on Amazon.com. Fuse Chicken does not dispute that this product, which was sold to Fuse Chicken's CEO as a used product in May 2017, bears the name of its source—Cable Data—on its packaging, and does not purport to be a Fuse Chicken product.  That fact disposes of Fuse Chicken's direct liability claims.  While Fuse Chicken describes other supposed "fake" products it claims it purchased or received as returns, it offers no evidence that any were sold on Amazon.com, much less that they were sold on a Fuse Chicken product detail page.  In fact, though Fuse Chicken fails to mention it, *all* of these purported "fake" products Fuse Chicken claims to have purchased came from *international* Amazon websites—*not* from Amazon.com.  The Court has ruled that such international websites are outside the scope of this case.

Nor does Fuse Chicken offer evidence to dispute the fact that Amazon took action on each trademark and copyright infringement complaint of which Fuse Chicken provided notice, which disposes of Fuse Chicken's indirect liability claims.  Fuse Chicken's claim that Amazon failed to act on notices concerning the product detail pages for ▮ "non-FC ASINs" (*i.e.*, products)—a claim for which Fuse Chicken cites no evidence besides its own unsubstantiated interrogatory response—is demonstrably wrong.

Finally, as to Fuse Chicken's actual damages claim, Fuse Chicken offers no evidence to support its speculation that (1) each post-November 2016 negative Amazon.com rating of any Fuse Chicken product *must have been* a rating of a non-Fuse Chicken product, and (2) worldwide sales of all Fuse Chicken products declined *because of* those lower Amazon.com ratings.  Fuse Chicken seeks to offer rank speculation under the guise of "circumstantial evidence," but the unsupported *ipse dixit* of its expert and its CEO are not evidence at all.

Summary judgment should issue on all of Fuse Chicken's claims.

## I.   FUSE CHICKEN'S OPPOSITION CONFIRMS IT CANNOT ESTABLISH ITS CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY.

Summary judgment must issue on Fuse Chicken's tortious interference claim because it has not identified—and cannot identify—a specific business expectancy with which Amazon knowingly interfered.  Fuse Chicken's only rebuttal is to claim that it is not required to identify any specific business expectancy.  Opp. 25 n.11.  Fuse Chicken is wrong as a matter of law.

Fuse Chicken's own cases establish a plaintiff claiming tortious interference must identify a business expectancy with a *specific* third party; an abstract expectation to sell products to "customers" is insufficient.  In Fuse Chicken's lone Ohio case—*Ginn v. Stonecreek Dental Care*—the plaintiff dentist asserted that the defendant "tortiously interfered with his business relationships by encouraging and causing [his] patients to leave."  30 N.E.3d 1034, 1040 (Ohio Ct. App. 2015).  The court held that the plaintiff's expectation to do business with his "patients," in general was insufficient, and affirmed a directed verdict because the plaintiff "could not identify anyone with whom he had a business relationship or prospective contractual relationship and with whom [the defendant] interfered."  *Id.*  Likewise, in Fuse Chicken's two *Michigan* cases, tortious interference claims survived summary judgment only where the plaintiffs identified specific third-party relationships.  *See LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 384 (6th Cir. 2012) ("[A] jury could reasonably determine that [defendants] tortiously interfered in [plaintiff's] business relationships *with Boersen Farms, Zeeland Farm Services, Gerst, and The Andersons*.") (emphasis added));[2] *N. Plumbing & Heating, Inc. v. Henderson Bros.*, 268 N.W.2d 296, 298 (Mich. Ct. App. 1978) (issues of fact existed as to whether defendant caused "*Henderson* not to use [plaintiff] on [a] project" (emphasis added)).

Fuse Chicken fails to identify evidence of any specific business expectancy because there

---

[2] Fuse Chicken's suggestion that *LidoChem* provides that the existence of a valid business relationship or expectancy is necessarily a question for the jury is incorrect.  *See, e.g.*, *Marinelli v. Prete*, 2010 WL 2025374, at *6 (Ohio Ct. App. May 21, 2010) (affirming summary judgment where there was "no evidence [plaintiff] had a business relationship . . . or a prospective contractual relationship with anyone").

is none.  Fuse Chicken's Head of Sales, James Siegl, admitted that ███████████████

███████████████████████████████████████████" Dkt. 165-18 (Siegl Tr.)

258:13-18, and could not identify any "████████████████████████████████████

████████████," *id.* 261:11-17.  Fuse Chicken cites no authority for the suggestion that ████

████████████████████████████████████████████████████████

████████████████████ Opp. 25 n.12; *see Ginn*, 30 N.E.3d at 1040 (plaintiff

failed to identify any third party with whom "*he* had a business relationship" (emphasis added)).

## II.    FUSE CHICKEN CANNOT ESTABLISH ANY THEORY OF COPYRIGHT INFRINGEMENT.

### A.    Fuse Chicken Does Not Dispute That Its Complaint and Discovery Responses Failed to Identify a Theory of Copyright Infringement.

Amazon moved for summary judgment on the ground that Fuse Chicken's Complaint

failed to state whether it claims direct, contributory, or vicarious infringement.  Mot. 18-19.

Fuse Chicken does not dispute this failure or its failure to disclose *any* theory of copyright

infringement over 13 months of discovery, even when asked directly.  *Id.* 19 (citing to

Fuse Chicken's response to an interrogatory seeking the bases for its trademark and copyright

claims).  Fuse Chicken's failure to respond to Amazon's argument, Opp. 27-30, "is grounds for

the district court to assume opposition to the motion is waived, and grant the motion."  *Justice v.

Atchison*, 2009 WL 3413914, at *2 (E.D. Ky. Oct. 20, 2009).

Ignoring this threshold basis of Amazon's Motion entirely, Fuse Chicken opts to raise

unpleaded theories of infringement for the first time in its Opposition.  Opp. 19-20.  Fuse

Chicken is not permitted to do so, and summary judgment should issue on this ground alone.  *See

Jones v. Staübli Motor Sports*, 897 F. Supp. 2d 599, 614 (S.D. Ohio 2012) (granting summary

judgment when plaintiff did not allege liability theory in complaint); *Milo & Gabby, LLC v.

Amazon.com, Inc.*, 2015 WL 4394673, at *5 (W.D. Wash. July 16, 2015) (declining to consider

vicarious infringement theory first asserted in opposition to summary judgment motion).

**B.**     **Fuse Chicken's Newly Asserted Copyright Infringement Theories Lack Legal and Evidentiary Support.**

**1.**     **Fuse Chicken licensed the use of its copyrighted works to Amazon, precluding a claim for direct copyright infringement.**

Fuse Chicken granted Amazon broad licenses to use its trademarks and copyrighted content. Fuse Chicken admits, in its Complaint and Opposition, that under the Amazon Business Solutions Agreement, Fuse Chicken granted Amazon a "worldwide, royalty-free license" to "use, reproduce, perform, display, distribute, adapt, modify, re-format, create derivative works of, and otherwise commercially or non-commercially exploit in any manner" Fuse Chicken's trademarks and copyrighted content. *See* Compl. ¶ 24; Opp. 11, 25; Noggle. Decl. ¶¶ 10-11 & Ex. A.[3] Nor does Fuse Chicken contest Amazon's separate argument that, under Amazon's Vendor Terms and Conditions, Fuse Chicken granted Amazon a license to "use, copy, display, perform and distribute" information collected from Fuse Chicken's website or otherwise provided by Fuse Chicken to Amazon. Mot. 20. These licenses are "unambiguous and reasonably susceptible to only one interpretation": that Fuse Chicken granted Amazon a "license to freely use and exploit [its copyrighted materials] in any manner, . . . waiv[ing the] right to sue [Amazon] for copyright infringement." *Stavrinides v. Vin Di Bona*, 2018 WL 1311440, at *4 (C.D. Cal. Mar. 12, 2018).

Fuse Chicken claims for the first time in its Opposition that Amazon directly infringed Fuse Chicken's copyrights because the product detail pages on Amazon.com for each of Fuse Chicken's 23 products "use FC's copyrighted photographs," and Amazon "used" those product detail pages "to sell fake products." Opp. 27, 31. This theory is waived because the display of Fuse Chicken's copyrighted photographs on Amazon.com falls squarely within the scope of Amazon's licenses, which grant Amazon the right to "use" those photographs "in any manner" and "on or in connection with any website or other online point of presence." Noggle Decl.

---

[3] "Barnhart Decl.," "Noggle Decl.," and "Skovgard Decl." refer to the Declarations of Lindsey Barnhart, Jason Noggle, and Garth Skovgard, filed in support of Amazon's Motion for Summary Judgment. Dkts. 120, 121, 122. "Noggle Reply Decl.," "Skovgard Reply Decl.," and "Watnick Reply Decl." refer to the Declarations of Jason Noggle, Garth Skovgard, and David Watnick, filed in support of Amazon's Reply in Support of Motion for Summary Judgment.

¶¶ 11, 15-16 & Exs. A, D.  Those licenses are a "complete defense" to the newly-asserted copyright infringement claim.  *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007).  Fuse Chicken's sole legal authority—*Zinganything, LLC v. Import Store*— does not help it: the defendant there *did not have a license* "to use plaintiff's intellectual property in any way" so it was undisputed that the defendant's reproduction of plaintiff's copyrighted images was unauthorized.  Opp. 27 (citing 158 F. Supp. 3d 668, 671, 674 (N.D. Ohio 2016)).

In addition, Fuse Chicken does not even purport to identify evidence that "fake products" were sold on all 23 Fuse Chicken product detail pages.  The single non-Fuse Chicken product unit sold was the result of a mistake, and the marks on that product clearly identify its source as "Cable Data," not Fuse Chicken.  *Infra* 23-24.  More fundamentally, because the Cable Data product does not reproduce any Fuse Chicken copyrighted content on the product or its packaging, Amazon's sale of it does not implicate any of the "exclusive rights" protected by the Copyright Act—*e.g.*, reproduction and distribution of Fuse Chicken's copyrighted works—and so cannot constitute copyright infringement.  17 U.S.C. § 106; *see Zinganything*, 477 F.3d at 674 (requiring proof of "copying" to establish copyright infringement).

Fuse Chicken offers no evidence or law to dispute that Amazon's licenses defeat its claims.  Opp. 30-31.  Instead, it argues that the Court should ignore the licenses because Amazon did not plead an affirmative defense specifically titled "license."  *See id*.  Fuse Chicken misapprehends the law.  When the *existence* of a license is not in dispute, "the license need not be pleaded as an affirmative defense."  *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *Baker v. City of Detroit*, 483 F. Supp. 919, 921 (E.D. Mich. 1979) ("[W]hat matters is not whether the magic words 'affirmative defense' appears in pleadings, but whether the Court and the parties were aware of the issues involved.").  Here, Fuse Chicken admits that it licensed its trademarks and copyrighted content to Amazon.  Compl. ¶ 24; Opp. 11.

Moreover, Fuse Chicken overlooks that Amazon pleaded the affirmative defense of "waiver," which encompasses its license arguments.  Dkt. 17 at 29; *see* Mot. at 20, 26.  The consequence of a trademark or copyright license is that the licensor waives its right to claim

infringement by the licensor.  *See Graham*, 144 F.3d at 236 ("A copyright owner who grants a nonexclusive license to use his copyrighted material *waives his right to sue* the licensee for copyright infringement." (emphasis added)); 3 McCarthy on Trademarks and Unfair Competition § 18:40 (5th ed.) ("Every license carries with it a *waiver of the right of the trademark owner* to sue for infringement arising out of acts . . . within the scope of the license." (emphasis added)).

        **2.**       **Fuse Chicken cannot establish contributory copyright infringement.**

Fuse Chicken concedes that, to establish contributory infringement, it must show that Amazon "intentionally induc[ed] or encourag[ed]" third parties to infringe Fuse Chicken's copyrights.  Opp. 27; Mot. 19; *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007).  Summary judgment should issue because Fuse Chicken fails to offer any specific evidence that Amazon intentionally induced or encouraged others to infringe, and does not dispute that Amazon's intellectual property policies *prohibit* third-party sellers and vendors from infringing as a condition of using the Amazon.com marketplace.  Mot. 8-9.

Fuse Chicken's Opposition instead posits a new theory (which is waived): that Amazon is contributorily liable for "giving open access for third parties to use and continue to display" Fuse Chicken's copyrighted content on non-Fuse Chicken product detail pages.  Opp. 27.  This new theory does not satisfy the legal standard for contributory infringement and lacks any evidentiary support.  Fuse Chicken does not point to any evidence suggesting that Amazon failed to respond to a single notice of claimed infringement of Fuse Chicken's copyrighted content.  *Id.* 11-17, 27; Mot. 23.  As discussed below, none of the supposed "facts" Fuse Chicken offers—*i.e.*, Fuse Chicken's demonstrably incorrect assertion that ███████████████████████████████ ████████████████ its CEO's generalized suspicion of "counterfeits;" and Fuse Chicken's baseless conjecture that inauthentic inventory "may still be" in Amazon fulfillment centers— creates a genuine dispute of material fact regarding Amazon's thorough response to claimed infringement, let alone establish that Amazon intentionally induced or encouraged infringement.

a)      **Fuse Chicken cannot dispute that Amazon appropriately responded to *every* notice of specific infringement.**

The uncontroverted evidence shows that Amazon responded to each of Fuse Chicken's ████ notices of claimed infringement.  Mot. 13; Skovgard Decl. ¶¶ 4-5 & Ex.A.

*First*, Fuse Chicken does not identify even one notice of infringement to which Amazon purportedly did not respond.  Fuse Chicken instead contends that the product detail pages for ███ "non-FC ASINs" of which Amazon purportedly had notice "remained up for months or have never been taken down."  Opp. 16, 27-28.[4]  Fuse Chicken does not present any evidence to substantiate this claim aside from its own factually unsupported and conclusory discovery responses—so there can be no dispute.  *See Hoyt v. Dep't of Children & Families*, 309 F. Supp. 2d 299, 309 (D. Conn. 2004) ("conclusory statements" in party's own interrogatory responses "are simply insufficient to create a genuine issue of material fact").  ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See, e.g.*, Skovgard Decl. Ex. A, Lines 3-11, 1382-85 ████████████████████████ ████████████████████████████████.  Fuse Chicken is also demonstrably wrong. ███████████ "non-FC ASINs" do not appear on Amazon.com—because Amazon removed them once it had notice of the claimed infringement.  Skovgard Reply Decl. ¶ 3; Skovgard Decl. ¶ 5 & Ex. A.  Two of the remaining ASINs are not "non-FC ASINs" at all: they correspond to *Fuse Chicken* products, sold on *Fuse Chicken* product detail pages, where *Fuse Chicken* uses its own copyrighted content.  Skovgard Reply Decl. ¶ 3.  The remaining ASIN on the list corresponds to a toy car, not a phone charger, and no Fuse Chicken copyrighted content or trademarks appear on the product detail page for that toy car.  *Id.*

*Second*, Fuse Chicken asserts that Amazon failed to "substantiate[]" the corrective

---

[4] An "ASIN" is an alphanumeric identifier assigned to each product sold on Amazon.com, and each ASIN corresponds to a product detail page on Amazon.com on which sellers may list the product for sale.  Mot. 9; Noggle Decl. ¶ 5.

actions it took in response to Fuse Chicken's notices of infringement.  Opp. 28.  Fuse Chicken is, again, demonstrably wrong.  Amazon submitted with its Motion a chart created by Amazon's Manager of Notice and Takedown which correlates each specific infringement notice Amazon received with its resolution.  Skovgard Decl. ¶ 5 & Ex. A; Skovgard Reply Decl. ¶¶ 1, 4-6.  Fuse Chicken does not identify any inaccuracies in this chart; it states only that "Amazon cannot establish" that the responsive actions listed in the chart "are accurate."  Opp. 18.  But Mr. Skovgard attests that this information is accurate based on Amazon's records.  *See* Skovgard Decl. ¶¶ 1-5; Skovgard Reply Decl. ¶¶ 1-6.  A party opposing summary judgment cannot create a fact dispute by "simply ask[ing] the court to disbelieve" the other side's competent evidence.  *See Dumas v. City of Flint*, 2013 WL 3762702, at *12 (E.D. Mich. July 16, 2013).

> **b)**  **Fuse Chicken's CEO's generalized suspicions are insufficient to put Amazon on notice of specific infringement.**

In attempting to create a disputed issue of material fact, Fuse Chicken relies heavily on the generalized suspicions of its CEO, Jon Fawcett.  *See, e.g.*, Opp. at 12-13.  These suspicions are irrelevant as a matter of law and cannot create any genuine fact disputes.

*First*, the emails between Mr. Fawcett and Amazon employee Jeremiah Price regarding suspected infringement, on their face, do not contain notice of *specific, identifiable* infringement to which Amazon could respond.  *See* Opp. 15-16.  Rather, they discuss Mr. Fawcett's general suspicions that unidentified infringing products were being sold on unidentified Amazon.com pages.  *See, e.g.*, Rand Decl. Ex. 10.  There is also no dispute that (1) Mr. Price instructed Mr. Fawcett to submit specific infringement notices to the appropriate Amazon team; (2) Mr. Fawcett eventually submitted such notices; and (3) Amazon resolved each notice.  *Id.* Ex. 24; Skovgard Decl. ¶ 5 & Ex. A.  Nor can Mr. Fawcett's email to Mr. Price about a third-party seller named EZ4MOB qualify as notice, as Fuse Chicken claims, Opp. 19, because Mr. Fawcett told Mr. Price he did *not* believe any counterfeit product "came from" ███████ Rand Decl. Ex. 23. When Mr. Fawcett eventually did report ███████ listing on January 27, 2017, Amazon ███████████████████████████████████████████████████████████.

9

Skovgard Decl. Ex. A, Rows 1392-93.  Fuse Chicken does not identify evidence to the contrary.

*Second*, Fuse Chicken's May 2017 demand letter from its counsel to Amazon is inapposite: that letter too referred only to Fuse Chicken's general suspicions of infringement— referring to "a rash of counterfeit[s]"—and *admitted* that "the specific listings complained of" had already been removed by Amazon.  Compl. Ex. 1 at 2, 9; Opp. 17-18.

      c)      **Fuse Chicken cannot dispute that Amazon banned sellers identified as "suspect" after reviewing seller inventory.**

There is no dispute that Amazon  Mot. 13-14; Noggle Decl. ¶ 27.  Nor does Fuse Chicken dispute that, . *Id.*

Unable to dispute these facts, Fuse Chicken makes factually irrelevant and unsubstantiated claims: that the Opp. 20-21; and that " *id.* 17 (emphasis added).  "Mere conclusory and unsupported allegations, rooted in speculation, do not" defeat summary judgment.  *See Bryant v. Commw. of Ky.*, 490 F.2d 1273, 1275 (6th Cir. 1974).

      3.      **Fuse Chicken cannot establish vicarious copyright infringement.**

Fuse Chicken's Opposition fails to create a dispute of material fact as to either of the required elements of vicarious infringement: that Amazon (1) has the right and ability to supervise copyright infringement by third-party sellers on Amazon.com; and (2) has an obvious and direct financial interest in that infringement.

Here, as in *Masck v. Sports Illustrated*, there can be no vicarious infringement because Fuse Chicken cannot "put forth [evidence] demonstrating Amazon could verify the copyright status of every piece of merchandise it lists from third party sellers," and so cannot show that

Amazon had the right and ability to supervise those sellers.  5 F. Supp. 3d 881, 888 (E.D. Mich. 2014); Noggle Decl. ¶ 18.  Nor can Fuse Chicken show that Amazon profited from the alleged copying of Fuse Chicken's copyrighted images by third-party sellers.  Though it asserts generally that "Amazon benefits from every sale on its marketplace," Opp. 28, Fuse Chicken points to no evidence that customers purchased goods "*because of* the . . . infringing material." *Bennett v. Am. Online, Inc.*, 2007 WL 2178317, at \*7 (E.D. Mich. 2007) (emphasis added).  Indeed, there is no evidence of any third-party sale of non-Fuse Chicken products on an Amazon.com product detail page that displayed Fuse Chicken's copyrighted images.  *Infra* 14-18.

In the single paragraph of Fuse Chicken's Opposition in which it articulates for the first time a theory of vicarious copyright infringement, Fuse Chicken does not dispute the evidence presented by Amazon.  Opp. 28.  Nor does Fuse Chicken attempt to distinguish the *Masck* case, in which a claim for vicarious infringement *against Amazon* was rejected in substantially similar circumstances.  Mot. 21.  Instead, Fuse Chicken cites inapposite cases addressing vicarious liability in unrelated contexts.  Opp. 28.  Fuse Chicken primarily relies on a case in which a restaurant owner was held vicariously liable for performances of copyrighted musical works by bands hired to perform in the restaurant.  Opp. 28 (citing *Superhype Pub'g, Inc. v. Vasiliou*, 838 F. Supp. 1220, 1225 (S.D. Ohio 1993)).[5]  Fuse Chicken does not identify any factual or legal basis to permit its newly-asserted claim for vicarious infringement to proceed.

### C.  The Digital Millennium Copyright Act Bars Monetary Relief.

The Digital Millennium Copyright Act (DMCA) safe harbor protects eligible "service providers" from monetary relief for copyright infringement by their users.  17 U.S.C. § 512(c); Mot. 30.  Fuse Chicken does not dispute that Amazon is a service provider, adopted and reasonably implemented a repeat infringer termination policy, and does not interfere with standard technical measures to protect copyrighted works.  Opp. 29-30.  Fuse Chicken limits its

---

[5] Fuse Chicken also cites to *Sygma Photo News, Inc. v. High Soc'y Magazine*, 778 F.2d 89, 93 (2d Cir. 1985), which is similarly inapposite: there, the defendant's employees engaged in the alleged copyright infringement.

response to contesting the two remaining safe harbor requirements: that Amazon (1) acts expeditiously to remove infringing material upon receipt of valid DMCA notice, and (2) lacks the right and ability to control the infringing activity of third parties, or does not receive a financial benefit directly attributable to that activity.  *Id.*  Fuse Chicken is wrong on both counts.

*First*, as explained *supra* at 8-9, Amazon resolved each instance of claimed third-party copyright infringement of which Fuse Chicken provided notice, and Fuse Chicken does not point to evidence otherwise, including about the speed of the resolution.  Opp. 30.  Fuse Chicken's assertion—without citation—that "[t]he sheer volume of notices alone belies Amazon's claim that its response was adequate" does not create a genuine dispute of fact.  *Id.*  To the contrary, the undisputed fact that Amazon resolved such a high volume of reported infringing activity reflects the seriousness with which Amazon treated Fuse Chicken's infringement notices.

*Second*, Fuse Chicken's assertions that Amazon "maintains ultimate control over the content of" product detail pages, and "profits" from third-party sales, *id*. 29-30, are irrelevant to the DMCA analysis.  The safe harbor applies unless Amazon both (1) has the ability to *control* third-party sellers' infringing activity and (2) receives a financial benefit *directly attributable* to infringing activity.  17 U.S.C. § 512(c); Mot. 22.  Fuse Chicken's only case supports Amazon's position: "Merely because Amazon could identify the [copyright infringers] and terminate their accounts does not mean [Amazon] exercised the type of right and ability to control that would disqualify them from [the] safe harbor."  *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1110 (W.D. Wash. 2004).  Nor does Fuse Chicken dispute that Amazon does not "ma[k]e any money directly from" copyrighted content posted by third parties, such as image hosting fees.  *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th Cir. 2018).[6]

---

[6] Fuse Chicken's attempt to distinguish *Milo & Gabby* and *Corbis*—both of which are squarely on point with the facts in this case—falls flat.  Opp. 30 n.15.  Fuse Chicken's observation that those cases only involved alleged infringement by third parties is not disputed: Amazon concedes that the DMCA safe harbor precludes monetary recovery for Fuse Chicken's copyright claim only to the extent it is based on infringement by third parties (*i.e.*, Fuse Chicken's unpleaded contributory and vicarious infringement theories).

Accordingly, even if the Court does not grant summary judgment entirely as to Fuse Chicken's newly minted claims for contributory and vicarious copyright infringement, the Court should grant summary judgment as to any monetary recovery sought under these claims.

## III. FUSE CHICKEN DID NOT PLEAD AND CANNOT ESTABLISH A FALSE ADVERTISING CLAIM.

As noted in Amazon's Motion, Fuse Chicken did not plead a claim for false advertising in its Complaint.  Mot. 24 n.3; Compl. ¶¶  58-62.  Fuse Chicken does not argue otherwise; it simply attempts to pursue this unpleaded claim for the first time in its Opposition.  That course of action is barred.  *See* Opp. 35; *Blight v. Target Corp.*, 2009 WL 1384162, at *1 (E.D. Mich. May 13, 2009) (granting summary judgment on unpleaded claim).

Fuse Chicken's only claim under Section 1125 of the Lanham Act is for false *designation*, under Section 1125(a)(1)(**A**).  Compl. ¶ 59.  That claim is distinct from a claim for false advertising, which arises under Section 1125(a)(1)(**B**).  *See Fershtadt v. Verizon Commc'ns Inc.*, 2010 WL 571818, at *7 (S.D.N.Y. Feb. 9, 2010) (declining on summary judgment to consider 29 U.S.C. § 1132(**c**) claim when complaint specified § 1132(**a**)(1)(B) claim).  Had Fuse Chicken pleaded false advertising, it must have alleged: (1) a false or misleading statement; (2) deception; (3) materiality; (4) use in interstate commerce; and (5) damages causation.  *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 689 (6th Cir. 2000).  Fuse Chicken did not allege any false or misleading statement, let alone one causing deception and damages.  Compl. ¶¶ 12-49, 58-62.  This failure to plead a factual theory separately requires summary judgment on any false advertising claim Fuse Chicken might now seek to assert.  *See Blight*, 2009 WL 1384162, at *1 (granting summary judgment on claim for retaliation through reduced hours where complaint alleged only firing).

Nor does Fuse Chicken identify any evidence to support its brand new argument that Amazon is liable for false advertising.  *See* Opp. 35-36; *Lopez v. Young*, 2014 WL 956155, at *2 (M.D. Tenn. Mar. 12, 2014) (party not entitled to trial solely on "unsubstantiated assertions").  Without any evidence, Fuse Chicken cannot prove any element of this phantom false advertising

claim. *See Schmitt Indus.*, 204 F.3d at 696.

## IV.  FUSE CHICKEN CANNOT ESTABLISH TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, OR DECEPTIVE TRADE PRACTICES.

Fuse Chicken cannot maintain its coextensive trademark infringement, false designation, and deceptive trade practices claims.  These claims require proof that trademark-infringing products were actually sold on Amazon.com, and Fuse Chicken cannot establish this factual predicate.  To prove contributory infringement, Fuse Chicken must also show that Amazon allowed third-party sellers "it knew or should have known were infringing to continue to sell" on Amazon.com.  Opp. 33-34 (citing *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013)).  Fuse Chicken has no evidence that *any* third-party seller sold infringing products on Amazon.com, let alone that Amazon allowed trademark infringement it knew or should have known about.  Then, to prove direct infringement, Fuse Chicken must further show that (1) the license it granted to Amazon to use Fuse Chicken trademarks "in any manner" does not apply; and (2) likelihood of confusion.  Fuse Chicken cannot establish either of these elements.

### A.  There Is No Genuine Dispute That Only *One* Non-Fuse Chicken Product Was Sold on a Fuse Chicken Amazon.com Product Detail Page.

Fuse Chicken's claim for nearly ██████████ in lost profits is based on evidence that *one* non-Fuse Chicken product unit—the Cable Data product—was sold by ████████████



██████████████████████████████████████████████████  Mot. 15; Fawcett Decl. Ex. I.  Fuse Chicken does not identify evidence that *any* of the other purported non-Fuse Chicken products described in its Opposition, at 13-15, were sold on Amazon.com.  In fact, the record shows these products were purchased elsewhere, on international Amazon marketplaces, and are thus legally irrelevant.  Nor does Fuse Chicken present evidence that non-Fuse Chicken products returned to it by customers were purchased on Amazon.com.  And, as discussed below, the Court should disregard Fuse Chicken's remaining "evidence," which consists of speculation by its CEO and inadmissible hearsay.

#### 1.  Non-Amazon.com sales

Fuse Chicken identifies a number of non-Fuse Chicken products purportedly purchased

"from Amazon."  Opp. 14-15.  The undisputed evidence—including Fuse Chicken's own testimony—proves otherwise: *none* of the identified products were sold on Amazon.com:

(a)     November 21, 2017 Titan Loop purchase: sold by a third-party seller on Amazon.in—the *Indian* marketplace.  Watnick Reply Decl. Ex. 1 (Fuse Chicken 30(b)(6) Tr.) 168:7-16; *id.* Ex. 8 (order confirmation); Noggle Reply Decl. ¶ 4.  *Compare with* Fawcett Decl. ¶¶ 32-34 & Ex. J.

(b)     November 27, 2017 Bobine Auto and Une Bobine purchases: sold by a third-party seller on Amazon.co.uk—the *United Kingdom* marketplace.  Watnick Reply Decl. Ex. 1 (Fuse Chicken 30(b)(6) Tr.) 162:6-24; Noggle Reply Decl. ¶¶ 5-6.  *Compare with* Fawcett Decl. ¶¶ 35-38 & Exs. K-L.

(c)     September 25, 2018 Bobine Auto purchase: sold by a third-party seller on Amazon.de— the *German* marketplace.  Noggle Reply Decl. ¶ 7; Watnick Reply Decl. Ex. 2 (order confirmation).  *Compare with* Fawcett Decl. ¶¶ 39-40 & Ex. M.

(d)     October 29, 2018 Bobine purchase: sold by a third-party seller on Amazon.fr—the *French* marketplace.  Fuse Chicken mistakes the estimated delivery date for this order as the sale date, which was September 25, 2018.  Noggle Reply Decl. ¶ 8; Watnick Reply Decl. Ex. 3 (order confirmation).  *Compare with* Fawcett Decl. ¶¶ 41-42 & Ex. N.[7]

(e)     December 22, 2016 Bobine Auto warranty claim: sold by a third-party seller on Amazon.in—the *Indian* marketplace.  Watnick Reply Decl. Ex. 4 (order confirmation and customer communications).  *Compare with* Fawcett Decl. ¶ 57 & Ex. T.

Alleged infringement on non-Amazon.com marketplaces is beyond the scope of this case, and cannot create a genuine dispute of material fact.  Dkt. 87 at 5-6.  In its January 2019 Order, this Court affirmed that "evidence of infringement . . . on Amazon's international websites" is "not properly discoverable" because *it is not within the scope of the Complaint*, which alleged

---

[7] Fuse Chicken did not produce any information related to either of the September 25, 2018 orders until well after fact discovery closed on September 8, 2018.  Watnick Reply Decl. ¶¶ 3-4.

infringement of "on www.amazon.com—which is the defendant's U.S. marketplace."  *Id*.  The Court further observed that "it is difficult to imagine how" such evidence "would be admitted during a trial in this case."  *Id.* at 6.  Fuse Chicken's Opposition ignores this ruling entirely.

### 2.      Returns

Fuse Chicken identifies four returns of purportedly non-genuine products as evidence that those products were sold on Amazon.com.  Mot. 14-15; Opp. 13-15 (identifying April 29, 2017, January 23, 2018, and April 1, 2018 ███████ and September 7, 2016 direct customer return).[8]  As Amazon explained in its Motion, there is *no* evidence—and Fuse Chicken points to none in its Opposition—that these products were sold on Amazon.com.  Mot. 14-15.

Fuse Chicken wrongly claims that Amazon "admitted" that the products returned on April 29, 2017 and January 23, 2018 were sold on Amazon.com.  Fuse Chicken does not dispute that the mere fact that a customer sends a product to Amazon is *not* evidence that it was sold on Amazon.com, because customers can, and do, put a product into a box and return it, by mistake or to receive a refund of more money than was paid to purchase the returned product.  Noggle Decl. ¶ 22.  The April 1, 2018 ███████ of a Bose battery charger in place of a Bobine Blackout, Opp. 15, is illustrative: Fuse Chicken does not dispute that the Bose battery charger is distinct from the Bobine Blackout and its likelihood of confusion expert opined she "would not describe [them] as sharing similarities."  Barnhart Decl. Ex. 9 at 217:1-13.

There is also no dispute that customers made fraudulent returns of products sold by Fuse Chicken.  Fuse Chicken points to a September 7, 2016 return it received "of a purported Armour Charge" product directly from a customer who claimed that he purchased the returned product on Amazon.com.  Opp. 14-15.  But it is uncontroverted that this product unit was sold to Amazon *by Fuse Chicken*.  Noggle Reply Decl. ¶ 9; Watnick Reply Decl. Ex. 5 (Amazon 30(b)(6) Tr.) 115:8-116:9, 153:3-161:23.  Fuse Chicken simply ignores this evidence, Opp. 14-15, and the

---

[8] ████████████████████████████████████████
███████████████████████████████████
███████.  Noggle Decl. ¶ 23.

implication of it: If that customer "returned" a non-Fuse Chicken product to Fuse Chicken, he substituted a different product in the return, *i.e.*, the return was fraudulent.

### 3. Inadmissible evidence

Fuse Chicken relies on inadmissible hearsay and speculation by its CEO to argue that non-Fuse Chicken products were sold on Amazon.com. *First*, Fuse Chicken contends that the product depicted in a December 17, 2016 Amazon.com review was sold on Amazon.com. Opp. 13. Fuse Chicken does not offer any evidence, including from the reviewer, to support its contention. Instead Fuse Chicken relies on the review and accompanying photograph (an out-of-court statement) for the truth of the matter Fuse Chicken claims they assert ("This product was purchased on Amazon.com"). That is textbook hearsay and cannot defeat summary judgment. Fed. R. Evid. 801(a); *Charles v. Air Enters.*, 244 F. Supp. 3d 657, 661 (N.D. Ohio 2017).

The hearsay exceptions Fuse Chicken raises—party admission, business record, and present sense impression—are inapplicable. Opp. 37 n.21. The review and photo are assertions by an anonymous customer, not statements made nor records kept by Amazon, and there is no evidence the photo was posted "while the declarant was perceiving the condition or immediately thereafter." *Wolf v. Procter & Gamble Co.*, 555 F. Supp. 613, 620-21 (D.N.J. 1982) (customer complaint records were inadmissible hearsay); Fed. R. Evid. 801(d)(2).[9]

*Second*, Fuse Chicken points to a warranty claimant's September 19, 2017 statement that he purchased a purportedly non-genuine product on Amazon.com. Opp. 15; Fawcett Decl. ¶¶ 59-60 & Exs. V-X.[10] This out-of-court statement, offered for the truth of the matter asserted, is also hearsay, and cannot create a genuine dispute of material fact. *Charles*, 244 F. Supp. 3d at 661.

*Third*, Fuse Chicken's CEO purports to have "███████████████████████████

---

[9] Fuse Chicken also asserts this review is "admissible to show notice," Opp. 37 n.21, but does not explain *what* it put Amazon on notice of, or how it did so.

[10] Fuse Chicken also refers to a July 20, 2017 warranty claim by a "████████," but offers no evidence of the product that was purportedly returned. Opp. 15; Fawcett Decl. ¶ 58 & Ex. U.



This mixture of explicit speculation and circular reasoning cannot defeat summary judgment. Most egregiously, Mr. Fawcett █████████████████████████ █████████████████" Fawcett Decl. ¶ 65. Even Fuse Chicken concedes that Mr. Fawcett's speculation cannot establish the sellers █████████████████████████████ ████████████████████████████████████████████ Opp. 12.[11] Fuse Chicken's "conclusory and unsupported allegations, rooted in speculation, do not" create a genuine fact dispute. *Bryant v. Commw. of Ky.*, 490 F.2d 1273, 1275 (6th Cir. 1974).

### B. Amazon Is Not Contributorily Liable Because Fuse Chicken Cannot Identify Any Seller Amazon Knowingly Permitted to Infringe.

Summary judgment must issue as to Fuse Chicken's contributory liability theory because it has offered no admissible evidence that any third-party seller sold any non-Fuse Chicken product through a Fuse Chicken product detail page on Amazon.com. *Supra* 14-18. Fuse Chicken also has failed to identify any seller Amazon allowed to continue selling despite knowing or having reason to know it was engaging in infringement.[12]

Fuse Chicken wrongly argues *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012), "found contributory liability" based on similar facts. Opp. 34.[13] The facts were distinct

---

[11] Mr. Fawcett's unreliable conclusions are also demonstrably wrong. Opp. 12. ████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Fawcett Decl. Ex. A.

[12] Fuse Chicken misleadingly implies that ████████ continued selling Fuse Chicken products after Fuse Chicken alerted Amazon it suspected ████████ inventory was counterfeit, Opp. 16-17. ████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Rand Decl. Ex. 11.

[13] The Fourth Circuit did not in fact "[find] contributory liability," Opp. 34, as Fuse Chicken claims; it remanded to the district court for further proceedings. *Rosetta Stone*, 676 F.3d at 165.

and *Rosetta Stone* confirms that Fuse Chicken *cannot* prove contributory liability.  There, the court vacated summary judgment because the plaintiff had alerted Google to *specific* infringing advertisers, and brought forth "significant evidence" that Google "continued to allow . . . these same advertisers" to keep infringing.  676 F.3d at 163-65.  Here, by contrast, Fuse Chicken does not argue, and has adduced no evidence, that Amazon allowed any subsequent infringement by any seller identified in its "█████████" notices of suspected infringement.  Opp. 34.  Nor does Fuse Chicken cite any evidence that its unspecified "█████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████. *Id.*[14]

Unable to establish the predicate fact that Amazon allowed specific sellers it knew or had reason to know were infringing to continue selling on Amazon.com, Fuse Chicken argues that Amazon is contributorily liable because its business model permits third parties to sell its products, and some of them *might* sell inauthentic products.  *See* Opp. 33-35.  That theory fails as a matter of law.  *Compare Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107-110 (2d Cir. 2010) (no contributory liability because eBay did not have "specific knowledge as to which particular sellers were making" infringing sales, and "eBay's general knowledge of the sale of counterfeit Tiffany goods through its website" was insufficient),[15] *with Goodfellow*, 717 F.3d at 504 (flea market operator "knew that *particular* vendors were selling counterfeit Coach products[, y]et . . . failed to deny [selling] access to [those] offending vendors" (emphasis added)).

Nor can Fuse Chicken save its contributory infringement claim by relying on a "willful

---

[14] For the same reason, Amazon cannot be liable for allegedly "█████████████████████
████████████████████████████
██████████  Opp. 34.  Even if these unsupported assertions were true, Amazon could be contributorily liable only if these alleged practices resulted in it permitting sellers it knew or should have known were infringing to continue doing so.  *See Goodfellow*, 717 F.3d at 504.

[15] Fuse Chicken asserts *Tiffany* applies only "where the infringing activity and the alleged contributory infringer were physically remote from one another."  Opp. 34 n.19.  But the Sixth Circuit applied *Tiffany* in *Goodfellow*, which concerned infringing vendors who were physically proximate to the defendant flea market operator.  *See* 717 F.3d at 504.

blindness" theory, because it cannot show that Amazon "suspect[ed] wrongdoing" but "deliberately fail[ed] to investigate" specific potentially infringing conduct. *Id.* at 503; *see also Coach, Inc. v. Gata Corp.*, 2011 WL 2358671, at *7 (D.N.H. June 9, 2011) ("Willful blindness requires more than mere negligence or mistake and does not lie unless the defendant knew of a high probability of illegal conduct and purposefully contrived to avoid learning of it . . ." (citations omitted)). Opp. 35. The evidence is uncontroverted that Amazon responded to each of Fuse Chicken's infringement notices, ███████████████████████████████████ ██████████████████████████ Mot. 8-9, 13-14. Whether or not Fuse Chicken would have preferred other efforts, Amazon's actions were remedial, not a "deliberate failure to investigate," and Fuse Chicken cites no contrary authority. *Cf. Goodfellow*, 717 F.3d at 504 ("willfully blind" defendant "knew that particular vendors were selling counterfeit[s]" but "failed even to undertake a reasonable investigation"); *Gata Corp.*, 2011 WL 2358671, at *8 (defendant was willfully blind where it performed no investigation despite four "law-enforcement . . . raids [that] provided [it] with a veritable roadmap to infringing vendors and merchandise").

### C. Fuse Chicken's Direct Liability Theory Is Barred by Amazon's Licenses, and Also Fails Because There Is No Likelihood of Confusion.

#### 1. Amazon holds broad licenses to display Fuse Chicken trademarks.

Fuse Chicken does not dispute that it licensed its trademarks to Amazon and, as detailed above, its argument that Amazon's license defense is barred fails. *See supra* 5-7. Thus, the only question is whether Fuse Chicken can prove that those licenses fail to cover the conduct challenged here. *See Graham*, 144 F.3d at 236 ("when the contested issue is the *scope* of a license, rather than the *existence* of one, the [licensor] bears the burden of proving that the [licensee's conduct] was unauthorized"). The answer is no.

Fuse Chicken's direct infringement theory is that Amazon displayed Fuse Chicken trademarks on product page(s) from which Amazon allegedly sold non-Fuse Chicken products. This theory fails because any such use of Fuse Chicken trademarks was licensed. Amazon's Vendor Terms and Conditions allow Amazon to "use, copy, display, perform and distribute"

Fuse Chicken "Product Information," including trademarks, "on or in connection with any website," Noggle Decl. Ex. D at 2, and Amazon's Business Solutions Agreement gives Amazon "license to use, reproduce, perform, display, . . . and otherwise commercially or non-commercially exploit in any manner" Fuse Chicken's trademarks and Product Information, *id.* Ex. A at 3, 8.  *See Stavrinides* 2018 WL 1311440, at *4 (license granting "permission to freely utilize and exploit [intellectual property] . . . in any manner" resulted in "unambiguous" waiver of right to sue for any infringement).

Fuse Chicken's only response to these broad licenses is to assert, without support, that "Amazon did not have a license to use [Fuse Chicken's intellectual property] to sell non-genuine [Fuse Chicken] products."  Opp. 31.  This "argument," which makes no reference to any clause of either license, and cites no law, cannot satisfy Fuse Chicken's burden of showing that the broad licenses do not encompass the challenged conduct.  *See Graham*, 144 F.3d at 236.

### 2. Fuse Chicken cannot establish likelihood of confusion.

Fuse Chicken's direct infringement claim fails for the independent reason that it cannot prove "likelihood of confusion" with the Cable Data Coil Brace—the "touchstone" of its trademark infringement, false designation, and deceptive trade practices claims.[16]

*First*, Fuse Chicken asserts that an Amazon warehouse employee "mistook" a Cable Data Coil Brace for a Fuse Chicken Bobine.  Opp. 33.  This is legally irrelevant.  There is no evidence that the *employee* tasked with warehousing thousands of products was a potential Fuse Chicken customer, so any mistake cannot evince *consumer* confusion, the relevant inquiry.  *See Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 717 (Fed. Cir. 1992) (confusion of secretaries, nurses, and physicians was irrelevant, because they were not potential purchasers of the disputed software and services).  Nor does Fuse Chicken have any evidence that the

---

[16] Fuse Chicken's two other "examples" of products allegedly palmed off as Fuse Chicken products—the fraudulent Armour Charge "return" and the Bose camera battery charger "return"—are legally irrelevant.  *See supra* 16-17.  Fuse Chicken's expert did not test for likelihood of confusion for either.

warehouse employee suffered confusion as to the *source of the product*—the legally relevant trademark confusion—or instead made a simple mistake, like clicking a wrong button.  *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 596 (S.D.N.Y. 2007) (confusion "caused by stimuli irrelevant to the trademark at issue" does not show a likelihood of confusion).

*Second*, Fuse Chicken argues Amazon's supposed "practice" of allowing the sale of "both genuine and non-genuine products" through a single product detail page bearing Fuse Chicken's trademarks "result[ed] in confusion[.]"  Opp. 32.[17]  But Fuse Chicken offers no evidence that Amazon had a "practice" of allowing the sale of "non-genuine products" in the first place—much less of any resulting customer confusion.

*Third*, Fuse Chicken contends that, because Amazon's product detail pages display Fuse Chicken trademarks, if a purchaser of a Fuse Chicken product receives another product, including a Cable Data Coil Brace, "the reasonable expectation is that they received what they ordered."  Opp. 32.  But the legally relevant question is different: whether a customer who is delivered a Cable Data Coil Brace is likely to believe the Cable Data Coil Brace was made *by Fuse Chicken*.  *See THOIP v. Walt Disney Co.*, 788 F. Supp. 2d 168, 182 (S.D.N.Y. 2011).  Fuse Chicken has no evidence of such confusion, and never tested for it.

Fuse Chicken conducted a survey asking respondents to imagine visiting the Amazon.com product detail page for Bobine, placing an order, then receiving a Cable Data Coil Brace (not identified by name, but depicted in a photo).  The survey then asked respondents if they believed they received "the product" they had ordered; it did not ask respondents *which company* was the source of the Cable Data Coil Brace they imagined receiving.  Dkt. 98 (Campbell Report) 64-65, 82-91.  As *THOIP* holds, a "same product" question does not measure relevant confusion because it does not require respondents to specify that they confused the

---

[17] Fuse Chicken cites *Hard Rock Cafe Int'l (USA) Inc. v. Morton*, 1999 WL 717995, at *30 (S.D.N.Y. Sept. 9, 1999) in support of this argument.  That case is inapposite; the defendant there had a license "to develop Hard Rock Hotel/Casinos in certain defined territories," but lacked a license for his 'use of the "hardrock.com' domain name, sales of [Hard Rock] merchandise on the Internet and use of [Hard Rock] logos on the Internet."  *Id.* at *1, 29.

Cable Data product for a *Fuse Chicken* or *Bobine* product, though those are the marks for which confusion is alleged.  *See* 788 F. Supp. 2d at 182.  The difference is especially meaningful here, because the majority of survey respondents could not identify "Fuse Chicken" even immediately after viewing its Amazon.com product detail page.  Dkt. 98 (Campbell Exp. Rpt.) 100.  In *THOIP*, the court excluded a survey that was intended to test whether consumers would mistake THOIP's shirts for Disney products because it "counted as confused respondents who," after being shown a THOIP shirt and Disney shirt in succession, "said that the [THOIP and Disney] shirts . . . were put out by the 'same company,' even though these respondents did not mention Disney" as the source of the shirts.  *THOIP*, 788 F. Supp. 2d at 182.

Fuse Chicken's survey also failed to determine *why* respondents were purportedly confused—and therefore cannot conclude that their confusion was caused by Amazon's display of Fuse Chicken's trademarks, as opposed to legally irrelevant visual similarities between the Fuse Chicken Bobine and the Cable Data Coil Brace.  Barnhart Decl. Ex. 9 (Campbell Tr.) 140:24-141:18, 151:4-24 (admitting the survey and results did not indicate why any respondent was purportedly confused).  The survey in *THOIP* was excluded for making this same error— counting as confused "answers . . . not indicative of . . . confusion because they [were] not based on the purportedly protectable elements of [the plaintiff's] mark," but on unrelated visual similarities between the plaintiff's and defendant's products.  *THOIP*, 788 F. Supp. 2d at 182. Fuse Chicken's survey and its results are therefore not probative of trademark confusion.  *See id.* at 182, 184 (excluding survey that measured "irrelevant confusion"); *Malletier*, 525 F. Supp. 2d at 596 (excluding survey that did not test for likelihood of confusion "stem[ming] from the mark in question," as opposed to overall "look" of the products at issue).

*Fourth*, Fuse Chicken does not dispute that there "is hardly likelihood of confusion or palming off when," as with the Cable Data Coil Brace, "the name of the [source] is clearly displayed" on the product or its packaging.  *United Van Lines, Inc. v. Am. Holiday Van Lines, Inc.*, 487 F. Supp. 235, 239 (E.D. Tenn. 1979) (alteration in original) (citation omitted).  It instead asserts, without citation, that *United Van Lines* and similar cases apply only to expensive

23

products likely to be purchased with care.  Opp. 33 n.17.[18]  But Fuse Chicken and its witnesses describe its company's products as "███████████████."  Watnick Decl. Ex. 1 (Fuse Chicken 30(b)(6) Tr) 74:3; *id.* Ex. 6 (J. Fawcett Tr.) 179:18-20, 273:6-7; *id.* Ex. 7 (J. Siegl Tr.) 103:1-16; Dkt. 98 (Campbell Exp. Rpt.) 23.  And, in any event, when an infringing product clearly displays its source, likelihood of confusion is precluded for products significantly cheaper than a Bobine.  *See, e.g.*, *Worldwide Sport Nutritional Supplements, Inc. v. Van Horn Techs., Inc.*, 1997 WL 698044, at *14 (N.D.N.Y. Nov. 6, 1997) (plaintiff sold nutrition bars for $3.49).

*Fifth*, Fuse Chicken contends that likelihood of confusion can be presumed for "counterfeit" products, Opp. 32, but never identifies the supposed "counterfeits" to which it refers, *id.*, and cannot prove counterfeiting in any event, *see infra* 24-25.

*Sixth*, Fuse Chicken claims that "[s]everal customers returned fake FC products that they purchased on Amazon to [Fuse Chicken], indicating they believed they were Fuse Chicken products."  Opp. 32.  Its Opposition, however, provides only one example: the purported September 7, 2016 "return" to Fuse Chicken of an entirely different Armour Charge product.  *Id.* 14-15.  As explained above, the evidence establishes that this was a fraudulent return.  Fuse Chicken does not dispute that the specific product unit the customer received from Amazon (and apparently kept, while sending Fuse Chicken some other product) was sourced *from Fuse Chicken*.  *Supra* 16-17.

### 3.    Fuse Chicken cannot prove any counterfeiting.

Fuse Chicken does not directly respond to Amazon's argument that it cannot prove any counterfeiting under the Lanham Act, thereby waiving any opposition.  *See* Mot. 30-31; Opp. 31-37; *Justice*, 2009 WL 3413914, at *2.  Instead, it refers to purported "██████████"

---

[18] In the same footnote, Fuse Chicken contends that Amazon's cases apply only to instances where an allegedly infringing product is sold in physical stores alongside the trademark holder's product.  But none of the cases Amazon cited for the proposition that there can be no likelihood of confusion when the allegedly infringing product's source is clearly displayed indicate the products were sold together in retail outlets.  *See, e.g.*, *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 517 (6th Cir. 2013) (addressing Internet sales).

surmised by its CEO.  Opp. 12 (emphasis added).  But to prove counterfeiting, Fuse Chicken must adduce evidence that these products were *actually* counterfeit, and it has no evidence to substantiate its claim.  The only allegedly infringing product Fuse Chicken has ever identified is the Cable Data Coil Brace, which Fuse Chicken conceded is not a "counterfeit": "the Cable Data product and packaging does not purport to be Fuse Chicken product and the packaging is completely different."  Dkt. 1-1 at 5; *see Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp., Inc.*, 486 F. Supp. 2d 286, 290-92 (S.D.N.Y. 2007) (granting summary judgment to defendant on counterfeiting claim based on differences in products' packaging).[19]

Though Fuse Chicken claims to identify evidence of products purchased "from Amazon" that bear Fuse Chicken trademarks, *see* Opp. 14, Fuse Chicken does not and cannot dispute that none of those products were sold on Amazon.com, the U.S. marketplace, *supra* 14-15.  Those products therefore are irrelevant to this case, which is limited to alleged infringement *on Amazon.com*.  Dkt. 87 at 5-6; *supra* 15-16.  Fuse Chicken's only other purported "evidence" of any purported counterfeit product is an inadmissible hearsay photo appended to a December 2016 Amazon.com customer review.  *Supra* 17.

Finally, the Lanham Act imposes counterfeiting liability only where the counterfeiting was intentional.  *See* 15 U.S.C. § 1117(b)).  Fuse Chicken neither argues nor adduces evidence of any knowing, intentional counterfeiting.  *See* Opp. 31-33 & n.18.

## V.  FUSE CHICKEN CANNOT ESTABLISH THAT AMAZON CAUSED ITS ALLEGED LOST PROFITS DAMAGES.

Fuse Chicken does not dispute that its damages causation theory depends on proof that (1) non-Fuse Chicken products were sold on Fuse Chicken Amazon.com product detail pages beginning November 1, 2016; (2) all negative Amazon.com ratings of Fuse Chicken products posted after that date *must have been* ratings of *non*-Fuse Chicken products; and (3) worldwide

---

[19] Fuse Chicken claims "many" other products sold on Amazon.com bore Fuse Chicken trademarks, Opp. 33, but the only products that might fit this description were sold on non-Amazon.com marketplaces or exist only as hearsay photos, *see supra* 14-17, and are therefore legally irrelevant.

sales of all Fuse Chicken products declined *because of* those lower Amazon.com ratings.  Mot. 31-32; Opp. 37-38.  Nor does Fuse Chicken dispute that .  This means that Fuse Chicken's causation theory requires proof that those international, offline shoppers relied primarily on English-language reviews posted on Amazon.com—the United States marketplace—when deciding not to purchase Fuse Chicken products.  *Id.*[20]

Lacking "direct evidence" to establish these factual predicates, Fuse Chicken contends that it may proceed to trial with unsupported speculation, under the guise of "circumstantial evidence."  Opp. 37.  But "speculation or conjecture do not discharge [Fuse Chicken's] . . . burden to demonstrate at trial a direct causal relation."  *Newcomb v. City of Troy*, 719 F. Supp. 1408, 1413 (E.D. Mich. 1989).  "[A] party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Olszonicki v. United States*, 867 F. Supp. 610, 615 (N.D. Ohio 1994).

### A.  Fuse Chicken Bears the Burden of Proving Damages Causation.

Fuse Chicken bears the burden of proving causation.  Mot. 31; *see Snugglers' Meadow Farms, LLC v. Land O'Lakes, Inc.*, 2006 WL 346396, at *5 (N.D. Ohio Feb. 13, 2006) (granting summary judgment on damages causation because plaintiffs failed to "satisf[y] their burden of proof").  Acknowledging its evidentiary deficiencies, Fuse Chicken attempts to flip this burden of proof by claiming that "[i]f anyone has access" to the necessary evidence, "it is Amazon."  Opp. 37.  Fuse Chicken had plentiful opportunity in 13 months of discovery to adduce evidence to satisfy its burden of proof, and it was not shy about seeking the Court's attention to compel further discovery to which it felt entitled.  Fuse Chicken cannot now contend that its failure to prove its case is Amazon's fault.  "[T]he plaintiff must present affirmative evidence in order to

---

[20] Fuse Chicken also lacks evidence to support its speculative claim that, but for any alleged infringement, it would have earned nearly ██████ in additional profits—or █████ of the profits collected during the company's entire history prior to November 2016.  *See* Dkt. 142.

defeat a properly supported motion for summary judgment . . . even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

**B.      Fuse Chicken Has Not Satisfied Its Burden to Identify Evidence That Any Review Posted on a Fuse Chicken Product Detail Page Was of a Non-Fuse Chicken Product Purchased on Amazon.com.**

The record is devoid of evidence that any specific Amazon.com review posted after November 1, 2016 was of a purportedly non-genuine Fuse Chicken product.  As anticipated by Amazon, Fuse Chicken identifies only *one* product review on Amazon.com that it contends was posted by a customer who allegedly purchased a non-genuine Fuse Chicken product on Amazon.com: the December 2016 review with the accompanying hearsay photograph ███████ ███████████████████████████████████████ Mot. 32; Opp. 37.  Fuse Chicken asserts that the photograph is "direct evidence" that the reviewer purchased the photographed product on Amazon.com.  Opp. 37.  This is not so.  "Direct evidence" would be testimony from the reviewer.  The photograph itself does not indicate where the product was purchased, and it is undisputed that ███████████████████████████████████████████████████ ███████████████████████████████████. Noggle Decl. ¶¶ 8-9.  Further, as detailed *supra* at 17, the review and its accompanying photograph are inadmissible to prove that the review is of a product purchased on Amazon.com, since any such implication is hearsay.

**C.      Fuse Chicken Fails to Identify Evidence That Negative Amazon.com Reviews of Non-Fuse Chicken Products Resulted in Lost Sales.**

Absent from the record is any admissible evidence that Fuse Chicken lost sales *because of* negative Amazon.com reviews of non-Fuse Chicken products.  Mot. 32-33.  Fuse Chicken identifies no evidence that any prospective customer declined to purchase Fuse Chicken products because of Amazon.com reviews.  To the contrary, Fuse Chicken's Chief Business Development Officer, James Siegl, testified ███████████████████████████████████████ ███████████████████████████."  Barnhart Decl. Ex. 3 (Siegl Tr.) 258:13-259:4.

Fuse Chicken resorts to contending that it "receiv[ed] cooler receptions from new

distributors and retailers" due to Amazon reviews—not that it *actually lost sales*. Opp. 24. This contention is legally irrelevant and it rests on textbook double hearsay, which "cannot create a genuine issue of material fact." *Charles*, 244 F. Supp. at 661. Specifically, Fuse Chicken relies on Mr. Siegl's testimony that ███████████████████████████████████

███████████████████████████████████████████████████████████████

██████" Barnhart Decl. Ex. 3 (Siegl Tr.) 259:11-15.

Fuse Chicken claims that "[a] reasonable jury could find that FC lost profits from sales it would have received but for Amazon's infringement" based on what it characterizes as "circumstantial evidence." Opp. 37. This "circumstantial evidence" is composed entirely of the unsubstantiated claims of its CEO, Jon Fawcett, and its reviews expert, Dr. Ghose: that (1) in late 2016, what Mr. Fawcett believes are ██████████" began listing on Fuse Chicken product detail pages on Amazon.com; (2) during that same time, there was an increase in negative Amazon.com reviews of certain of its products; and (3) around that same time, Fuse Chicken purportedly experienced a decline in sales. *Id.* As discussed below, Fuse Chicken's unsubstantiated claims cannot go to trial.

*First*, as detailed *supra* at 17-18, Mr. Fawcett's purported identification of "██████ ██████ is wholly speculative. *Second*, the "mere temporal sequence" of the "█████" sales, the purported decline in Amazon.com ratings, and Fuse Chicken's sales not reaching the levels it aspired to, "does not establish cause and effect." *Ashland Oil & Refining Co. v. Kenny Constr. Co.*, 395 F.2d 683, 684 (6th Cir. 1968) (affirming that causal relationship between defendant's operations and damage to plaintiff's equipment could not be established by "circumstantial evidence" of "timing of the sequence of events in this case"). Fuse Chicken does not identify any evidence, aside from "mere temporal sequence," to link any alleged infringement by Amazon to Fuse Chicken's claimed ██████ in lost profits. *See* Barnhart Decl. Ex. 8 (Ghose Tr.) 58:7-13; Mot. 31-34. *Third*, Fuse Chicken does not dispute that many customers posted negative reviews of *genuine* Fuse Chicken products, both before and after November 2016. Mot. 33. Fuse Chicken's damages causation theory does not control for the impact of any such

"genuine" negative reviews on consumer purchasing behavior, and so fails on this basis as well.

### D. Fuse Chicken Has Not Satisfied Its Burden to Identify Evidence That Fuse Chicken Lost *International* Sales Because of Amazon.com Reviews.

Fuse Chicken does not dispute that the bulk of its claimed lost profits derive from sales Fuse Chicken contends it would have made to *international* customers shopping on websites *other than* Amazon.com or in brick-and-mortar stores.  Mot. 34.  Fuse Chicken's damages causation theory assumes that these international customers necessarily read and rely on reviews posted in English on Amazon.com when deciding whether to purchase products.  *Id.*  Yet Fuse Chicken offers no evidence to support this critical assumption.

Fuse Chicken's Opposition confirms that the sole basis for its assumption that Fuse Chicken lost international sales because of Amazon.com reviews is the unsupported and equivocal opinion of its expert, Dr. Ghose, that ██████████████████████████████ ███████████████████ Dkt. 99 (Ghose Exp. Rpt.) ¶ 53 (emphasis added).  Opp. 38.  Fuse Chicken's claim that this opinion "is supported by overwhelming evidence" is demonstrably wrong: Dr. Ghose does not cite *any* studies to support his opinion, and *none* of the studies referenced anywhere in Dr. Ghose's report is relevant to whether consumers outside of the United States rely on Amazon.com reviews (or any other reviews left on websites in countries other than their own) when making purchasing decisions.  *See* Dkts. 125-1 at 6-9, 136 at 5-8.

Fuse Chicken retreats to arguing in the negative: that "██████████████████████████ ███████████████████████████████████████."  Opp. 38.  Were this case to proceed to trial, Fuse Chicken would ostensibly argue that, because the works cited do not expressly foreclose the possibility that non-U.S., offline consumers consult Amazon.com reviews—because those studies do not touch on that topic *at all*—such studies may be presented as evidence that non-U.S., offline consumers *do* consult and rely on Amazon.com reviews when making purchases.  This is sophistry, not evidence, and cannot create a dispute of material fact.

Fuse Chicken also points to Dr. Ghose's opinion that a causal connection between Amazon.com reviews and international sales exists merely because some international Amazon

marketplaces "███████████████████████████████████████  Dkt. 99

(Ghose Exp. Rpt.) ¶ 53.  That a consumer shopping in a physical store in India *could* navigate to

Fuse Chicken product detail pages on Amazon.in, *could* scroll to the bottom of those pages,

*could* click on a link to view reviews posted on Amazon.com, and *could* rely on those reviews

when making her purchase decision, is not evidence that this speculative chain of events *actually*

occurred.  Nor does Fuse Chicken's observation that "██████████████████████████████

██████," Opp. 38, transform Dr. Ghose's conjecture into evidence.

        Finally, it is not Amazon's burden to "███████████████████████████████

████████████████████████████████."  Opp. 38; *Mich. Prot. & Advocacy Serv.,*

*Inc.*, 18 F.3d 337, 341 (6th Cir. 1994) ("The moving party need not support its motion with

evidence disproving the non-moving party's claim[.]").  *Fuse Chicken* has the burden to prove

that *Amazon.com* reviews influence purchasing decisions of consumers shopping in *other*

countries and in *other* marketplaces, online and offline.  Fuse Chicken cannot meet that burden.

## <u>CONCLUSION</u>

        The Court should grant summary judgment in Amazon's favor on each of Fuse Chicken's

claims and on Fuse Chicken's prayer for actual damages.


DATED: March 15, 2019                          */s/ Clara J. Shin*
                                               _____
                                               Clara J. Shin (admitted *pro hac vice*)
                                               Nathan E. Shafroth (admitted *pro hac vice*)
                                               Lindsey Barnhart (admitted *pro hac vice*)
                                               David S. Watnick (admitted *pro hac vice*)
                                               COVINGTON & BURLING, LLP

                                               Roger M. Synenberg (#32517)
                                               Clare C. Moran (#81134)
                                               SYNENBERG, COLETTA & MORAN, LLC

                                               *Attorneys for Defendant Amazon.com, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that Amazon.com, Inc.'s Memorandum of Points and Authorities complies with the applicable page limitations specified by Civil Local Rule 7.1(f).  Dkt. 22 at 1 (designating case complex).


*/s/ Clara J. Shin*

A

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2019, a copy of the foregoing Amazon.com, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment, and accompanying declarations and exhibits, was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Clara J. Shin*