# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| FUSE CHICKEN, LLC, | ) Case No. 5:17-cv-01538-SL |
| | ) |
| Plaintiff, | ) Hon. Sara Lioi |
| v. | ) Hon. Kathleen B. Burke |
| | ) |
| AMAZON.COM, INC. | ) **AMAZON.COM, INC.'S REPLY IN** |
| and DOES 1–10, | ) **SUPPORT OF MOTION TO EXCLUDE** |
| | ) **PLAINTIFF'S EXPERT DANIEL C.K.** |
| Defendant(s). | ) **CHOW** |
| | ) |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I. MR. CHOW'S OPINIONS ARE IRRELEVANT TO FUSE CHICKEN'S CLAIMS. ............................................................................................................. 2

    A. Mr. Chow's Generalized Observations About Counterfeiting in China Are Irrelevant to Fuse Chicken's Claims. ............................................. 2

    B. Mr. Chow's Opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Is Irrelevant to Fuse Chicken's Claims. ............................................................. 3

    C. Mr. Chow's Opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" is Irrelevant to Fuse Chicken's Claims. ................................................................... 4

    D. Fuse Chicken's Opposition Improperly Attempts to Supplement Mr. Chow's Report With Attorney Argument About Opinions Absent from His Report. ............................................................................................. 5

        1. Mr. Chow offered no opinions on whether any reviews relate to non-Fuse Chicken product. ................................................................. 5

        2. Mr. Chow offered no opinions on the extent to which Fuse Chicken sales on Amazon.com were of non-Fuse Chicken products. ................................................................................................ 5

        3. Mr. Chow offered no opinions on whether Amazon committed willful or contributory infringement. ........................................... 6

II. Mr. Chow Cannot Reliably Opine on Amazon's Practices, or on the Source or Authenticity of Any Products. ............................................................................ 7

    A. Fuse Chicken Fails to Rehabilitate Mr. Chow's Baseless Assertions About Amazon's Purported "▮▮▮" for Chinese Sellers. ............................. 7

    B. Mr. Chow Lacks Reliable Bases for His Assertions About ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. .................................................. 8

        1. Fuse Chicken cannot rescue Mr. Chow's hearsay-based assertions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ....................... 8

        2. Mr. Chow cannot reliably assert that any seller is based in China. ............ 9

    C.      Mr. Chow Is Not Qualified to Opine on Infringement on Amazon.com, to Identify Amazon.com Customer Reviews Relating to Infringing Products, or to Identify the Source of Any Product Sold on Amazon.com. .......................... 11

III.    Mr. Chow's Actual and Purported Opinions Are Not Proper Subjects of Expert Testimony. ................................................................................................................ 12

IV.    Mr. Chow's Opinions Are Unfairly Prejudicial Because They Encourage the Jury to Embrace Cultural Stereotypes and Punish Amazon for China's Alleged Misdeeds. ................................................................................................................... 13

CONCLUSION ................................................................................................................ 15

**INTRODUCTION**

Daniel C.K. Chow's expert report is legally and factually disconnected from the questions relevant to Fuse Chicken's claims: whether any non-Fuse Chicken product was sold on Amazon.com as a Fuse Chicken product, and whether consumers would likely confuse any such non-Fuse Chicken product for the genuine article.  In opposing Amazon's motion to exclude Mr. Chow's opinions, Fuse Chicken acknowledges that it lacks direct evidence to prove an affirmative answer to either question, states it will instead rely on "circumstantial evidence," and purports to offer Mr. Chow to show that "(1) fake, inferior Fuse Chicken products were created in or about the Fall of 2016 and (2) were sold on and by Amazon." Opp. 3.[1]  But Mr. Chow's report does not offer admissible opinions on *either* of those two points.

As Amazon's Motion shows, Mr. Chow's "opinions" consist of irrelevant and unreliable generalizations about "███████████" and speculation that "█████████████████████████████████████████████████████████████." *See* Mot. 5-14.  Mr. Chow also regurgitates two unverified news articles and presents them as establishing a foundational fact: that █████████████████████████████████████████████████████████████████████████████████████████████████████." Dkt. 100 (Chow Report) ¶ 14; *see* Mot. 10-11.  In so doing, Mr. Chow ignores the uncontroverted testimony of Amazon witnesses that they are unaware of any such company "███." *See* Mot. 10-11.  None of these abstract musings are relevant to the specific claims at issue in this case.

To distract from these fatal defects, Fuse Chicken suggests that Mr. Chow will offer new opinions nowhere found in his report.  For example, Fuse Chicken contends that Mr. Chow's testimony will aid the jury in determining whether "the likely source[s] of the negative Amazon reviews were . . . fake Fuse Chicken products," Opp. 10, even though Mr. Chow's report is silent on this topic, *see* Dkt. 100 (Chow Report) ¶¶ 1-14.  Fuse Chicken also claims that Mr. Chow will

---

[1] Amazon's Motion to Exclude Plaintiff's Expert Daniel C.K. Chow ("Mot.") was filed as Docket Entry 145, and Fuse Chicken's Opposition ("Opp.") was filed as Docket Entry 177.  All page citations for those and other filings refer to file-stamped page numbers.

testify about the "███████████████████████████████████████████████

████████████████████," Opp. 8, though he offered no such opinions in his report. And

Fuse Chicken claims that Mr. Chow's "████████████████████████████████████████

██████████████████████████████████████████," Opp.

11, ignoring the absence of any such opinion in his report, *see* Dkt. 100 (Chow Report) ¶¶ 1-14,

and Mr. Chow's deposition testimony that he was "*not* offering an opinion that Amazon

committed willful infringement," Watnick Reply Decl. Ex. 1 (Chow Dep. Tr.) 61:13-16.[2]

Tellingly, Fuse Chicken's Opposition barely cites to either Mr. Chow's report or his deposition

testimony, because the record offers no support for its efforts to supplement Mr. Chow's

irrelevant and unreliable "opinions" with attorney argument.

Because Fuse Chicken cannot repair the fundamental defects in Mr. Chow's opinions,

Amazon respectfully requests that the Court grant Amazon's Motion and preclude Mr. Chow

from testifying at trial, or at any other stage of these proceedings. *See Tornabene v. Tuscarawas

Cty. Health Dep't*, 2017 WL 4246701, at *1 (N.D. Ohio Sept. 25, 2017) (Lioi, J.) (concurrently

granting defendants' summary judgment and Daubert motions).

## ARGUMENT

### I.      MR. CHOW'S OPINIONS ARE IRRELEVANT TO FUSE CHICKEN'S CLAIMS.

#### A.     Mr. Chow's Generalized Observations About Counterfeiting in China Are Irrelevant to Fuse Chicken's Claims.

The overwhelming majority of Mr. Chow's 18-paragraph report relates solely to his

curriculum vitae and generalized information about "████████████████," untethered from

Amazon or Fuse Chicken. *See* Dkt. 100 (Chow Report) ¶¶ 1-8, 11-14. As explained in

Amazon's Motion, this information is irrelevant to the questions the jury must decide: whether

---

[2] "Watnick Reply Decl." refers to the Declaration of David Watnick in Support of Amazon.com, Inc.'s Reply Memorandum of Points and Authorities in Support of Motion to Exclude Plaintiff's Expert Daniel C.K. Chow.

any non-Fuse Chicken product was sold as a Fuse Chicken product on Amazon.com, and whether any such non-Fuse Chicken product was likely to confuse consumers. Mot. 6-8.

Fuse Chicken's response is to deny what Mr. Chow himself admitted—that the goal of his report is to put "the case in the larger context, and the larger context of the case involves understanding counterfeiting in China," Dkt. 145-2 (Chow Dep. Tr.) 278:23-279:2—and incorrectly claim that Mr. Chow's report instead "███████████████████████ ███████████████████████████████████." Opp. 9. But even if Mr. Chow could offer *some* relevant, reliable testimony on the "████" of counterfeits and Amazon's alleged facilitation (which he cannot, *see infra* 3-5, 7-11), his "context" opinions about "counterfeiting in China"—*i.e.*, paragraphs 1-8, and 11-14—would still be irrelevant. Fuse Chicken does not argue to the contrary. *See* Opp. 9; *Justice v. Atchison*, 2009 WL 3413914, at *2 (E.D. Ky. Oct. 20, 2009) (failure to respond to an argument waives opposition).

### B. Mr. Chow's Opinion that "███████████████████████████ ███████████████████████████████████████████████████" Is Irrelevant to Fuse Chicken's Claims.

As demonstrated in Amazon's Motion, whether or not Amazon's purported "policy of allowing Chinese merchants to sell directly to U.S. consumers *would be* highly attractive to counterfeiters in China" is speculative at best and irrelevant to Fuse Chicken's claims. Dkt. 100 (Chow Report) ¶ 14 (emphasis added); Mot. 8, 10-11. It is also predicated on an unsubstantiated factual assertion that Amazon is making a "████" for Chinese sellers in the first place. *See* Mot. 10-11; *infra* 7-8.

Fuse Chicken's only response is that this opinion may be "relevant to whether and how fake Fuse Chicken products ended up being sold on and by Amazon." Opp. 8. But *how* any alleged infringing product came to be sold on Amazon.com is not relevant to proving infringement, which depends on whether non-Fuse Chicken products were sold as Fuse Chicken products on Amazon.com, and whether consumers would likely confuse any non-Fuse Chicken

3

products for Fuse Chicken products. Mot. 16-17; Opp. 10. And Mr. Chow offers no opinion on *whether* any infringement occurred, much less that Amazon's purported "███" policy led to any infringement. The only infringement on Amazon.com that Mr. Chow even discusses in his report is the infringement allegedly committed by ███ and ███, and that discussion is based exclusively on what Mr. Chow was told by counsel—not, for instance, on any opinion *by Mr. Chow* that ███ must have been infringing because they were (purportedly) Chinese sellers who would have been attracted by Amazon's purported "███." *See* Dkt. 100 (Chow Report) ¶ 10; Dkt. 145-2 (Chow Dep. Tr.) 161:19-163:13, 166:6-15.

C. **Mr. Chow's Opinion that ███ is Irrelevant to Fuse Chicken's Claims.**

As Amazon's Motion explained, *where* any allegedly infringing products originated from is immaterial to *whether* any infringement actually occurred. *See* Mot. 8-9. Nonetheless, Fuse Chicken claims that it is offering Mr. Chow's opinion as to the "likely source" of counterfeit and infringing Fuse Chicken products—*i.e.*, China—to prove that non-Fuse Chicken products were sold as Fuse Chicken products on Amazon.com, and that consumers would likely confuse those products for the genuine article. Opp. 10. Fuse Chicken cites no legal authority providing that liability for trademark infringement depends on identifying the country from which the infringing product originated. *See id.* at 8-10. Nor could it; to prove trademark infringement, Fuse Chicken must prove that Amazon "used the mark in commerce" (*i.e.* sold non-Fuse Chicken product using Fuse Chicken trademarks) and that "the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Neither of these elements requires consideration of *where* the product came from. *See id.*; *cf. Henry v. Allstate Property & Casualty Ins. Co.*, 2009 WL 10665203, *1 (W.D. Tenn. Dec. 2, 2009) (excluding expert opinion regarding cause of house fire at issue, because cause was irrelevant to determining defendant insurer's coverage obligations). Fuse Chicken asserts no other relevance

4

for this or Mr. Chow's other opinions, which are all therefore inadmissible under the Federal Rules of Evidence.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

### D. Fuse Chicken's Opposition Improperly Attempts to Supplement Mr. Chow's Report With Attorney Argument About Opinions Absent from His Report.

Unable to articulate the relevance of the opinions and assertions in Mr. Chow's report, Fuse Chicken advances new theories of "relevance" predicated on "opinions" found nowhere in Mr. Chow's report.  Fuse Chicken cannot supplement or salvage Mr. Chow's report with lawyer argument.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (an expert report must contain "all opinions the witness will express and the basis and reasons for them").

#### 1. Mr. Chow offered no opinions on whether any reviews relate to non-Fuse Chicken product.

Fuse Chicken contends that Mr. Chow's testimony will aid the jury in determining whether "the likely source[s] of the negative Amazon reviews were . . . fake Fuse Chicken products."  Opp. 10; *see also id.* at 3-4, 9-11, 17.  But nowhere in his report or deposition testimony did Mr. Chow opine on whether *any* Amazon.com reviews relate to non-Fuse Chicken products.  *See* Dkt. 100 (Chow Report) ¶¶ 1-14.[3]  Thus, Mr. Chow may not testify on this subject.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 724, 759-60 (N.D. Ohio 2014) (expert may not testify on "a wholly new, previously unexpressed opinion") (citation omitted).

#### 2. Mr. Chow offered no opinions on the extent to which Fuse Chicken sales on Amazon.com were of non-Fuse Chicken products.

Fuse Chicken also asserts that Mr. Chow may testify about the "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."  Opp. 8.  But in response to a deposition question from *Fuse Chicken's* outside counsel, Mr. Chow

---

[3] Separately, Fuse Chicken is wrong to assert that Amazon can—but has refused to—link Amazon.com reviews with specific products or sales.  *See* Opp. 11.  As Amazon witnesses have explained, Amazon.com reviews cannot be tied to specific sales or products because Amazon has no means of verifying the product unit the reviewing consumer was actually evaluating in his or her review.  *See* Dkt. 121 (Noggle Decl.) ¶¶ 8-9.

admitted that he was never asked "to quantify the amount of counterfeiting of Fuse Chicken products." Watnick Reply Decl. Ex. 1 (Chow Dep. Tr.) 277:12-18.  Because no such opinions appear in Mr. Chow's report, he may not offer them now.  *See* Dkt. 100 (Chow Report) ¶¶ 1-14; *In re Whirlpool*, 45 F. Supp. 3d at 759.

The "███████████████████████████████████," Opp. 8, is irrelevant to whether any counterfeit *Fuse Chicken* product was sold on Amazon.com.  Fuse Chicken's apparent intention to offer testimony from Mr. Chow on this irrelevant issue further confirms its unfairly prejudicial plan to put Amazon.com on trial for matters completely unrelated to this case.  *See infra* 13-15; Mot. 16-17.

### 3.  Mr. Chow offered no opinions on whether Amazon committed willful or contributory infringement.

Despite Mr. Chow's affirmation at his deposition that he was "not offering an opinion that Amazon committed willful infringement," Watnick Reply Decl. Ex. 1 (Chow Dep. Tr.) 61:13-16, Fuse Chicken now claims that Mr. Chow's "████████████████████████████████████████████████████████████████████████████████████████." Opp. 11.  This argument fails because Mr. Chow has not rendered any opinion relevant to whether Amazon is liable for willful or contributory infringement.

To establish willful infringement, Fuse Chicken must prove Amazon "had knowledge that its actions constitute[d] an infringement." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (citation omitted).  But Mr. Chow does not opine on Amazon's knowledge of *anything*, and he would have no foundation to do so.  *See* Dkt. 100 (Chow Report) ¶¶ 1-14.  Indeed, at his deposition, Mr. Chow testified that he had not "look[ed] into" and had not "really thought about" "whether Amazon had knowledge that a certain activity might have been trademark infringing." Watnick Reply Decl. Ex. 1 (Chow Dep. Tr.) at 202:11-17.

To establish contributory infringement, Fuse Chicken must prove Amazon allowed particular sellers that it knew or should have known were engaging in infringement to continue doing so.  *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503-04 (6th Cir. 2013); *Tiffany (NJ) Inc.*

6

*v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). But Mr. Chow does not identify any sellers Amazon knew or should have known were infringing, or give any reason Amazon should have known of any seller's infringement. *See* Dkt. 100 (Chow Report) ¶¶ 1-14.

Having disclosed no opinions concerning Amazon's knowledge of any infringement, Mr. Chow may not testify on that topic; accordingly, his opinions are irrelevant to proving willful or contributory infringement. *See In re Whirlpool*, 45 F. Supp. 3d at 759.

## II. MR. CHOW CANNOT RELIABLY OPINE ON AMAZON'S PRACTICES, OR ON THE SOURCE OR AUTHENTICITY OF ANY PRODUCTS.

### A. Fuse Chicken Fails to Rehabilitate Mr. Chow's Baseless Assertions About Amazon's Purported "███" for Chinese Sellers.

Fuse Chicken identifies no basis for Mr. Chow's factual assertion that, "███  ███" Opp. 12-15; *see* Mot. 10-11 (explaining that Mr. Chow improperly adopted hearsay news articles in forming this "opinion").

Instead, Fuse Chicken argues generally that Mr. Chow was permitted to rely on news articles in forming his opinions because such articles are evidence "of a type reasonably relied upon by experts in the particular field." Opp. 12 (citing Fed. R. Evid. 703 cmte. note). While Mr. Chow "may *base an opinion* on facts . . . [he] has been made aware of," Fed. R. Evid. 703 (emphasis added), "he may not simply transmit . . . hearsay to the jury to prove the truth of the matter asserted." *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 678 (S.D.N.Y. 2011) (citation omitted); *see* Mot. 10. Yet that is all he seeks to do. Mr. Chow does not offer an opinion that Amazon made a "███" for Chinese merchants on the basis of his review of any evidence; he simply asserts this supposed "███" as a *fact*, assuming the truth of the news articles he read. *See* Mot. 10-11; Dkt. 100 (Chow Report) ¶ 14; Dkt. 145-2 (Chow Dep. Tr.) 167:25- 172:5.

Fuse Chicken relies on *Aloe Vera of America Inc. v. United States* to defend Mr. Chow's unstudied adoption of hearsay news stories in his expert report, Opp. 12-13, but that case is

7

inapposite. There, the "expert in Japanese media [c]ould reasonably rely upon the contents of news reports and discussions with journalists *in opining on topics relating to Japanese media*," such as "information exchanges between Japanese government organizations and press clubs." 2014 WL 3072981, at *8, 11 n.4 (D. Ariz. July 7, 2014). Mr. Chow is not analyzing hearsay news articles to form opinions about what those articles indicate with respect to the news media that wrote them; he is uncritically adopting factual assertions from those articles to testify about Amazon's purported business practices. *See* Dkt. 145-2 (Chow Dep. Tr.) 167:25- 172:5. The rules of evidence do not permit him to do so. *See Graco Fishing*, 815 F. Supp. 2d at 678.

    **B.    Mr. Chow Lacks Reliable Bases for His Assertions About ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.**

As detailed in Amazon's Motion, Mr. Chow has no reliable basis—and Fuse Chicken cannot identify one—to assert that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. 11-13; Opp. 13-15.

    **1.    Fuse Chicken cannot rescue Mr. Chow's hearsay-based assertions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ infringed on Amazon.com.**

Mr. Chow expressly testified that his assertions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were based solely on representations made to him by Fuse Chicken's outside counsel. *See* Dkt. 145-2 (Chow Dep. Tr.) 161:19-163:13, 166:6-15. Fuse Chicken does not dispute that Mr. Chow cannot adopt and transmit this hearsay to the jury. *See* Mot. 11-12; Opp. 13-14; *Graco Fishing*, 815 F. Supp. 2d at 678. Instead, Fuse Chicken invents new bases for Mr. Chow's assertions—bases Mr. Chow never mentioned in his report or at his deposition.

Specifically, Fuse Chicken claims that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Opp. 13-14. But Mr. Chow's report says nothing about any "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," his consideration of

8

other "▬▬▬▬▬," or any conclusion that any seller was "▬▬▬▬" to be a counterfeiter. Dkt. 100 (Chow Report) ¶ 10. And when asked at his deposition for his basis for opining that ▬▬▬▬▬ were "▬▬▬▬▬▬▬▬▬▬▬▬," the *sole* basis Mr. Chow gave was that "▬▬▬▬▬▬" told him that was the case:



Dkt. 145-2 (Chow Dep. Tr.) 161:19-163:13, 166:6-15. Fuse Chicken cannot rescue Mr. Chow's unsupported opinions by creating new bases for those opinions in an opposition brief. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them").

Amazon does not, as Fuse Chicken claims, argue that Mr. Chow must "conduct his investigation in a particular manner." Opp. 15; *see* Mot. 11-13. Amazon moves to exclude Mr. Chow's opinion because he failed to perform *any investigation*, Dkt. 100 (Chow Report) ¶ 10; Dkt. 145-2 (Chow Dep. Tr.) 161:19-163:13, 166:6-15. Blind adoption of hearsay statements by counsel does not amount to a reliable opinion. *See Graco Fishing*, 815 F. Supp. 2d at 678.

2. **Mr. Chow cannot reliably assert that any seller is based in China.**

In addition to the irrelevance of a seller's location, *see supra* 4-5, Fuse Chicken cannot identify a reliable basis for Mr. Chow's assertion that ▬▬▬▬▬▬▬ are based in

9

China, *see* Dkt. 100 (Chow Report) ¶ 10. In an attorney declaration filed in support of Fuse Chicken's Opposition, Fuse Chicken's counsel describes searching ▇▇▇▇▇ name via Chinese characters and reaching a webpage that was never disclosed by Mr. Chow or produced in connection with his report. *See* Opp. 14; Dkt. 177-1 (Pronley Decl.) ¶ 5; Dkt. 177-4 (Pronley Decl. Ex. 3). Fuse Chicken is not permitted to bolster its expert's conclusions with an attorney investigation. *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert *has been made aware of or personally observed*.") (emphasis added); Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) (expert's report must contain "the basis and reasons" for the expert's opinions, and "the facts or data considered by the witness in forming them"); *see also* Amazon's Motion to Strike. Mr. Chow has never described running the search Fuse Chicken's counsel ran—either in his report or in his deposition—and there is no indication in the record that he has visited the webpage first disclosed in the attorney declaration. *See* Dkt. 100 (Chow Report) ¶ 10.

As to Amazon.com seller ▇▇▇▇, Fuse Chicken asserts that company is synonymous with the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *See* Opp. 14-15. But Mr. Chow never made any such claim, and Fuse Chicken is simply wrong. There is no seller by this name in Amazon's records. *See* Dkt. 164-10 (Rand Decl. Ex. 11). The legal name associated with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," *id.* (emphasis added), but Mr. Chow does not appear to have investigated any seller by that name, and has not asserted (let alone reliably determined) that it is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 100 (Chow Report) ¶ 10; Dkt. 145-2 (Chow Dep. Tr.) 154:14-155:16.

Finally, Fuse Chicken does not dispute that ▇▇▇▇▇▇▇▇▇▇ simply was *not a seller* of Fuse Chicken products on Amazon.com. *See* Opp. 15. As a result, there is no question that neither this seller nor its geographic location has any connection whatsoever to Fuse Chicken's claims of infringement on Amazon.com.

### C. Mr. Chow Is Not Qualified to Opine on Infringement on Amazon.com, to Identify Amazon.com Customer Reviews Relating to Infringing Products, or to Identify the Source of Any Product Sold on Amazon.com.

Mr. Chow's testimony is not relevant to how many non-Fuse Chicken products (if any) were sold on Amazon.com, or to which Amazon.com customer reviews (if any) relate to non-Fuse Chicken products. *See supra* 5-6. He also cannot reliably opine on those subjects because any such testimony would not be "based on sufficient facts or data" or "the product of reliable principles and methods." Fed. R. Evid. 702(b)-(c). Mr. Chow has not offered *any* opinions on those subjects, *see supra* 5-6; Dkt. 100 (Chow Report) ¶¶ 1-14, and so he could not have applied a "reasoning or methodology . . . [that] is scientifically valid," *Daubert*, 509 U.S. at 593-94; *see also* Dkt. 100 (Chow Report) ¶¶ 1-14 (describing no reasoning or methodology from which Mr. Chow could opine on these subjects).

As explained in Amazon's Motion, nor is Mr. Chow qualified to opine as to the source or origin of any allegedly infringing products (were that subject even relevant, *see supra* 4-5). *See* Mot. 13-14. Mr. Chow never describes any personal experience performing such an investigation, or any credentials for doing so; to the contrary, he explicitly states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Dkt. 100 (Chow Report) ¶ 6. Neither Mr. Chow nor Fuse Chicken explains how Mr. Chow is suddenly qualified to identify counterfeiters on his own, and Fuse Chicken's vague gloss on Mr. Chow's background—that he "work[ed] with people to identify the sources of counterfeiters," Opp. 6—is irreconcilable with Mr. Chow's own statement. Likewise, Fuse Chicken's lengthy emphasis on Mr. Chow's resume, including his law degree and academic chair, does not include any possible qualification for sourcing counterfeit products. *See id*. at 5-6. Because there is no indication that Mr. Chow can rely "on his own skills, education, or experience" to determine the source of any counterfeit products, he cannot opine on that subject. *See Huffman v. Electrolux Home Prods., Inc.*, 129 F. Supp. 3d 529, 540 (N.D. Ohio 2015).

### III. MR. CHOW'S ACTUAL AND PURPORTED OPINIONS ARE NOT PROPER SUBJECTS OF EXPERT TESTIMONY.

Much of Mr. Chow's report, and many of the new "opinions" Fuse Chicken would now have Mr. Chow offer, are not appropriate subjects for expert testimony because they are simple factual assertions not dependent on any "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). As Amazon explained in its Motion, Mr. Chow's assertions that Amazon made a "█████████████████████████████████████", and about the alleged geographic location of certain sellers and manufacturers, cannot constitute expert testimony for this reason. *See* Mot. 14 (citing *Wood v. Montana Dep't of Revenue*, 2011 WL 4348301, at *2 (D. Mont. Sept. 16, 2011)); *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) ("Under *Daubert* and Rule 702, expert testimony should be excluded if the witness is not actually applying expert methodology."). Fuse Chicken attempts no responsive argument, waiving any opposition to this objection. *See* Opp. 4-17; *Justice*, 2009 WL 3413914, at *2.

The same result would also apply to of any of the undisclosed "opinions" Fuse Chicken now suggests it will attempt to elicit from Mr. Chow at trial. *See supra* 5-7. As Mr. Chow has not formed *any* opinions on these issues, *see id.*, he necessarily has not formed any opinions on the basis of "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). Nor is it conceivable how, in any event, such straightforward percipient facts like the number of non-Fuse Chicken units allegedly sold as Fuse Chicken products on Amazon.com, or whether a particular seller was selling non-Fuse Chicken products, would *ever* be the subjects of expert opinion requiring "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a); *see In re Connolly N. Am., LLC*, 398 B.R. 564, 576 (Bankr. E.D. Mich. 2008) (expert witness's application of "very simple math" to "assumed" facts was inadmissible because "addition and division does not qualify as 'scientific, technical, or other specialized knowledge.'"); *see also Dukagjini*, 326 F.3d at 54 ("the aura of special reliability and trustworthiness surrounding expert testimony . . . creates a risk of prejudice . . . [because] the witness attains unmerited credibility when testifying about factual matters").

**IV. MR. CHOW'S OPINIONS ARE UNFAIRLY PREJUDICIAL BECAUSE THEY ENCOURAGE THE JURY TO EMBRACE CULTURAL STEREOTYPES AND PUNISH AMAZON FOR CHINA'S ALLEGED MISDEEDS.**

Fuse Chicken's Opposition makes minimal effort to contest the unfairly prejudicial nature of Mr. Chow's testimony. Contrary to Fuse Chicken's characterization, Amazon does not argue that Mr. Chow's testimony is unfairly prejudicial because it "goes against" Amazon's case. Opp. 16. Rather, Mr. Chow's testimony is unfairly prejudicial because it will associate negative generalizations about Chinese culture and business practices with Amazon's alleged conduct in this case, without any basis for doing so. Mot. 14-17; *see, e.g.*, Dkt. 100 (Chow Report) ¶¶ 7, 9, 12, 14. "[G]eneralized opinions about Chinese culture and business practice have no link to the parties involved in this case . . . [and c]ourts repeatedly exclude this type of testimony because the risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even xenophobia." *In re Heparin Prod. Liab. Litig.*, 2011 WL 1059660, at *11 (N.D. Ohio Mar. 21, 2011) (citation omitted).

Fuse Chicken claims that Mr. Chow's opinions do not "delve into Chinese culture generally so as to pander to xenophobia or cultural stereotypes," Opp. 16-17, but Mr. Chow's report demonstrates otherwise. *See* Mot. 14-15; *see, e.g.*, Dkt. 100 (Chow Report) ¶¶ 7 ("███████████████████████████████████████████████████████████████."), 12 ("███████████████████████████████████████████████████████████████"), 14 ("███████████████████████████████████████████████████████████████").

Fuse Chicken cannot credibly distinguish the numerous authorities Amazon offers on this point, *see* Mot. 15-16, and makes only the conclusory assertion that Mr. Chow's opinions are somehow permissible because he apparently speaks Mandarin and rests his opinions "on his experience working in China and with Chinese counterfeiters," Opp. 17. But a nearly identical description would apply to the excluded expert and opinion in *In re Heparin*, 2011 WL 1059660, at *9. There, the court excluded an expert who held two Master's degrees from the University of

13

Pennsylvania (one with a "concentration in Chinese business"), "lived and worked in China since 2002 and sp[oke] fluent Mandarin . . . [and was] the founder of . . . a Hong Kong registered consulting firm," through which he "act[ed] as a liaison between Chinese suppliers and United States buyers by negotiating prices, evaluating suppliers, visiting and inspecting factories, and arranging testing of source material by third-party laboratories." *Id.*  That expert was proposing to testify that sourcing products from China brought risks of counterfeit and contaminated product due to "the Chinese business environment," and that the defendant should have anticipated these risks in sourcing (allegedly defective) medicine from China. *Id.*  The court deemed such testimony unfairly prejudicial because of the "the risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even xenophobia." *Id.* at *11 (quoting *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1008 (9th Cir. 2001)).

     Mr. Chow is no different.  He proposes to invite the jury to conclude that Chinese sellers are counterfeiters; that Amazon created a "paradise for counterfeiters" by allegedly allowing Chinese sellers on Amazon.com; and that Amazon's purported association with Chinese sellers generally renders it liable for the specific alleged conduct in this case—even though there is no evidence of any Chinese sellers having sold infringing Fuse Chicken products on Amazon.com.  *See* Mot. 14-17.  Regardless of Mr. Chow's purported professional familiarity with counterfeiting in China generally, his proposed testimony is unfairly prejudicial in calling upon cultural and ethnic stereotypes as a basis for imputing liability to Amazon, just like the excluded expert in *In re Heparin*.

     *Hong v. City of St. Louis* and *Jinro Am. Inc.* equally support excluding Mr. Chow.  Those cases featured, respectively, an ethnically Chinese individual plaintiff and a South Korean corporate plaintiff, each unfairly prejudiced by the defendant's invitation to the jury to rely on ethnic and cultural stereotypes.  *See* 698 F. Supp. 180, 181-82 (E.D. Mo. 1988); 266 F.3d at 1009.  Mr. Chow's testimony risks a *double dose* of such unfair prejudice to Amazon—not merely by having the jury draw an adverse inference against Chinese sellers on the basis of

14

ethnic and cultural stereotypes, but by having the jury hold Amazon liable simply for (allegedly) *associating* with Chinese sellers, whom the jury is asked to *assume are counterfeiters*. See Mot. 15-17; *Jinro Am. Inc.*, 266 F.3d at 1008 (evidence creating "risk of racial or ethnic stereotyping . . . [and] guilt by association" was unfairly prejudicial). Crucially, there is an inseverable nexus between the apparent purpose of Mr. Chow's testimony (to have Amazon held liable for its association with Chinese sellers) and the unfairly prejudicial aspect of his proposed testimony (inviting an adverse inference against Amazon and certain sellers *because* those sellers may be based in China). *See* Mot. 15-17; *Jinro Am. Inc.*, 266 F.3d at 1008.

Fuse Chicken emphasizes that unfairly prejudicial testimony should be excluded only if its "probative value is *substantially* outweighed by a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403 (emphasis added); *see* Opp. 16. But this standard offers no consolation to Fuse Chicken, because Mr. Chow's opinions have *no* probative value; even if Fuse Chicken could prove, through Mr. Chow, that an Amazon.com seller was located in China, that fact would not make it more or less likely that Amazon was liable under any of the legal claims alleged by Fuse Chicken. *See supra* 4-5; *United States v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998) (district court erred in admitting unfairly prejudicial evidence that "had virtually no probative value").

## CONCLUSION

Amazon respectfully requests that the Court grant Amazon's motion, strike Mr. Chow's report in its entirety, and preclude Mr. Chow from presenting any opinion at trial or at any other stage of these proceedings.

| | |
|---|---|
| DATED: April 1, 2019 | */s/ Nathan E. Shafroth* |
| | Clara J. Shin (admitted *pro hac vice*) |
| | Nathan E. Shafroth (admitted *pro hac vice*) |
| | Lindsey Barnhart (admitted *pro hac vice*) |
| | David S. Watnick (admitted *pro hac vice*) |
| | COVINGTON & BURLING, LLP |
| | |
| | Roger M. Synenberg (#32517) |
| | Clare C. Moran (#81134) |
| | SYNENBERG, COLETTA & MORAN, LLC |
| | |
| | *Attorneys for Defendant Amazon.com, Inc.* |

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 1st day of April, 2019, a copy of the foregoing Amazon.com, Inc.'s Reply in Support of Motion to Exclude Plaintiff's Expert Daniel C.K. Chow, and accompanying declaration and exhibits, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                         */s/ Nathan E. Shafroth*