# Exhibit 1

HIGHLY CONFIDENTIAL

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE NORTHERN DISTRICT OF OHIO
3
4  FUSE CHICKEN, LLC,
5         Plaintiff,
6
7     vs.                 Case No. 5:17-cv-01538-SL
8
9  AMAZON.COM, INC.,
10        Defendant.
11 _____
12
13        ***HIGHLY CONFIDENTIAL***
14
15        Videotaped deposition of
16           DANIEL C.K. CHOW
17           December 20, 2018
18             9:13 a.m.
19             Taken at:
              Ulmer & Berne, LLP
20    65 East State Street, Suite 1100
              Columbus, Ohio
21
22  Kimberly A. Kaz,
23  RPR, Notary Public
24  Job No. 3173877
25  Pages 1 - 295

Page 1

HIGHLY CONFIDENTIAL

1           THE VIDEOGRAPHER:  We're on the
2    record at 9:13.  Today's date is the
3    December 20th, 2018.  This is the matter of
4    Fuse Chicken versus Amazon.com, Inc.  This
5    deposition is taking place in Columbus, Ohio.
6              Would counsel please identify
7    themselves for the record?
8              MR. WATNICK:  David Watnick of
9    Covington & Burling for Amazon.
10             MR. HALPER:  Rick Halper of McKool
11   Smith for the plaintiff.
12             THE VIDEOGRAPHER:  Court reporter,
13   please swear in the witness.
14             DANIEL C.K. CHOW, of lawful age,
15   called for examination, as provided by the
16   Federal Rules of Civil Procedure, being by me
17   first duly sworn, as hereinafter certified,
18   deposed and said as follows:
19            EXAMINATION OF DANIEL C.K. CHOW
20   BY MR. WATNICK:
21        Q.   Good morning.
22        A.   Good morning.
23        Q.   Can you please state your name for
24   the record?
25        A.   Daniel Chow.

HIGHLY CONFIDENTIAL

1   Vague.
2              THE WITNESS:  -- in this particular
3   case, Fuse Chicken had its manufacturing
4   facilities in China, and so I think that
5   particular fact leads me to conclude that for
6   Fuse Chicken, because its manufacturing --
7   legitimately manufacturing in China exposed
8   itself subject to the risk, that counterfeiters
9   in China would counterfeit its products.
10  That's not true of every product that's sold on
11  Amazon, as far as I know.
12         Q.   Is that true on every product sold
13  on Amazon, the authentic version of which is
14  manufactured in China?
15         A.   I wouldn't say every product, but I
16  would imagine that would be true with many of
17  those products, yeah.
18         Q.   You understand that Fuse Chicken
19  has what it considers to be examples of the
20  allegedly infringing product sold on
21  Amazon.com?
22         A.   Yes.
23         Q.   Is that right?
24         A.   Yes.
25         Q.   Does your opinion relate in any way

Page 60

HIGHLY CONFIDENTIAL

```
 1   to whether those products are or are not
 2   infringing?
 3              MR. HALPER:  Objection to form.
 4   Lacks foundation.  Vague.
 5              THE WITNESS:  The opinions that I
 6   gave right now, no.
 7        Q.    And the opinions in your report?
 8              MR. HALPER:  Objection.  Form.
 9   Lacks foundation.  Asked and answered.
10              THE WITNESS:  I'm not sure what
11   you're asking, but I would say in giving the
12   context for counterfeiting in China, no.
13        Q.    You're not offering an opinion that
14   Amazon committed willful infringement, are you?
15              MR. HALPER:  Objection.  Form.
16              THE WITNESS:  No.
17        Q.    What evidence have you seen that
18   the examples of infringing products Fuse
19   Chicken has in its possession were made in
20   China?
21        A.    Could you repeat the question,
22   please?
23        Q.    You've seen some example products
24   that Fuse Chicken says were sold on Amazon.com
25   that it alleges are infringing its intellectual
```

Page 61

HIGHLY CONFIDENTIAL

```
 1    property, right?
 2         A.    Yes.
 3         Q.    And what evidence have you seen
 4    that those examples were manufactured in China?
 5         A.    The examples I saw are cited in my
 6    report.  Those are the exhibits.
 7         Q.    Yeah.  Where in your report is
 8    that?
 9         A.    There are two exhibits.  One is the
10    one that we first -- that is the Footnote 5
11    that -- that I referred to before.  There's
12    Footnote 6, which has to deal with Ideal
13    Electronic Technology.  There was also the
14    Footnote 4, which is the exhibit dealing with
15    cable data.
16         Q.    What is cable data?
17         A.    Cable data is a product which is
18    made by a company in Shenzhen, China, which
19    copies the design of the Fuse Chicken product.
20         Q.    When you say "copies the design of
21    the Fuse Chicken product," what do you mean?
22         A.    Well, I think -- I think you could
23    take a look at the exhibit.  I think it would
24    be pretty clear if you took a look at the
25    exhibit and saw a photograph of the product.
```

Page 62

HIGHLY CONFIDENTIAL

1    infringement?
2        A.   Well, it -- well, how much
3    knowledge -- what kind of knowledge did Amazon
4    have, you know.
5        Q.   Knowledge of what?
6        A.   Of the activities of the
7    manufacturer.  Did it have a track record with
8    this particular manufacturer?  So there are a
9    lot of things that go into it.  It's possible.
10   That's all I can say.
11       Q.   That just by allowing the sale?
12            MR. HALPER:  Objection.
13       Q.   Or, I'm sorry.  Just by allowing
14   them to sell?
15       A.   I wouldn't --
16            MR. HALPER:  Objection.  Misstates
17   the testimony.
18            THE WITNESS:  Yeah.
19            MR. HALPER:  And lacks foundation.
20            THE WITNESS:  Again, it's -- it's
21   very difficult to answer.  It's very difficult
22   to answer that question.
23       Q.   Are you aware of any Amazon actions
24   related to this case that you believe amounted
25   to trademark infringement?

Page 201

HIGHLY CONFIDENTIAL

```
 1              MR. HALPER:  Objection.  Vague.
 2   Lacks foundation.
 3              THE WITNESS:  What do you mean by
 4   that?
 5       Q.   Are you aware of any Amazon
 6   activities that you believe infringed Fuse
 7   Chicken's trademarks?
 8       A.   You know, I was -- I was not asked
 9   to be an expert on that particular issue, and I
10   have not given that any thought.
11       Q.   So you can't speak to whether
12   Amazon had knowledge that a certain activity
13   might have been trademark infringing?
14              MR. HALPER:  Objection.  Vague.
15              THE WITNESS:  Well, again, I was
16   not asked to look into that.  I didn't
17   really -- haven't really thought about that.
18       Q.   Same is true for the copyright
19   claims or the deceptive trade act -- deceptive
20   trade practices claims?
21              MR. HALPER:  Objection.  Vague.
22   Compound.  Lacks foundation.
23              THE WITNESS:  I was not -- I was
24   not asked to study those and give an opinion on
25   that.
```

Page 202

1    Q.    I'm going to continue on Page 10 of
2    your report. You have the list of materials
3    considered. I think we've discussed a few
4    things, which were left off this list. Is
5    there anything else that's missing?
6        MR. HALPER: Objection. Lacks
7    foundation. Misstates testimony.
8        THE WITNESS: Could you clarify
9    what you mean by that?
10    Q.    Were there any materials you
11    considered in forming your opinions and writing
12    your report that are not included on this list?
13    A.    Not -- not that I recall.
14    Q.    You have an entry on the list for
15    internet research. Do you see that?
16    A.    Yes.
17    Q.    And what websites did you visit
18    that are not independently listed here?
19    A.    I don't recall.
20    Q.    Did you visit websites that are not
21    on this list?
22    A.    Possible, yes.
23    Q.    But you don't know what they were?
24    A.    I cannot recall. I cannot recall.
25    Q.    You refer to Amazon's second

HIGHLY CONFIDENTIAL

1  reputable news organizations and publications,
2  and that they would vet the statements which
3  are being made in stories of this type, check
4  the accuracy of the factual assertions in these
5  articles.  I believe they will -- also would
6  give Amazon a chance to respond, and I believe
7  that in one of the articles, Amazon was invited
8  to give comment, but declined.  So I have no
9  reason to believe that these articles are
10 inaccurate.
11      Q.   Are you aware of Amazon disputing
12 the statements in that article?
13           MR. WATNICK:  I'm going to object
14 as beyond the scope of the report.
15      Q.   You can answer.
16      A.   I am not aware that Amazon
17 objected, and I do recall that Amazon was
18 invited to give comment in one of the articles
19 and declined.
20      Q.   You were also asked, at least with
21 respect to one of the articles, maybe both,
22 whether you thought the author knew what he was
23 talking about.  Do you recall that?
24      A.   Yes, I do.
25      Q.   Do you believe that the authors of

```
 1   these articles knew and understood what they
 2   were talking about when they wrote what they
 3   wrote in those articles?
 4        A.   Yes, I do.  I believe that
 5   reputable news organizations and publications
 6   such as these would hire professionals who were
 7   competent and had knowledge of the subject
 8   matter on which they were writing.  I believe
 9   that these -- this indicates to me that these
10   people knew what they were talking about, and I
11   believe that they do.
12        Q.   Were you asked by Fuse Chicken or
13   its counsel, in connection with your work and
14   report in this case, to quantify the amount of
15   counterfeiting of Fuse Chicken products?
16             MR. WATNICK:  Object.  Beyond the
17   scope of the report.
18             THE WITNESS:  No, I was not.
19        Q.   Do you recall earlier, you
20   testified that you -- it is your opinion that
21   you doubt that you -- that the cable data
22   products were manufactured in locations outside
23   of China?
24        A.   Yes.
25        Q.   What was the basis for your opinion
```

Page 277

HIGHLY CONFIDENTIAL

1   in that regard?
2        A.   Based on my experience,
3   counterfeiters usually arise in proximity to
4   the original legitimate manufacturer.  They
5   arise in China in proximity to the original
6   manufacturer because of the prevalence of
7   counterfeiting and a business and legal culture
8   which supports it.
9             Based upon my experience, I
10  would -- I would say that the counterfeiter
11  would be one in proximity to the original
12  manufacturer, meaning that they would be in
13  China, and it would seem very unlikely to me
14  that there would be a counterfeiter in the
15  United States, based upon those factors.
16       Q.   And are you aware of evidence
17  suggesting that the cable data products were
18  made outside of China?
19       A.   No.
20       Q.   Why are your opinions that you've
21  offered and -- today and indicated in your
22  report relevant to this case?
23       A.   Well, in order to understand Fuse
24  Chicken's case, it is necessary to put the case
25  in the larger context, and the larger context

Page 278

HIGHLY CONFIDENTIAL

1  I declare under penalty of perjury
2  under the laws that the foregoing is
3  true and correct.
4
5  Executed on February 15, 2019,
6  at Columbus, Ohio.
7
8
9
10
11  _____
12              WITNESS SIGNATURE
         (Daniel C. K. Chow)

Page 294

```
 1                REPORTER'S CERTIFICATE
 2    The State of Ohio,   )
 3                               SS:
      County of Fairfield. )
 4
                I, Kimberly A. Kaz, RPR, a Notary
 5    Public within and for the State of Ohio, duly
 6    commissioned and qualified, do hereby certify
      that the within named witness, DANIEL C.K.
 7    CHOW, was by me first duly sworn to testify the
 8    truth, the whole truth and nothing but the
      truth in the cause aforesaid; that the
 9    testimony then given by the above-referenced
10    witness was by me reduced to stenotypy in the
      presence of said witness; afterwards
11    transcribed, and that the foregoing is a true
      and correct transcription of the testimony so
12    given by the above-referenced witness.
                I do further certify that this
13    deposition was taken at the time and place in
      the foregoing caption specified and was
14    completed without adjournment.
                I do further certify that I am not
15    a relative, counsel or attorney for either
16    party, or otherwise interested in the event of
      this action.
17              IN WITNESS WHEREOF, I have hereunto
18    set my hand and affixed my seal of office at
      Cleveland, Ohio, on this 16th day of January, 2019.
19
20
21
22    _____
23    Kimberly A. Kaz, RPR, Notary Public
24    within and for the State of Ohio
25    My commission expires March 31, 2023.
```

Page 295